# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| FURNITUREDEALER.NET, INC. | Civ. No. 18-232 (JRT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION & ORDER** |
| AMAZON.COM, INC., and COA, INC. d/b/a COASTER COMPANY OF AMERICA | |
| Defendants. | |

Michael Lefeber, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN  55402, for plaintiff.

Daniel M. Cislo, **CISLO & THOMAS, LLP,** 12100 Wilshire Boulevard, Suite 1700, Los Angeles, CA  90025, and Robert J. Gilbertson, **GREENE ESPEL, PLLP,** 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for defendant COA, Inc.

This case arises out of a contract between Plaintiff FurnitureDealer.Net ("FDN") and Defendant Coaster Company of America ("Coaster") in which FDN agreed to create a website to market Coaster's products.  FDN, a furniture marketing company, noticed that copyrighted material it created for Coaster began appearing on Defendant Amazon.com's ("Amazon") URLs.  FDN brought this action against Coaster after learning that it provided the allegedly infringed material to Amazon.  Against Coaster, FDN alleges direct copyright infringement, contributory infringement, vicarious infringement, unjust enrichment,

1

breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Digital Millennium Copyright Act ("DMCA").

Coaster now moves to dismiss FDN's claims under Fed. R. Civ. P. 12(b)(6) and, in the alternative, requests a more definite statement under Rule 12(e). Because FDN has alleged facts sufficient to support its claims, the Court will deny Coaster's motion to dismiss as to every claim save FDN's unjust enrichment claim. The Court will grant Coaster's motion to dismiss the unjust enrichment claim because that claim is preempted by the Copyright Act. Finally, because it is possible for Coaster to reply to FDN's allegations, the Court will deny Coaster's motion for a more definite statement.

## BACKGROUND

### I.    FurnitureDealer.Net's Copyright

FDN is a Minnesota corporation specializing in the creation, production, and management of marketing solutions for home furniture companies. (Am. Compl. ¶¶ 1, 8, May 14, 2018, Docket No. 6.) As part of its services, FDN creates and manages websites for furniture retailers. (*Id.* ¶ 8.) In creating websites, FDN also creates content that appears on the sites, including written descriptions of its clients' products. (*Id.*) These descriptions include search-engine-optimized ("SEO") text. (*Id.*) SEO text is, in essence, text that is tailored to maximize its prominence on the internet, particularly in response to online searches. (*Id.* ¶ 36.) As the effectiveness of SEO text increases, so do the rankings of the websites associated with the text. (*Id.*) Likewise, when SEO text is compromised, website rankings and traffic decrease. (*Id.*) For that reason, FDN tightly controls and regulates the

use and distribution of the furniture descriptions it writes to service its clients' websites. (*Id.*)

One tool FDN employs to protect and track its assets is a library of original product content (the "Content Library"), which includes content created for all clients FDN serves. (*Id.* ¶ 8.)  The Content Library is stored in a database (the "Automated Database"), which was copyrighted in September 2015.  (*Id.* ¶¶ 8-9 & Ex. A, Docket No. 6-1.)  The Certificate of Registration from the U.S. Copyright Office identifies the title of the work as "Automated database of furniture catalogs and collections (photographs and text)."  (*Id.* ¶ 9, Ex. A.)  The "new material" listed on the certificate includes "Compilation, arrangement, original text, original photographs and revisions to certain prior photographs."[1]  (*Id.*)

## II.     Alleged Infringement by Coaster and Amazon

Coaster is a California furniture company and a long-time customer of FDN.  (*Id.* ¶¶ 3, 10.)  In February 2010, Coaster and FDN entered into an agreement (the "Agreement") establishing that FDN would create and maintain a customized website for Coaster at www.coasterfurniture.com (the "Website").  (*Id.* ¶¶ 11-12, 31.)

In relevant part, the Agreement contains the following terms:[2] (1) FDN owns the

---

[1] In preparation for litigation on the present motion, the parties learned that the U.S. Copyright Office has been unable to locate the deposit materials submitted in connection with FDN's 2015 copyright.  (Decl. of Daniel Cislo ¶¶ 7-8, July 6, 2018, Docket No. 42.) While not material in evaluating Coaster's motion to dismiss, the Court notes that this may present an evidentiary issue in the case.

[2] While the Court is normally limited to the pleadings when considering a 12(b)(6) motion, it may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions."  *Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)).

