**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| FURNITERDEALER.NET, INC., | Civil No. 18-232 (JRT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| AMAZON.COM, INC., and COA, INC., d/b/a COASTER COMPANY OF AMERICA, | |
| Defendants. | |

Michael M. Lafeber and O. Joseph Balthazor, **BRIGGS & MORGAN, PA,** 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for plaintiff.

Daniel M. Cislo, **CISLO & THOMAS, LLP,** 12100 Wilshire Boulevard, Suite 1700, Los Angeles, CA 90025, and Robert J. Gilbertson, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for COA, Inc.

This case arises out of Defendant COA, Inc.'s ("Coaster") and Defendant Amazon.com's ("Amazon") alleged copying of text created by Plaintiff FurnitureDealer.net ("FDN"). In 2010, FDN and Coaster entered into an Agreement in which FDN agreed to create and license to Coaster a website to market Coaster's furniture products. Copyrighted content from that site allegedly appeared on Amazon URLs in 2016. FDN brought this action against Coaster and Amazon in 2018, alleging copyright infringement and breach of contract. In March 2019, Coaster brought eight counterclaims against FDN.

Before the Court now is FDN's Motion for Partial Dismissal of Coaster's Answer, Affirmative Defenses, and Counterclaims. FDN moves to dismiss the following counterclaims: (III) Tortious Interference with Existing Business Relationships; (IV) Tortious Interference with Prospective Economic Advantage; (V) False and/or Misleading Representation of Fact – Lanham Act; (VI) Unfair and/or Deceptive Trade Practices – Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"); (VII) Unfair Business Practices – California Business & Professions Code ("CBPC"); and (VIII) Contractual and/or Equitable Indemnification.

Because they are preempted by the Copyright Act, the Court will dismiss Counts III, IV, VI, and VII with prejudice. Because Coaster's Lanham Act claim is foreclosed under *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the Court will dismiss Count V with prejudice. Because FDN is not required to indemnify Coaster for any damages or fees Coaster may be required to pay as a result of this action, the Court will dismiss Count VIII with prejudice.

## BACKGROUND

### I. Coaster and FDN's Agreement and Website

FDN is a Minnesota corporation that specializes in the creation, production, and management of marketing solutions for home furniture companies. (1st Am. Compl. ("FAC") ¶¶ 1, 8, May 14, 2018, Docket No. 6.) As part of its marketing services, FDN creates and manages websites for furniture retailers. (*Id.* ¶ 8.) FDN

also creates original content for use on those websites, including written descriptions of the products sold on the sites. (*Id.*) FDN keeps its original content in a content library (the "Content Library"). (*Id.*) The Content Library is stored in an automatic database that was copyrighted in September 2015. (*Id.* ¶ 8-9 & Ex. A at 2, May 14, 2018, Docket No. 6-1.)

Coaster is a California furniture company and a longtime customer of FDN. (FAC ¶¶ 3, 10.) In February 2010, Coaster and FDN executed an agreement (the "Agreement") establishing that FDN would create and maintain a customized website (the "Website") for Coaster. (*Id.* ¶ 11; Decl. of Larry Furiani ¶ 3, Ex. 1 ("Agreement") at 2, July 6, 2018, Docket No. 40.) The Agreement established that the Website would be owned by FDN and licensed to Coaster. (Agreement ¶¶ 1, 9.) The Agreement also established that FDN would "retain[] all right, title and interest in and to all software . . . [and] content . . . used by [FDN] to provide or resulting from the provision by [FDN] of its services," and that Coaster would "acquire[] no rights with respect thereto except for the right to use and administer its Site." (Agreement ¶ 11.)

Pursuant to the Agreement, FDN created text to describe the products in Coaster's catalog and placed that text on the Website. (*See* FAC ¶¶ 10-12; Agreement ¶ 2.) FDN added the descriptive text and other content used on the Website to its Content Library. (FAC ¶ 11.)

FDN alleges that, because the descriptive text it created for the Website is part of its Content Library, the text is protected by both the Agreement and FDN's

3

2015 copyright. (FAC ¶ 11.) To alert Website users that the Website's content is copyrighted, FDN placed a graphic and copyright notice (the "Notice") on each page of the Website. (*Id.* ¶ 34.) The Notice states: "© 2006-2016 FurnitureDealer.net, Inc., All rights reserved. Nothing on this page may be copied or reproduced without explicit permission." (*Id.*) Coaster disputes that the text is covered by FDN's copyright. Coaster also alleges that much of the content on the Website originated with Coaster's own catalog and that Coaster owns several copyrights to its catalog content. (Answer ¶ 146, Mar. 28, 2019, Docket No. 92.)