Website but licensed it to Coaster;[3] (2) FDN owns all rights, title and interest to all original content created by FDN for the Website; (*id.* ¶ 11; Decl. of Larry Furiani ¶ 3, July 6, 2018, Docket No. 39, Ex. 1 ("Agreement") at 3, Docket No. 40); (3) use of FDN's original content is limited to the Website and websites of Coaster-authorized dealers who enter into separate licensing agreements with FDN; (Am. Compl. ¶ 12; Agreement at 6, 10); (4) Coaster retains all rights and title to domain names and design elements that it provides for the Website; (Agreement at 3); and (5) in exchange for creating and maintaining the Website, Coaster would provide FDN with referrals of authorized dealers with whom FDN could share its original content; (*id.* at 2).

Pursuant to the Agreement, FDN created the Website and wrote SEO text (the "Descriptive Text") to market Coaster's products, using Coaster's catalog as a starting point. (Am. Compl. ¶¶ 10-11.) With other content used on the Website, FDN added the Descriptive Text to its Content Library. (*Id.*) FDN alleges that the Descriptive Text is therefore protected not only by the Agreement, but also by the copyright of FDN's Automated Database. (*Id.* ¶ 11.) To alert third parties against using copyrighted material, FDN placed a graphic on each page of the Website. (*Id.* ¶ 34.) The graphic includes FDN's logo and states, "All rights reserved. Nothing on this page may be copied or reproduced without explicit permission." (*Id.*)

---

Because the Agreement's contents are alleged in the Amended Complaint and neither party questions its authenticity, it is properly considered here.

[3] The Court notes that despite this provision, in 2013, Coaster's counsel registered a copyright of the Website in Coaster's name. While the Website itself is not the subject of this dispute, its ownership is relevant to the Court's analysis of FDN's copyright and DMCA claims.

After the Website was up and running and before February 2016, FDN noticed that the Descriptive Text it created for Coaster began appearing on Amazon URLs used to promote and sell Coaster furniture. (*Id.* ¶ 14.) By February 2016, FDN had identified and collected at least 394 Amazon URLs where its Descriptive Text appeared. (*Id.* ¶ 19.) Because the text appearing on the Amazon URLs was identical or nearly identical to the Descriptive Text in its Content Library, FDN believed it was copied directly from the Content Library. (*Id.* ¶ 14.)

On February 25, 2016, FDN submitted a takedown request to Amazon via email pursuant to the Digital Millennium Copyright Act ("DMCA"). (*Id.* ¶ 17.) In the email, FDN explained in detail its concerns about copyright infringement. (*Id.* ¶ 19.) It also attached a spreadsheet containing a comparison of the text on Coaster's and Amazon's websites for each instance of alleged infringement along with the corresponding URLs. (*Id.*) Amazon repeatedly asserted that it could not identify the alleged infringements and requested more detail from FDN. (*Id.* ¶¶ 20-29.) Although FDN complied with Amazon's requests, Amazon did not take any steps to remove the identified material in response to this exchange. (*Id.* ¶ 29.)

In one email dated April 6, 2016, an Amazon employee explained to FDN that Amazon had received the item descriptions from the product manufacturer (i.e., Coaster). (*Id.* ¶ 30.) Although Coaster's Vice President repeatedly denied granting Amazon permission to use the Descriptive Text, Amazon insisted that FDN work with Coaster to resolve the issue. (*Id.* ¶¶ 32, 35, 37, 44.)

Still believing Amazon had acted independently, FDN brought suit against Amazon on January 26, 2018.  (Compl., Jan. 26, 2018, Docket No. 1.)  However, after learning that Coaster had (1) allegedly uploaded the Descriptive Text onto the Amazon URLs in question; and (2) failed to ask Amazon to remove the text from its URLs, FDN added Coaster as a defendant.  (Am. Compl., ¶¶ 49, 50.)

As of this date, the Descriptive Text in issue remains on various Amazon URLs.  (*Id.* ¶¶ 48, 52.)  FDN alleges that it has suffered and continues to suffer losses because of Amazon and Coaster's infringement.  (*Id.* ¶¶ 51, 53.)

## DISCUSSION

## I.  Coaster's Motion to Dismiss for Failure to State a Claim

## A.  Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor. *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

While the Court is normally limited to the pleadings when considering a 12(b)(6) motion, it may properly consider materials that are necessarily embraced by the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). Such materials include "documents whose contents are alleged in a complaint and whose authenticity no party questions." *Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)).

### B. FDN's Copyright Claims

Coaster argues that FDN's copyright infringement claims (Counts I-III) should be dismissed for four reasons: (1) FDN has not adequately identified the material it alleges was infringed upon; (2) the Descriptive Text is not copyrightable subject matter; (3) Coaster had a right to the text as a joint author; and (4) FDN has not adequately alleged that Coaster had access to FDN's copyrighted work, which is a necessary element of a copyright claim.