## II. FDN Discovers Its Text on Amazon.com

FDN noticed that the descriptive text it created for Coaster appeared on Amazon.com URLs. (FAC ¶¶ 14, 19.) On February 25, 2016, FDN submitted a takedown request to Amazon via email pursuant to the Digital Millennium Copyright Act ("DMCA") and in accordance with Amazon's policies. (*Id.* ¶¶ 17-18.) To help Amazon identify the allegedly infringing material, FDN attached a spreadsheet to its email identifying 394 examples of URLs with infringing content. (*Id.* ¶ 19.) For each instance of alleged infringement, FDN included the text as written on the relevant Amazon URL and compared it to the text as it appeared on the Website. (*Id.*) FDN also included links to the Amazon URLs and the Website. (*Id.*)

On February 26, Amazon informed FDN via email that it was unable to identify the relevant items and directed FDN to paste a link to each item directly

into an email. (*Id.* ¶ 21.) FDN complied with that request. (*Id.* ¶ 24.) Amazon then requested that FDN identify the exact text it believed was protected, despite FDN having already included the text in the spreadsheet attached to its original email. (*Id.* ¶¶ 25-26.) On February 29, FDN complied with that request. (*Id.* ¶ 27.) Amazon responded to say it had received the information, but did not follow up with a substantive response. (*Id.* ¶ 28.)

On April 1, 2016, FDN send a second take down request to Amazon via FedEx. (*Id.* ¶ 29.) On April 5, Amazon emailed FDN and stated that it had received the allegedly infringing material from Coaster. (*Id.* ¶ 30.) Coaster denied sharing the text with Amazon, but Amazon insisted that Coaster had provided it and repeatedly suggested that FDN work with Coaster to resolve the issue. (*Id.* ¶¶ 32, 37, 44.) Seeking to avoid further confusion, on April 12, FDN requested a telephone conference with Amazon. (*Id.* ¶ 42.) Amazon did not respond, prompting FDN to send another FedEx to Amazon reiterating its claims on April 22. (*Id.* ¶ 43.) Amazon responded via email on April 26, this time stating that the alleged infringement was not governed by the DMCA. (*Id.* ¶ 44.)

FDN then sought and received written acknowledgment from Coaster that FDN was the owner of the content at issue and that Coaster had not authorized Amazon to use that content. (*Id.* ¶¶ 45, 47.) FDN sent these confirmations to Amazon's legal department via FedEx on May 19 and June 16, 2016. (*Id.*) Amazon sent an automated response to FDN but did not provide a substantive response. (*Id.* ¶ 48.)

FDN alleges that Amazon never removed the allegedly infringing content from its URLs. (*Id.*) In contrast, Coaster alleges that, in response to what it labels FDN's "harassment" of Amazon, Amazon "may have removed product information about numerous Coaster products from the product detail pages . . . and caused Coaster's furniture items to appear lower in search results." (Answer ¶ 135.) Coaster further alleges that its relationship with Amazon has been damaged as a result of FDN's actions. (*Id.* ¶ 136.)

Only after FDN brought this lawsuit against Amazon did it allegedly learn that Coaster was responsible for uploading some or all of the text in issue onto Amazon's systems. (FAC ¶ 49.)

### III. Indemnification

In addition to the terms discussed above, the Agreement between Coaster and FDN contains an indemnification clause. (Agreement ¶ 18.) As relevant here, the clause states:

> FURNITUREDEALER.NET must indemnify, defend and hold harmless COASTER and its officers, directors, and employees, from any claim alleging the software licensed to COASTER under this Agreement infringes any patent, trademark, or copyright.

(*Id.*) The Agreement does not define "software."