### i. The Identified Material

Coaster repeatedly asserts that it is uncertain what material FDN alleges was copyrighted and subsequently infringed upon. The Court is unpersuaded. While the function and contents of the Automated Database and Content Library are somewhat

obscure at this stage in the proceedings, the Court has no difficulty identifying the material in issue as the Descriptive Text that FDN produced for Coaster and placed on the Website. Coaster points to the lack of examples of infringed material in the Amended Complaint. But this is no matter; FDN has described the Descriptive Text and the alleged infringement in detail. Moreover, FDN alleges that it specifically identified hundreds of instances of infringement, placed them into a spreadsheet, and confirmed with Coaster's Vice President that FDN owned the material in question. (*See* Am. Compl. ¶¶ 19, 32-33.) Thus, the Court finds that FDN has alleged facts sufficient to identify the Descriptive Text as the subject of this dispute.

### ii. Copyrightable Subject Matter

Coaster argues that FDN's copyright claims should be dismissed because the Descriptive Text is not copyrightable subject matter. First, Coaster asserts that, as SEO text, the Descriptive Text should be denied copyright protection under the merger doctrine. Second, Coaster argues that the text lacks the creativity required of copyrighted material.

The Court first notes that the certificate of copyright registration attached to the pleadings creates a rebuttable presumption of a valid copyright in the Automated Database ("the Copyright"). *See Thimbleberries, Inc. v. C & F Enterprises., Inc.,* 142 F.Supp.2d 1132, 1137 (D. Minn. 2001); 17 U.S.C. § 410(c) ("the certificate of registration . . . shall constitute prima facie evidence of the validity of the copyright . . ..") However, because "copyright protection may extend only to those components of a work that are original to the author," FDN must show that the Descriptive Text itself is original and capable of being copyrighted. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 348 (1991).

### a. The Merger Doctrine

Under the merger doctrine, which applies to only a "small category of works," expressions of ideas may be denied copyright protection when "the idea behind the expression is such that it can be expressed only in a very limited number of ways." *Toro Co. v. R & R Products Co.*, 787 F.2d 1208, 1212 (8th Cir. 1986). The purpose of the doctrine is to prevent monopolization of ideas when, "by copyrighting a mere handful of forms, [a party] could exhaust all possibilities of future use of the substance [of the idea]." *Id.* (quoting *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 678-79 (1st Cir. 1967)).

Coaster argues that the search-engine-optimization process used in the creation of the Descriptive Text limits the number of ways the ideas behind the text can be expressed, making application of the merger doctrine appropriate. The Court disagrees. While the language FDN used in writing furniture descriptions was influenced by the SEO process, the ideas behind those descriptions could nonetheless be expressed in a variety of ways. Indeed, FDN describes a process that is fairly involved, such that the authors – not an algorithm – ultimately determine how their marketing ideas will be expressed. The Court thus finds the merger doctrine inapplicable here.

### b. Creativity and Originality

In a similar vein, Coaster contends that, because the Descriptive Text consists mainly of short phrases and descriptive language, it lacks the requisite creativity and originality for copyrightability.

The Copyright Act extends copyright protection to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "To be the original work of

an author, a work must be the product of some 'creative intellectual or aesthetic labor.'" *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1223 (8th Cir. 1219) (quoting *Goldstein v. California*, 412 U.S. 546, 561 (1973)). "However, 'a very slight degree of such labor . . . almost any ingenuity . . . will be sufficient . . . .'" *Id.* (quoting M. Nimmer, 1 *Nimmer on Copyright*, § 1.08[C][1]). Accordingly, those works that have "no separate value" from an original composition, such as individual words, labels, or very short phrases, may lack the requisite creativity for copyright protection. *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972); *see also Narrel v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) (ordinary phrases not copyrightable); *Magic Marketing, Inc. v. Mailing Servs. of Pittsburgh, Inc.*, 634 F. Supp. 769, 771-72 (W.D. Pa. 1986) (envelopes containing phrases such as "GIFT CHECK ENCLOSED" were not copyrightable). Texts found to constitute purely technical descriptions have likewise been denied copyright protection. *See, e.g.*, *Feist Publ., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 344 (1991) (facts not copyrightable).