Amazon has allegedly sought indemnification from Coaster for the claims FDN brought against Amazon. (Answer ¶ 177.) Coaster seeks indemnification from FDN for Amazon's claims against Coaster. (*Id.*)

6

## IV. Procedural History

FDN filed an Amended Complaint on May 14, 2018, alleging seven Counts against Coaster and five Counts against Amazon. (*See generally* FAC.) Coaster moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss, July 6, 2018, Docket No. 35.) On March 14, 2019, this Court issued an Order denying Coaster's motion with respect to all but one of FDN's claims. *FurnitureDealer.net, Inc. v. Amazon.com, Inc.*, Civ. No. 18-232, 2019 WL 1207011 (D. Minn. Mar. 14, 2019). Following that decision, Coaster filed an Answer, Affirmative Defenses, and Counterclaims. (Answer.) Coaster alleges eight counterclaims against FDN: (I) Declaratory Judgment of Non-Infringement; (II) Declaratory Judgment of Invalidity; (III) Tortious Interference with Existing Business Relationships; (IV) Tortious Interference with Prospective Economic Advantage; (V) False and/or Misleading Representation of Fact – Lanham Act; (VI) Unfair and/or Deceptive Trade Practices – Minnesota Uniform Deceptive Trade Practices Act; (VII) Unfair Business Practices – California Business & Professions Code; and (VIII) Contractual and/or Equitable Indemnification. (Answer ¶¶ 121-179.) FDN moves to dismiss Counts III-VIII pursuant to Rule 12. (Mot. to Dismiss, Apr. 18, 2019, Docket No. 95.)

# DISCUSSION

## I. Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotations omitted). The Court "construe[s] the complaint in the light most favorable to the plaintiff[s], drawing all inferences in their favor." *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quotation omitted) (alteration in original).

In reviewing a motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

## II. Preemption

### A. Tortious Interference Claims

Coaster alleges tortious interference based on two theories. First, Coaster alleges that FDN interfered with Coaster and Amazon's business relationship and caused Coaster to lose a portion of its business expectancy through its "overbroad, unsupported claims of copyright infringement against Amazon." (Answer ¶¶ 134, 140.) Second, Coaster alleges that FDN committed "fraud on the Copyright Office" and that such fraud interfered with Coaster and Amazon's business relationship. (*Id.*) Coaster has not alleged facts to support or explain its allegations of fraud.

FDN argues that Coaster's tortious interference claims are preempted by the Copyright Act. "The Copyright Act provides the exclusive source of protection for 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by . . . [§] 106' of the Copyright Act." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (quoting 17 U.S.C. § 301(a)). Thus, state law claims are preempted by the Copyright Act if "(1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state-law-created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106."[1] (*Id.*) As such, FDN must show both that the subject

---

[1] Because Coaster raises the issue, the Court notes that neither *Davidson* nor the Copyright Act requires that a party affirmatively state a claim under the Copyright Act before that party's state law claim may be preempted. To the extent Coaster argues otherwise, that argument fails.

9

matter underlying Coaster's claims falls within the scope of the Copyright Act and that Coaster has a cause of action under the Act.

Coaster's tort claims rely wholly on FDN's allegedly unsupported claims of copyright infringement involving FDN's descriptive text, thus placing them within the subject matter of the Copyright Act. Coaster's allegations of fraud and other bad faith conduct by FDN do not place its tort claims outside the scope of the Copyright Act. Coaster argues that FDN "harassed" Amazon, but fails to allege any actions constituting harassment. Indeed, it appears the only communication FDN had with Amazon was related to FDN's DMCA takedown requests. Likewise, Coaster has failed to provide any factual basis for its allegations of fraud, and the Court is not bound to accept them as true. *See Twombly*, 550 U.S. at 555.

Even so, Coaster's claim will not be preempted unless Coaster has a cause of action under the Copyright Act. FDN argues that Coaster has a cause of action under 17 U.S.C § 512(f), which provides:

> Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages . . . incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

Coaster alleges that FDN's claims of copyright infringement against Amazon and Coaster are overbroad and unsupported, that Amazon may have removed material as a

result of FDN's claims of infringement, and that Coaster has been injured as a result. These allegations fit neatly into the language of § 512(f): if FDN "materially misrepresents . . . that material or activity is infringing . . . [FDN] shall be liable for any damages . . . incurred by [Coaster] . . . as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material claimed to be infringing."

However, as Coaster points out, this section only applies if Amazon is a "service provider." The Copyright Act defines "service provider" as "a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C § 512(k)(1)(B). Coaster argues that Amazon is not a service provider because it is a direct seller of Coaster's products. The Court disagrees. Although Amazon sells Coaster's products, it also provides online services and operates the facilities through which Coaster's products are sold. As such, the Court finds that Amazon is a service provider, that Coaster has a cause of action under § 512(f), and that Coaster's tortious interference counterclaims are preempted by the Copyright Act.

Accordingly, the Court will dismiss Counts III and IV with prejudice.