While Coaster argues otherwise, the Descriptive Text at issue in this case consists of more than single words, short phrases, labeling, or technical descriptions. Indeed, a review of examples of the text reveals unique phrasing and language that seems designed to maximize the attractiveness of the products described to online buyers. For instance, a description of a dresser includes the sentence, "Two distinctive transparent doors add a unique touch, while clean lines, simple molding, and square tapered feet create a sophisticated style." (Decl. of Mira Vats-Frounier ¶ 5, Ex. C-1 at 6, July 30, 2018, Docket No. 54-4.) That this text is descriptive in nature does not preclude it from possessing the

10

minimal degree of originality required under the Copyright Act. As such, the Court finds that the Descriptive Text has the creativity and originality required for copyrightability.

### iii.    The Scope of the Copyright

Having established that the Descriptive Text is copyrightable, the Court must determine whether FDN has alleged facts showing that it was indeed copyrighted.

Coaster argues that the Descriptive Text is not covered by the Copyright of the Automated Database. FDN responds that the Automated Database is a type of "collective work" for which the Copyright Act does not require registration of individual parts. "A collective work is a work . . . in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101. The Copyright Office considers automated databases to be compilations, which include collective works. *Id.* Thus, taking as true that that the registered work is an automated database, the Court finds that it is properly characterized as a collective work.

The statutory language explaining the scope of a copyright's protection in the case of a collective work is vague. Section 409 states only that "in the case of a compilation . . . an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered" must be included. 17 U.S.C. § 409(9). Because the statute does not explicitly state that registration of a compilation covers its component works when the authors of those component works are not listed, some courts have barred infringement suits involving such works. *See, e.g.*, *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F.Supp.2d 84, 94 (S.D.N.Y. 2010); *Bean v. Houghton Mifflin Harcourt Publ'g Co.*,

2010 WL 3168624, at *4 (D. Ariz. Aug. 10, 2010). However, others have interpreted the statute to suggest that registration of a collective work covers component works so long as the registrant has rights to those component works. For instance, in *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, the Fourth Circuit held that component photographs of an automated database were covered by registration of the database where the registrant had rights to those photographs. 722 F.3d 591, 597 (4th Cir. 2013); *see also Masterfile Corp. v. Gale*, 2011 WL 4702862, at *2 (D. Utah Oct. 4, 2011) (registration of a collection extended copyright protection to constituent parts); *Am. Inst. of Physics v. Shwegman Lundberg & Woessner, P.A.*, 2012 WL 3799647, at *2 (D. Minn. July 2, 2012) (registration of journals created copyright in those articles).

The Court finds that the latter view better aligns with the spirit of the Copyright Act. As the court in *Metropolitan Regional Information Systems* stated, "[a]dding impediments to automated database authors' attempts to register their own component works conflicts with the general purpose of Section 409 to encourage prompt registration." *Id.* (citing U.S. Copyright Office, Circular No. 1, 7: Copyright Basics (2012). Indeed, the Copyright Office has stated that under its interpretation of the registration requirement, contributions to collective works need not be individually registered. *See* Compendium of Copyright Office Practices II § 615.06.

Here, FDN registered what the Court must infer was a collective work and retained exclusive rights to the relevant components of that work – the Descriptive Text. Accordingly, the Court finds FDN's allegations sufficient to show that the copyright of the Automated Database extends to the Descriptive Text.

### iv.      Joint Authorship

Coaster next argues that it is a joint author of the Website and, as such, it shares equal rights with FDN to any content on the site.

"The author [of a work] is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 102).  A joint work is a "work prepared by two or more authors **with the intention** that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101 (emphasis added).  While "the respective contributions of authors to a single work do not need to 'be equal either quantitatively or qualitatively . . . [they] must . . . be more than de minimus.'" *Words & Data, Inc. v. GTE Communications Services, Inc.*, 765 F. Supp. 570, 575 (W.D. Mo. 1991) (quoting 1 M. Nimmer, NIMMER ON COPYRIGHT, § 6.07 at 6-18.2 (1990)).  Because joint authors are equally entitled to the copyright in their work, "an action for infringement between joint authors will not lie." *Weissman v. Freeman*, 868 F.2d 1313, 1318 (2d Cir. 1989).