### B. State Statutory Claims

In asserting its claim under the MUDTPA, Coaster alleges that it owns the copyrights to some of the content on the Website and, as such, that the Notice placed by FDN on the Website wrongfully communicates to users that FDN owns content that in fact belongs to Coaster. Coaster alleges that FDN's Notice "will confuse, deceive, and/or mislead" consumers "as to the true ownership of the content" on the Website and that such

11

misrepresentations will harm Coaster's goodwill and reputation. (Answer ¶¶ 157, 160.) In asserting its claim under the CBPC, Coaster makes only vague allegations that FDN engaged in "unfair" acts that "offend public policy." (*Id.* ¶ 167.) Alone, these allegations are conclusory. Reading this claim in the context of the preceding paragraphs, however, the Court assumes that Coaster's allegations of unfair acts under its CBPC claim refer to FDN's placement of the copyright Notice on the Website.

The Court must decide whether Coaster's MUDTPA and CBPC claims are preempted by the Copyright Act. Like Coaster's tortious interference claims, its state statutory claims involve work that falls within the subject matter of the Copyright Act. Specifically, the work includes the descriptive text and, according to Coaster, other copyrighted content that appears on the Website. As such, Coaster's claims will be preempted if Coaster has a cause of action under the Copyright Act.

FDN argues that the conduct underlying Coaster's claims is governed by 17 U.S.C. § 1202(a). That section states: "No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . . provide copyright management information that is false." Copyright management information ("CMI") includes the name of the author of a work or the copyright owner of a work conveyed in connection with copies or displays of the work. *Id.* §§ 1202(c)(2)-(3). Because the Notice includes information about copyright ownership and is conveyed in connection with copyrighted work on the Website, it constitutes CMI.

Coaster argues that § 1202(a) does not apply because Coaster has not alleged that FDN posted false CMI "knowingly and with the intent to induce, enable, facilitate, or

conceal infringement." *Id.* § 1202(a). The Court disagrees. Coaster alleges that FDN "acted knowingly and deliberately when it made the misrepresentations." (Answer ¶ 162.) Coaster also alleges that it owns the copyright to much of the content on the Website and that the CMI will confuse or mislead consumers as to the content's ownership. It follows from those allegations that Coaster believes FDN posted the CMI knowingly and with the intent to conceal infringement. The Court therefore finds that FDN's alleged conduct with respect to CMI is governed by the Copyright Act, not state statutory law.

Accordingly, the Court will dismiss Counts VI and VII with prejudice.[2]

### III. Foreclosure under *Dastar v. Twentieth Century Fox*

Like its claims under the MUDTPA and the CBPC, Coaster's Lanham Act claim relies on allegations that, by posting the Notice, Coaster misrepresented that it owned all the content on the Website, including content copyrighted by Coaster.

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127). In addition to protecting against trademark infringement, the Lanham Act protects against the use in commerce of "a false designation of origin, or any false description or representation in connection with any goods or services."[3] *Id.* at 29

---

[2] FDN also argues that Counts V, VI, and VII should be dismissed as time barred. Because the Court will dismiss Counts VI and VII as preempted by the Copyright Act and will dismiss Count V as precluded on other grounds, it will not decide the statute of limitations issue.

[3] As relevant here, the Lanham Act states:
> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word,

(internal quotations omitted). The Act "covers origin of production as well as geographic origin." *Id.*

In *Dastar v. Twentieth Century Fox*, the Supreme Court examined the meaning of "origin of goods" as used in the Lanham Act to determine whether "'origin' refers only to the manufacturer or producer of the physical 'goods' that are made available to the public," or whether it also "includes the creator of the underlying work that [was] copied." *Id.* at 31. "[R]eading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were **not** designed to protect originality or creativity), and in light of the copyright and patent laws (which **were**)," the Court concluded "that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37 (emphasis in original). Accordingly, under *Dastar*, a party stating a claim under the Lanham Act must plead facts showing that the defendant misrepresented the origin of tangible goods offered for sale.

---

term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Here, the "goods" offered for sale can only refer to the furniture sold by Coaster. Coaster does not allege that the Notice might confuse the public as to the origin of the furniture, nor could it; the Website makes clear that the furniture is Coaster's. Instead, Coaster alleges that FDN misrepresented copyright ownership of its creative content and that the Notice will confuse the public as to ownership of that content. But the Court in *Dastar* established that the Lanham Act does not protect the authors of creative content.