The intent joint authors must share has yet to be defined in this Circuit.  Courts elsewhere have taken two views on the matter.  One view is that the parties need only intend to integrate their contributions into a unitary whole.  *See, e.g.*, *Words & Data*, 765 F. Supp. at 575; *Oliver v. Johanson,* 2018 WL 6112964, at *15 (W.D. Ark. Nov. 21, 2018). Under that view, collaboration alone may be "an independent ground for finding the necessary intent for joint authorship."  *Words & Data*, 765 F. Supp. at 575.  Other courts, including the Second and Seventh Circuits, have required that joint authors intend, at the

time they make their contributions, "to regard themselves as joint authors." *Childress v. Taylor*, 945 F.2d 500, 507 (2d Cir. 1991); *see also Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1071-72 (7th Cir. 1994). This view is based partially on the premise that requiring less than this would put collaborators in a position of joint authorship when they never intended as much. In *Childress*, the court used as an example the relationship between a writer and an editor. 945 F.2d at 507. The two collaborate and make individual contributions to a unitary work, "yet very few editors and even fewer writers would expect the editor to be accorded the status of joint author, enjoying an undivided half interest in the copyright." *Id.*

Like the Second and Seventh Circuits, the Court is persuaded that "equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors." *Id.* at 509. The Court will therefore look to the time FDN and Coaster made their contributions and ask whether they intended to be joint authors.[4] Before beginning this inquiry, however, the Court notes that while the parties focus primarily on whether the Website is a joint work, the work at issue here is not the Website, but the Descriptive Text. The Court must therefore ask two questions: (1) whether Coaster is a joint author of the Descriptive Text; and (2) whether Coaster is a joint author of the Website and, if so, whether its status as such gives it equal rights to the Descriptive Text specifically.

With respect to the Descriptive Text, Coaster argues that by providing FDN with a product catalog, it also provided the basic text, which FDN merely enhanced to create the

---

[4] Indeed, this Court previously applied the same standard in *United States v. Washington Mint, LLC*, No. 9901768, 2001 WL 1640073, at *3 (D. Minn. Sept. 5, 2001).

longer product descriptions. Coaster contends that by providing the catalog, it made "separate contributions" that became part of a "unitary whole," making it a joint author of the text. (Def.'s Reply Mem. at 8, Aug. 10, 2018, Docket No. 59.)

Even assuming Coaster's provision of the catalog constitutes more than a de minimis contribution, the Court is not persuaded that Coaster is a joint author of the Descriptive Text. Coaster paid FDN to more effectively promote its products, in part through creating tailored descriptions. The very nature of this relationship suggests that the parties did not intend to be joint authors, but instead intended that FDN would provide Coaster with a service by creating content for the Website. The Agreement confirms as much. It states that "[FDN] will create and enhance content in the Content Library at Coaster's request . . . such as keyword enriching product descriptions." (Agreement at 6.) That Coaster provided short words and phrases to FDN through its catalog does not make it a genuine collaborator, nor show the intent necessary for joint authorship. As such, the Court finds it probable that FDN was the sole author of the Descriptive Text, and Coaster's claim of right to it fails.

Coaster next argues that by contributing photos and logos, providing product information, and discussing ideas with FDN, it contributed to the "unitary whole" (the Website) and is therefore a joint author with equal rights to any content on the site. As a preliminary matter, it is not clear to the Court that Coaster's contributions to the Website were more than de minimis. But even assuming they were, the Court finds that the Website is best characterized as a collective – not a joint – work, with each party enjoying ownership over its individual contributions. The Agreement states explicitly that Coaster would keep

rights to any "design elements" it contributed and, likewise, that any content created by

FDN for the Website would belong exclusively to FDN.[5]  The parties' insistence suggests

that they lacked the intent required for joint authorship; that is, an intent that they be

considered joint authors of the Website.  Indeed, if they did intend to share authorship, it

is difficult to understand why they would bother at all with defining their respective rights

to the components of the site.

Because the facts alleged show that the parties did not have the requisite intent, the

Court will not address the consequences that would arise from joint authorship of the

Website.

### v.        Coaster's Access to the Automated Database

Coaster next asserts that FDN's copyright claims fail because FDN has not shown that

Coaster had access to the Automated Database.

To show copyright infringement, a plaintiff must establish ownership of a valid

copyright and copying of original elements of the work.  *Mulcahy v. Cheetah Learning

LLC*, 386 F.3d 849, 852 (8th Cir. 2004).  Copying may be established by "(1) direct

evidence or (2) showing that the defendants had access to the copyrighted materials and

showing that substantial similarity of ideas and expression existed between the alleged

---

[5] The parties dispute which of them owns the Website itself.  FDN created and managed
the Website, and the Agreement states that "the Site licensed to Coaster . . . is owned by
[FDN]."  (Agreement ¶ 15.)  At the same time, Coaster apparently possesses a copyright
to the Website.  However, even if Coaster did own the Website, it would only have a right
to use those contributions that it also owns, i.e., the photos and logos it contributed.  *See*
Section B(iii), *supra*, for further discussion of registration and ownership of collective
works.

infringing materials and copyrighted materials." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006).