Even so, Coaster argues that *Dastar* is inapposite for two reasons. First, Coaster argues that *Dastar* applies only to cases involving the copying of uncopyrighted work without credit to the original creator, not to cases such as this one in which "a person is falsely stating to the world that they own a complete copyright in a work." (Def.'s Mem. in Opposition at 26, May 9, 2019, Docket No. 103.) It is true that the *Dastar* Court expressed concern that, if the Lanham Act applied to the unaccredited copying of an uncopyrighted work, the Act would "conflict with the law of copyright" insofar as copyright law grants a "right to copy, and to copy without attribution, once a copyright has expired . . . ." 539 U.S. at 33. But underlying concern over that specific conflict was a broader concern about over-extending "trademark . . . protections into areas traditionally occupied by patent or copyright." *Id.* at 34. To apply the Lanham Act in this case simply because it presents a different copyright issue than that presented in *Dastar* would require this Court to disregard the *Dastar* Court's reasoning entirely.

Coaster also points out that the petitioner in *Dastar* brought a claim under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and argues that *Dastar* does not apply to claims brought under Section 43(a)(1)(B) of the Act. As an initial matter,

15

while Coaster did not specify in the pleadings whether it brought a Lanham Act claim under section 43(a)(1)(A) or 43(a)(1)(B), the language Coaster used mirrors the language in section 43(a)(1)(A).[4] But even assuming, *arguendo*, that Coaster brought its claim under section 43(a)(1)(B), the Court is not persuaded that the claim should proceed. Coaster cites one case, *Cathedral Art Metal Co., Inc. v. F.A.F., Inc.*, where a district court declined to apply *Dastar* to a Lanham Act claim because it was brought under section 43(a)(1)(B). No. C.A. 05-315S, 2006 WL 2583584, at *2 (D.R.I. Sept. 6, 2006). However, several other courts have found that, to avoid overlap between copyright and trademark law, authorship and licensing status should not be considered part of the "nature, characteristics, or qualities" of goods as those terms are used in section 43(a)(1)(B) of the Lanham Act. *See, e.g.*, *ZS Associates, Inc. v. Synygy, Inc.*, Civ. No. 10-4274, 2011 WL 2038513, at *8-9 (E.D. Pa. May 23, 2011); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009). The Court finds those decisions persuasive and in line with the spirit of the Supreme Court's ruling in *Dastar*.

Accordingly, the Court finds that Coaster's Lanham Act claim is precluded by *Dastar v. Twentieth Century Fox* and will dismiss Count V with prejudice.

**IV.    Indemnification**

Coaster seeks indemnification from FDN based on the Agreement and/or equitable principles. Although the allegations are unclear, the Court discerns that Coaster seeks indemnification from FDN for the following: (1) Amazon's demand that Coaster indemnify

---

[4] *Compare* 15 U.S.C. § 1125(a)(1)(A) ("likely to cause confusion, or to cause mistake, or to deceive") *with* (Answer ¶ 147) ("will confuse, deceive, and/or mislead").

16

Amazon for damages arising out of FDN's suit against Amazon; and (2) claims of unspecified non-parties against Coaster. Coaster argues that FDN's allegedly false claims of ownership over images and text related to Coaster's furniture have resulted in Amazon's and others' claims against Coaster, thus triggering FDN's obligation to indemnify Coaster under the Agreement.

As an initial matter, Coaster has failed to allege facts to support its allegation that non-parties have brought claims against it as a result of this action. Moreover, Coaster's argument in support of indemnification is illogical and unsupported by the language of the Agreement. The Agreement requires FDN to indemnify Coaster "from any claim alleging the **software** licensed to Coaster under [the] Agreement infringes any patent, trademark, or copyright." But this case does not involve allegations that the software licensed to Coaster by FDN infringes any patent, trademark, or copyright; instead, it involves allegations that Amazon and Coaster have violated FDN's copyright in its descriptive text. In essence, Coaster asks FDN to indemnify Coaster against payments Coaster may be required to make as a result of FDN's own claims of copyright violations against Coaster and Amazon. Such a request defies both common sense and the plain language of the Agreement.

Accordingly, the Court will dismiss Count VIII with prejudice.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Partial Motion to Dismiss [Docket No. 95] is **GRANTED;** and

2. Counts III, IV, V, VI, VII, and VIII of Defendant's Answer, Affirmative Defenses, and Counterclaims [Docket No. 92] are **DISMISSED** with prejudice.


DATED: August 8, 2019            _____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                             Chief Judge
                                        United States District Court