Here, the only dispute is whether FDN has sufficiently alleged that Coaster had access to the copyrighted materials. To establish access, FDN must show that Coaster had a "reasonable possibility" of viewing its work. *Moore v. Columbia Pictures Industries, Inc.*, 972 F.2d 939, 942 (8th Cir. 1992). Coaster argues that FDN's claim fails because FDN does not explicitly allege facts showing that Coaster had access to the copyrighted material, the Automated Database.

This argument fails for three reasons. First, FDN need only show that Coaster had access to the Descriptive Text, not the entire Automated Database. Second, FDN **has** alleged facts showing that Coaster had access to the Descriptive Text. Courts may infer access when the similarities between the allegedly infringing material and the copyrighted work are "so striking and of such nature as to preclude the possibility of coincidence, accident or independent creation." *Scott v. WKJG, Inc.*, 376 F.2d 467, 469 (7th Cir. 1967); *see also Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir. 1946); *Scott v. Paramount Pictures Corp.*, 449 F. Supp. 518, 520 (D.D.C. 1978). Here, FDN alleges hundreds of incidences of Amazon URLs incorporating language identical or nearly identical to the Descriptive Text to describe Coaster furniture. This similarity alone allows the Court to infer access.

Moreover, both as a member of the public and through its working relationship with FDN, Coaster indisputably had access to the Website where the Descriptive Text appears. Coaster argues that access to the Website does not equate to access to the Automated Database. While true, this point is immaterial. Again, at issue here is only the Descriptive

Text.  Whether Coaster's point of access to that text was through the Database or through the Website is of no import.  As such, the Court finds that FDN has alleged facts sufficient to show that Coaster had access to the copyrighted material.

### C. The DMCA Claim

The DMCA prohibits tampering with copyright management information ("CMI"), including (1) copyright notices; (2) information identifying the author or copyright owner of a work; and (3) terms and conditions for use of a work.  17 U.S.C. § 1202(c).  Specifically, the DMCA makes it illegal to "intentionally remove or alter any [CMI]" knowing "that it will induce, enable, facilitate, or conceal an infringement."  17 U.S.C. § 1202(b).  It also prohibits the "distribut[ion of] . . . works [or] copies of works . . . knowing that CMI has been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b)(3).

FDN alleges that the copyright notice it placed on the Website ("the Notice") is CMI and that, by sharing the Descriptive Text with Amazon knowing that it would be displayed without the Notice, Coaster violated Sections 1202(b)(1) and (b)(3).  While the Court has not found cases applying Section 1202(b) in this Circuit, other courts have required Plaintiffs asserting a claim under Section 1202(b)(1) to show that a defendant: (1) intentionally removed or altered CMI; (2) without authority of the copyright owner or the law; and (3) had knowledge or reasonable grounds to know that the removal would induce, enable, facilitate, or conceal an infringement of the federal copyright laws.  *Imageline, Inc. v. CafePress.com, Inc.*, 2011 WL 1322525, at *6 (C.D. Cal. April 6, 2011).  Similarly, a claim under Section 1202(b)(3) requires a plaintiff to show that a defendant (1) distributed

works or copies of the works; (2) without permission from the copyright holder; and (3) knew that CMI was removed or altered. *Id.*

Coaster first argues that FDN's DMCA claim must be dismissed because the Notice was not posted on copyrightable subject matter. Because the Court has already found the Descriptive Text is copyrightable, it will not discuss copyrightability further. Coaster also argues that as a joint author of the Website, it had a right to remove CMI from the Descriptive Text. Having already found it unlikely that the parties were joint authors, the Court will likewise not revisit that discussion.

Coaster next argues that the Notice is false or misleading because it asserts that FDN has a copyright on the Website when in fact Coaster holds that copyright, and because the Notice suggests that FDN owns all the material on the Website when some of the material belongs to Coaster. In doing so, Coaster ostensibly argues that FDN has not adequately alleged that valid CMI existed for it to remove or alter. While there may be some merit to Coaster's argument, the Court is not prepared to dismiss FDN's DMCA claim on the pleadings. As an initial matter, it is not clear from the pleadings that Coaster owns a valid copyright in the Website, and the Court is not obligated to take Coaster at its word when it argues as much. It is also not obvious to the Court that the Notice implies that FDN owns material that rightfully belongs to Coaster. These are questions of fact that may be revisited following discovery.

Moreover, the Notice may be valid even if Coaster is correct that it implies FDN owns material that belongs to it. In the case of a collective work, "a single notice applicable to the [] work as a whole is sufficient . . . as applicable with respect to the separate

contributions it contains . . . regardless of the ownership of the copyright in the contributions." 17 U.S.C. § 404(a). In other words, when the owner of a collective work posts CMI, the CMI's protection extends to its individual contributions, even if the rights to those contributions belong to different authors. Thus, if FDN is the owner of the Website – which, again, the Court will not determine at this time – a blanket notice covering its own contributions and others' is perfectly valid. Because it does not necessarily follow that the owner of a contribution may post CMI for the work as a whole, matters may be more complicated if, after discovery, it appears that Coaster is the owner of the Website. But the Court need not address this issue until the relevant factual questions have been answered.

Finally, Coaster contends that because the Notice was placed on the Website rather than the Automated Database, FDN has only alleged that CMI was removed from a copy of its work, not from the copyrighted work itself. The Court first reiterates that at issue here is not the Automated Database, but the Descriptive Text. The Court is not convinced that the Notice's placement on the Website (rather than the Database) removes the Descriptive Text from the protection of the DMCA. Indeed, the case law cited by Coaster suggests that FDN's claim **is** valid even if the Text on the Website is properly considered to be merely a "copy" of the original work. In *Kelly v. Arriba Soft Corp.*, the defendant took images from the plaintiff's website and added them to a large online photo catalog. 77 F. Supp. 2d 1116, 1117 (C.D. Cal. 1999). The defendant did not post CMI next to the copies of the photos. *Id.* The court held that Section 1202(b)(1) applied only to the removal of CMI from original work, not from copies. *Id.* at 1122. However, it found that Section 1202(b)(3)

**would** apply to prohibit the use of copies of works without including CMI. *Id.* Here, as in *Kelly*, FDN may claim under 1202(b)(3) that Coaster wrongfully removed CMI from a copy of FDN's copyrighted work. As such, the Court finds that FDN has plausibly stated a claim under the DMCA and will deny Coaster's motion to dismiss the claim.

### D. Preemption of State Law Claims

A state law claim is preempted under Section 301 of the Copyright Act if "(1) the work at issue is within the subject matter of the copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of the copyright as specified in § 106." *Nat'l Car Rental System, Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993). "Section 301 preempts only those state law rights that 'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law.'" *Id.* at 431 (quoting *Comput. Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992). "If an extra element is 'required, instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of the copyright and there is no preemption.'" *Id.* (quoting 1 Nimmer on Copyright § 1.01[B], at 1-14-15).

Coaster argues that FDN's claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment are preempted by the Copyright Act. Giving FDN the benefit of all reasonable inferences, the Court must determine whether each of its state law claims may only be construed as falling squarely under the Copyright Act.

### i.　Unjust Enrichment

In Minnesota, an unjust enrichment claim requires a showing "that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay." *Caldas v. Affordable Granite & Stone, Inc.,* 820 N.W.2d 826, 838 (Minn. 2012) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)).  FDN argues that Coaster and Amazon unjustly benefited from Amazon's use of the Descriptive Text.

Like most other courts to address the issue, the Court has previously held that "where unjust enrichment claims are based upon the violation of rights protected by the Copyright Act" they are preempted.  *Issaenko v. University of Minnesota*, 57 F. Supp. 3d 985, 1026 (D. Minn. 2014).[6]  In *Issaenko*, as here, the plaintiff brought an unjust enrichment claim after the defendants benefited from misappropriation of her copyrighted works.  *Id.*  The Court held that her allegations fell "within the exclusive rights protected by the Copyright Act" and were therefore preempted.  *Id*. at 1027; *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) ("While enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim.").

FDN argues that its unjust enrichment claim falls outside the scope of the Copyright Act because the enrichment arose not from copyright infringement, but from Coaster's

---

[6] Citing *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1148 (10th Cir. 2009); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 637-38 (6th Cir. 2001); *Ott v. Target Corp.*, 153 F. Supp. 2d 1055, 1067 (D. Minn. 2001).

breach of the Agreement.  The Court disagrees.  As in *Issaenko*, FDN's unjust enrichment claim amounts to allegations that Coaster unjustly benefited from the wrongful appropriation of its works.  That the unjust enrichment is also connected to Coaster's alleged breach of the Agreement does not remove the claim from the scope of the Copyright Act.  As such, the Court will grant Coaster's motion to dismiss FDN's unjust enrichment claim.

### ii.　Breach of Contract

FDN alleges that by copying and uploading the Descriptive Text onto Amazon, Coaster breached those terms of the Agreement that gave FDN exclusive rights to the content it created for the Website. FDN argues that the contractual restrictions on Coaster's use of the content create a right that is qualitatively different from the rights protected by the Copyright Act.

Insofar as FDN attempts to differentiate its claim from a copyright claim by characterizing Coaster's actions as "unauthorized use" rather than infringement, the Court is wary.  FDN cites *National Car Rental System, Inc. v. Computer Associates International, Inc.*, where the court held that the plaintiff's misuse of the defendant's data processing program gave rise to a breach of contract counterclaim that did not fall under the exclusive scope of the Copyright Act.  991 F.2d 426, 430-31 (8th Cir. 1993).  But that case did not involve any unauthorized copying, distribution, or reproduction of the defendant's work.

Instead, the defendant alleged that the plaintiff had itself used the work in a way that benefited third parties. *Id.* at 430. Accordingly, that case is distinguishable.[7]

Nonetheless, one provision of the Agreement creates rights different from those protected by the Copyright Act. The Agreement provides that in consideration for FDN's services, Coaster would refer authorized dealers to FDN, who could then set up their own websites. While FDN does not explicitly identify this provision in the Amended Complaint, the Court finds that the claim may fairly be read to allege that Coaster breached this provision of the Agreement by failing to refer Amazon to FDN.[8] It will therefore deny Coaster's motion to dismiss FDN's breach of contract claim.

### iii. Breach of the Covenant of Good Faith and Fair Dealing

In Minnesota, all contracts contain an implied covenant of good faith and fair dealing. *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). FDN alleges that Coaster breached this covenant by representing to Amazon that it had permission to use the Descriptive Text.

"[A] cause of action for good faith and fair dealing cannot exist independent of the underlying breach of contract claim." *Orthomet, Inc. v. A.B. Med.*, 990 F.2d 387, 392 (8th Cir. 1993). As such, Coaster moves to dismiss this claim along with FDN's breach of

---

[7] The same is true of *Computer Associates v. State St. Bank & Trust*, 789 F. Supp. 470 (D. Mass. 1992), also relied on by FDN, which involved breach of restrictions on the use of a computer program.

[8] Coaster construes the referral provision to allow it to share FDN-created content with Coaster authorized dealers. However, the Agreement states unambiguously that FDN – not Coaster – is authorized to display FDN's original content on the websites of Coaster's authorized dealers when those dealers are referred to FDN by Coaster.

contract claim.  Because FDN's breach of contract claim will not be dismissed, however, the Court will also deny Coaster's motion to dismiss FDN's good faith and fair dealing claim.

## II.     Coaster's Motion for a More Definite Statement

Under Federal Rule of Civil Procedure 12(e) "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Because of the liberal notice-pleading standard governing federal pleadings "and the availability of extensive discovery, Rule 12(e) motions are disfavored." *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.,* 931 F. Supp. 638, 644 (D. Minn. 1996).    "Rule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail." *Id.* (internal quotation marks omitted).    Therefore, "[w]hen examining whether a more definite statement is required under Rule 12(e), the only question is whether it is possible to frame a response to the pleading." *Lyon Fin. Servs., Inc. v. MBS Mgmt. Servs., Inc.,* Civ. No. 06–4562, 2007 WL 2893612, at *9 (D. Minn. Sept. 27, 2007) (citing *Century '21' Shows v. Owens,* 400 F.2d 603, 607 (8th Cir. 1968)).

Coaster argues that FDN failed to identify any specific instances of copyright infringement in the Amended Complaint, making a response impossible.    Coaster's argument is unavailing.  It ignores the Amended Complaint's descriptions of the infringed material and its numerous references to the spreadsheet FDN sent to Coaster containing examples of the alleged infringement.  Because it is possible for Coaster to respond to the pleadings, the Court will deny its motion pursuant to Rule 12(e).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant COA, Inc.'s Motion to Dismiss or Motion for a More Definite Statement [Docket No. 35] is **GRANTED** in part and **DENIED** in part as follows:

a. Defendant's Motion to Dismiss Plaintiff's Copyright Infringement Claims (Counts I-III) is **DENIED**;

b. Defendant's Motion to Dismiss Plaintiff's DMCA Claim (Count IV) is **DENIED**;

c. Defendant's Motion to Dismiss Plaintiff's Unjust Enrichment Claim (Count V) is **GRANTED**;

d. Defendant's Motion to Dismiss Plaintiff's Breach of Contract claim (Count VI) is **DENIED**;

e. Defendant's Motion to Dismiss Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing claim (Count VII) is **DENIED**; and

f. Defendant's Motion for a More Definite Statement is **DENIED.**

DATED: March 14, 2019                        ____s/John R. Tunheim____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                        Chief Judge
                          United States District Court