# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FurnitureDealer.net, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Amazon.com, Inc. and COA, Inc., <br><br> Defendants. | Case No. 18-cv-0232 (JRT/HB) <br><br><br> **ORDER** <br> **FILED UNDER SEAL** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on FurnitureDealer.net, Inc.'s ("FDN's") Motion to Compel Defendant Amazon.com, Inc. ("Amazon") to Produce a Complete Response to Interrogatory No. 2 and Produce Documents Related to its Automated Web Scraping Software [ECF No. 320].  The Court held a hearing on the motion on November 13, 2020.  At the conclusion of the hearing and for the reasons stated on the record, the Court issued an oral order denying FDN's requests to compel Amazon to (1) further supplement its response to FDN's Interrogatory No. 2 with regard to whether each product description was utilized and (2) produce automated web scraping software and related documentation.  (*See* Ct. Mins. at 1 [ECF No. 366].)  The Court took under advisement FDN's request to compel Amazon to supplement its response to Interrogatory No. 2 to include information relating to Amazon's product detail pages distributed to consumers outside of the U.S. marketplace.  That request is the subject of this written order and, for the reasons set forth below, is also denied.

## I.  BACKGROUND

FDN served its first set of interrogatories on Amazon on December 10, 2018. Interrogatory No. 2 reads in full:

> For each Amazon Standard Identification Number ("ASIN") or Amazon product page identified in response to Interrogatory No. 1, identify any descriptive text utilized at any time therewith to describe and/or promote such Coaster product under the Amazon heading "Product Description[,"] the source of such descriptive text, the manner in which such descriptive text was added, the dates such descriptive text was utilized with such ASIN or Amazon product page, and all documents and communications evidencing or confirming the source of such descriptive text.

(Harting Decl. Ex. 1, Sept. 22, 2020 [ECF No. 325-2 at 9–10[1]].)

Interrogatory No. 1, to which the scope of Interrogatory No. 2 was tied, asked Amazon to

> [i]dentify all Amazon Standard Identification Numbers ("ASINs") or Amazon product pages that have been associated with the sale of Coaster products or merchandise.  For each such ASIN or Amazon product page, identify the subject Coaster product, item or merchandise being offered for sale in conjunction therewith.

(Harting Decl. Ex. 1, July 2, 2020 [ECF No. 236-1 at 9].)

Amazon's initial written responses to FDN's interrogatories included a number of boilerplate general objections both to the interrogatories and to the definitions of terms used therein, and purported to "incorporate[] by reference each and every general objection set forth above into each and every specific response set forth below, whether or not separately set forth therein."  [*Id.*]  Aside from the fact that such general objections

---

[1] Unless otherwise specified, page references to docket entries are to the CM/ECF pagination.

are wholly ineffective (*see* footnote 2 below), none of them identified the geographic breadth of the interrogatories as a ground for objection.  [*See id.* at 4–9.]  The specific responses to Interrogatories Nos. 1 and 2 also included several objections, but none took issue with the geographic scope of those interrogatories; the only objections to relevance, burdensomeness, or lack of proportionality specified the lack of a temporal limitation and the breadth of the definition of the term "Coaster."  [*Id.* at 10, 12.]

As for the scope of any intended substantive response, Amazon's response to Interrogatory No. 1 simply stated that "an Appendix of known ASINs as well as associated product titles for products for which Coaster is or has been a vendor to Amazon will be provided to FDN by no later than the time to substantially complete document production."  [*Id.* at 10.]  The response to Interrogatory No. 2 promised that

> [s]ubject to and without waiving its objections, Amazon responds that Amazon is currently investigating what descriptive text was used under the "Product Description" heading as well as the dates for which the text was uploaded to Amazon's systems. Amazon will supplement this response, to the extent that information can be determined, is responsive to this request, and is not otherwise objectionable, by the date by which the parties must substantially complete fact discovery.

[*Id.* at 13.]

But when Amazon eventually produced product description data in response to Interrogatory No. 2, it limited its production to data concerning the U.S. marketplace; it did not make that geographic limitation explicit, however, in its initial response or in six supplemental responses.  (*See* Harting Decl. Ex. 1, Sept. 22, 2020 [ECF No. 325-2 at 11–16].)  Nor did the initial response or supplemental responses to Interrogatory No. 1 suggest that Amazon's production would be thus limited.  (*See* Harting Decl. Ex. 1, July

2, 2020 [ECF No. 236-1 at 10–11].) It was not until August 25, 2020, when Amazon served its seventh supplemental response to Interrogatory No. 2, that it explicitly stated for the first time that its production of product description data "constitutes data stored in Retail Catalog Item Data (RCID) relating to the US Marketplace." (Harting Decl. Ex. 1, Sept. 22, 2020 [ECF No. 325-1 at 16, 34–35].) FDN submits that until it received that supplemental response, it had assumed Amazon was producing responsive product description data for both the U.S. and non-U.S. marketplaces. FDN now seeks to compel Amazon to supplement its response to Interrogatory No. 2 to include non-U.S. marketplace product description data.

Amazon argues that it reasonably read Interrogatory No. 2 as seeking only information relating to product descriptions utilized in the U.S. marketplace, and that it supplemented its response to make that clear only when it realized FDN was laboring under a misunderstanding about the scope of Amazon's response. Amazon also contends that information about product descriptions used outside the U.S. marketplace is neither relevant nor proportional to the needs of the case. Finally, it argues that FDN was not diligent in raising the issue with the Court, and that granting FDN's motion would add weeks or perhaps months to an already protracted discovery period, with little of substantive import to show for it.

## II. DISCUSSION

### A. The Scope of Interrogatory No. 2

The Court first turns to Amazon's contention that Interrogatory No. 2 was limited implicitly to the U.S. marketplace. It is undisputed the interrogatory contains no such

limitation on its face, but Amazon argues that relevance is defined by the claims and defenses in a case, and contends that this case, as described by the Amended Complaint, concerns only Amazon's U.S. website.  Therefore, Amazon argues, it was fair to construe the interrogatory as being similarly limited, and as the scope of its response (from a geographical perspective) matched the scope of the interrogatory thus construed, it had no reason to specify that limitation in its response.

But even assuming *arguendo* that the Amended Complaint alleges infringement only on Amazon's U.S. website, Amazon's argument fails on the premise that a party may ignore the actual text of a discovery request and instead respond as though it were written to fit the responding party's own view of the scope of the lawsuit—*without explicitly setting forth that objection and the corresponding limitation in its response*. Federal Rule of Procedure 33(b)(3) provides that each interrogatory "must, to the extent it is not objected to, be answered separately and fully . . . ."  Rule 33(b)(4) goes on to require that the "grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."  The advisory committee notes underscore this obligation:

> Language is added . . . to emphasize the duty of the responding party to provide full answers to the extent not objectionable.  If, for example, an interrogatory seeking information about numerous facilities or products is deemed objectionable, but an interrogatory seeking information about a lesser number of facilities or products would not have been objectionable, the interrogatory should be answered with respect to the latter even though an objection is raised as to the balance of the facilities or products. . . .
>
> Paragraph (4) is added to make clear that objections must be specifically justified, and that unstated or untimely grounds for objection ordinarily are waived.

5

Fed. R. Civ. P. 33(b) advisory committee's note to 1993 amendment. Amazon's apparent view that a party can simply (and tacitly) "read out" of an interrogatory any scope that in the party's view exceeds the scope of the lawsuit ignores the requirements of Rule 33(b), not to mention the likelihood that the propounding party's view about scope could differ dramatically.

Thus, unless the *actual* language of Interrogatory No. 2 is limited to only those product descriptions used in the "U.S. marketplace," Amazon was responsible for objecting specifically or answering to the full scope of the interrogatory as written, not as Amazon thought it should have been written. On careful review of Interrogatory No. 2, the Court concludes it was not limited to only those product descriptions utilized in the "U.S. marketplace." Amazon's objections, both general and specific, failed to object to the interrogatory as calling for information that was irrelevant or disproportional to the needs of the case insofar as it sought product descriptions used outside the "U.S. marketplace."[2] Moreover, Amazon failed over the course of many months and six

---

[2] Amazon's general objections to the interrogatories "to the extent they are vague, ambiguous, overbroad, unduly burdensome, incomprehensible, harassing, duplicative, and/or documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, or seek to impose burdens beyond those permitted by the Federal Rules of Civil Procedure, including, without limitation, to the extent these Interrogatories mischaracterize or misrepresent Amazon's business activities" (Harting Decl. Ex. 1, July 2, 2020 [ECF No. 236-1 at 7]) have no effect whatsoever. *See, e.g.*, *Applied Underwriters, Inc. v. Top's Personnel, Inc.*, No. 8:15-cv-90, 2017 WL 1214413, at *3 (D. Neb. Mar. 31, 2017); *Cold Spring Granite Co. v. Matthews Int'l Corp.*, No. 10-cv-4272 (JRT/LIB), 2012 WL 13026738, at *6 (D. Minn. Aug. 20, 2012). Amazon would be well-advised in the future to dispense with hoary boilerplate general objections and follow the rules—and the long-established case law—requiring that objections be made with specificity.

supplemental responses to call attention to the fact that it intended to, and ultimately did, limit its answer to the U.S. marketplace. Therefore, unless the Court finds good cause to excuse Amazon's failure, Amazon has waived any objections on those grounds. Fed. R. Civ. P. 33(b)(4).

### B. Whether Amazon's Failure to Object Specifically and to Limit Its Response Explicitly as to Geographic Scope Should Be Excused

While Amazon does not address the issue in precisely these terms, it essentially makes two arguments to excuse its failure to make a timely objection to the geographic scope of Interrogatory No. 2 on relevance and proportionality grounds: (1) that Amazon, although mistaken, acted in good faith when it assumed that Interrogatory No. 2 was directed to use of the allegedly infringing product descriptions in the U.S. marketplace because the Amended Complaint lacked any apparent basis for or reference to alleged infringing acts outside the U.S., and the majority of FDN's discovery requests were explicitly directed to product descriptions that appeared on www.amazon.com (i.e., the U.S. website); and (2) that the burden of gathering the data, and the time it would take to do so, is so disproportionate to the needs of the case that the Court should decline to order Amazon to undertake that burden and further prolong discovery in this case.

A court has broad discretion in determining whether to excuse a party's waiver under Rule 33(b)(4). *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 426 (D. Minn. 2012). In *Cargill*, the court considered the following factors:

> (1) the length of the delay; (2) the reason for the delay; (3) whether the responding party acted in bad faith or engaged in any dilatory action; (4) whether the requesting party has been prejudiced; (5) whether the

>request was overly burdensome; and (6) whether waiver would impose a harsh result on the defaulting party.

*Id.* (citations omitted); *see also CRST Expedited, Inc. v. Swift Transp. Co. of Ariz., LLC*, 328 F.R.D. 231, 236 (N.D. Iowa 2018) (discussing whether enforcement of a waiver would "result in an impermissibly harsh remedy"); *Baxter v. Vick*, 25 F.R.D. 229, 233 (E.D. Pa. 1960) (noting that the court would "hesitate to enforce this waiver if we felt that it would cast an undue burden on defendant or otherwise would be contrary to the interests of justice").

Here, the first *Cargill* factor, the length of the delay, clearly favors waiver. It was more than a year and a half before Amazon explicitly raised relevance and proportionality as objections to the geographic reach of Interrogatory No. 2 and acknowledged that it had limited the scope of its response to that interrogatory accordingly.

But as to the second and third factors, the Court concludes that Amazon and its counsel believed in good faith, albeit mistakenly, that Interrogatory No. 2 sought only information about uses of the allegedly infringing product descriptions on the Amazon.com website, and that the delay in bringing the geographic limitation of the response to FDN's attention was based on that good faith belief, not on an intent to be dilatory or obfuscatory.

For example, in support of its position, Amazon points out that Paragraph 14 of the Amended Complaint states that FDN's "original Coaster content began appearing *on Amazon.com URLs* to promote and sell Coaster furniture. [FDN] conducted an initial

8

investigation which revealed voluminous separate *Amazon.com URLs* containing infringing Coaster material misappropriated and copied from [FDN's] Content Library without authorization." (Am. Compl. ¶ 14 [ECF No. 6]) (emphasis added).) In addition, FDN's Digital Millennium Copyright Act take-down requests were limited to "Amazon.com URLs." (*Id.* ¶¶ 17–19, 24, 27.) Amazon argues that "Amazon.com" is its U.S. website, and therefore the references in the Amended Complaint to infringing content contained on "Amazon.com URLs" are most reasonably understood to refer to URLs on the website Amazon.com, not URLs on any Amazon website anywhere in the world. Amazon also notes that many of FDN's discovery requests specifically identify www.amazon.com as the relevant website and refer to FDN's claims as concerning infringing content on that website. (*See* Zeitlin Decl. Ex. 2 (Requests for Production Nos. 2, 3, 6, 16, 21, 23, 24, 26), Oct. 13, 2020 [ECF No. 350-2].) Moreover, the Amended Complaint asserts only U.S. copyright registrations, and nowhere does it allege a nexus between material on non-U.S. websites controlled by foreign affiliates and any act by the Defendant Amazon.com in the United States, nor does it appear that FDN sought discovery about such a nexus. While FDN's memorandum in support of this motion alleges that Amazon committed copyright infringement on non-U.S. websites and committed "certain acts . . . abroad" that would entitle FDN to damages for infringement occurring outside the United States (*see* FDN's Mem. Supp. Mot. Compel at 13 [ECF No. 322]), no such allegations appear in the Amended Complaint.

Therefore, the Court accepts Amazon's representation that it assumed in good faith, although mistakenly, that Interrogatory No. 2 was geographically limited to the

9

U.S. marketplace, and for that reason failed to object until it became clear that FDN thought otherwise.[3] The second and third *Cargill* factors therefore militate against enforcing a waiver of its objections to an expanded scope on the basis of relevance and proportionality.

As to the fourth factor, FDN argues it has been prejudiced by the delay because it has operated under the assumption that the information Amazon would and ultimately did provide in response to Interrogatory No. 2 was the product of a search across all Amazon websites, not solely Amazon.com. True enough, but if Amazon had raised the objections in its initial responses, and if FDN had taken issue, the parties would have had to engage in the same discussion about relevance and proportionality; the Court would either have upheld the objections or overruled them; and discovery would have proceeded accordingly. The Court does not see that FDN would be unfairly prejudiced if those concerns are instead addressed now.[4]

---

[3] In so doing, the Court does not find, or need to find, that Amazon is correct in its views on the scope of FDN's Amended Complaint. FDN points out, for example, that its use of the phrase "Amazon.com URLs" in Paragraphs 14 and 19 can equally be understood to refer to the Defendant itself and not the U.S. website, and that the URLs therefore are "any URLs belonging to defendant." (FDN's Mem. Supp. at 14.) But FDN ostensibly creates confusion by failing to employ the possessive "Amazon.com*'s*" in referring to the URLs ("Amazon.com's URLs")—as FDN did elsewhere in the Amended Complaint when referring to the party "Amazon.com." (*E.g.*, Am. Compl. ¶¶ 18, 20, 22–24, 26, 29–31, 38, 42, 43, 45, 47, 49, 51, 53, 54, 60, 66.) Inconsistent use of the possessive form alone strikes the Court as an inadequate basis upon which to conclude that the Amended Complaint is limited to U.S. marketplace content. Nevertheless, the fact remains that every one of the allegedly infringing URLs identified in the Amended Complaint and in the DMCA take-down notice was associated with the U.S. "Amazon.com" website.

[4] FDN contends the Court has already ruled that non-U.S. data is relevant, citing the Court's oral order documented in an August 3, 2020, minute entry [ECF No. 296] in

The Court turns now to the fifth and sixth *Cargill* factors—whether the discovery request was unduly burdensome and whether waiver would impose a harsh result on the responding party. To address these factors, the Court must consider the parties' arguments with regard to proportionality.[5]

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In determining whether discovery is proportional to the needs of a case, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of

---

support of its claim that the Court ordered Amazon to produce non-U.S. financial data. But neither the minute entry nor the transcript of that motion hearing contains a finding of relevance or an order for production. [*See* ECF Nos. 296, 302.] Instead, a minute entry for a July 10, 2020, status conference reflects that Amazon *voluntarily* agreed to produce data relating to sales made outside the United States in connection with ASINs associated with the allegedly infringing product descriptions. (Ct. Mins., July 10, 2020 [ECF No. 255].) Again, the Court made no finding of relevance and did not order Amazon to produce the data. Therefore, the Court does not find FDN's reliance on prior oral orders or minute entries persuasive. Nor is the Court inclined to interpret Amazon's agreement to produce non-U.S. sales data as a concession of relevance, as Amazon could have produced the information for any number of reasons, *e.g.*, to save the cost of motion practice, in the spirit of compromise, or because it was not burdensome to do so. Finally, sales outside the U.S. pertaining to product descriptions that appeared on the U.S. website present a different relevance inquiry than information pertaining to product descriptions that were used on non-U.S. websites.

[5] This is not to suggest that the fifth and sixth *Cargill* factors are necessarily satisfied if the Court finds the requested discovery is not proportional, only that some of the factors that bear on proportionality also bear on whether the underlying discovery request was unduly burdensome and whether enforcing a waiver of Amazon's objections would effect a harsh result.

11

the proposed discovery outweighs its likely benefit." *Id.*  As long as information falls within this scope, it need not be admissible to be discoverable. *Id.*

FDN asserts that Amazon "cannot make a principled argument" about burden because it has already pulled the data at issue. (FDN's Mem. Supp. at 17.)  FDN does not explain why it believes that to be the case.  Amazon responds, supported by declaration, that retrieving and producing data from all non-U.S. websites will take at least 180 days (4200 hours of computer time), plus engineer time to write the queries, resolve technical issues, and process the data.  (Amazon's Mem. Opp'n Mot. Compel at 2, 11 [ECF No. 343]; Andrews Decl. ¶¶ 6–7 [ECF No. 349].)  The Court finds, therefore, that producing non-U.S. product description information would be extremely burdensome.

Weighed against that burden is that the information would be of only speculative relevance.  Accepting for the sake of argument that FDN's Amended Complaint does not exclude claims for alleged infringement on non-U.S. websites, even the cases cited by FDN provide at best a narrow path to recover damages for infringement of U.S. copyright registrations outside of the U.S.  *See, e.g.*, *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67 (2d Cir. 1988).  But FDN's supporting memorandum only vaguely refers to "certain acts" that "occurred abroad" that would entitle it to such damages, and FDN has not pointed to any facts to support a claim that alleged infringement on Amazon's foreign websites originated in the United States.[6]  Nor is there any indication that FDN attempted

---

[6] On November 11, 2020, two days before the motion hearing, FDN filed a letter and submitted additional evidence in support of its motion to compel on this issue [ECF No. 355].  Specifically, FDN identified examples of text on Amazon.co.uk listings for Coaster furniture that are substantially similar, if not identical, to listings on Amazon.com with

to conduct the discovery that would have been necessary to establish that nexus. Thus, even if Amazon were required now to undertake the burden (and spend the time) to supplement its response to Interrogatory No. 2 on a worldwide basis, the Court has serious doubts about whether FDN could parlay the results into a viable claim for recovery for extraterritorial infringement under U.S. copyright law without an *additional* weeks- or months-long inquiry into the possible existence of such a nexus. That prospect only underscores the wisdom of establishing the boundaries of proportionality here and now.

In this regard, while the Court does not by any means minimize Amazon's responsibility for its failure to object in a clear and timely manner, FDN is not without a share of that responsibility. The same investigative means by which FDN found the numerous examples of allegedly infringing product descriptions on Amazon.com that it cited in the Amended Complaint could have been employed to look into whether there was also infringement on non-U.S. websites,[7] thus bringing to light at a much earlier date the parties' disconnect regarding the geographic reach of the claims and the associated discovery. Furthermore, FDN knew at least by June 2020 that Amazon had

---

regard to which FDN has alleged infringement. District of Minnesota Local Rule 7.1(i) forbids unsolicited memoranda of law filed without a court's prior permission. FDN did not seek or receive prior permission to file the letter, and the Court could on that ground refuse to consider it. But even if the Court were to consider the letter, all it shows is that by some means, the same text came to be used on at least one non-U.S. website. It does not provide any indication that the use was instigated or directed from the U.S.

[7] The examples provided with FDN's November 11, 2020, letter [ECF No. 355], cited in the prior footnote, bear witness to that capability.

13

geographically limited its searches in response to discovery requests for sales data. (FDN's Mem. Supp. at 8–9.) Granted, sales data is not product description data. But when FDN learned Amazon had imposed a geographic limitation on sales data on the ground that sales in other countries were not a proper subject of the litigation, FDN should have been on notice that Amazon likely had read the same limitation into other discovery requests, such as the request for product description data. This notice should have been heightened, if not confirmed, during the July 3, 2020 deposition of Amazon Rule 30(b)(6) witness Russ Andrews, who testified that Amazon's Appendix B5 included "ASINs and product description data for the U.S. country website and marketplace. (Zeitlin Decl. Ex. 1 (Andrews Tr. 213:15–17, 215:14–16), Oct. 13, 2020 [ECF No. 350-1].) Yet FDN did not file this motion until September 22, 2020.

In conclusion, after considering the factors identified in *Cargill*, the Court finds good cause to excuse Amazon's failure to object to the geographic scope of Interrogatory No. 2, and further finds that Amazon's objections to the relevance and proportionality of the interrogatory, insofar as it sought information regarding product descriptions on non-U.S. websites, are well-taken. Accordingly, the Court denies this aspect of the motion, but with one exception. During the hearing, Amazon's counsel argued that "this problem is solved by our voluntary production of the financial data for all of the accused ASINs worldwide." (Mot. Hr'g Tr. at 35:21–23 [ECF No. 374].) He went on:

> That is, to the extent they want to argue in pretrial motions or at trial that they should get X U.S.[8] profits, they have the financial data they need to

---

[8] The Court understands "X U.S." to mean "outside of the U.S." or "non-U.S."

14

> make that argument for all of the X. U.S. sales that relate to any of the ASINs that they have accused.

(*Id.* at 35:23–36:3.) In response, FDN's counsel raised the question whether the same ASIN was assigned regardless of whether a product was being offered on the "U.S. marketplace" or on another country website. (*Id.* at 42:14–16.) The question is a fair one and important to FDN's understanding of the sales data Amazon has produced. Therefore, Amazon is ordered to supplement its interrogatory responses under oath no later than **January 15, 2021**, to (1) verify that it has produced the requested financial data for all of the accused ASINs worldwide (if it has not already provided that verification), and (2) state clearly whether the same ASIN is used regardless of whether a product appears on the U.S. website or on an "X U.S." website.

Accordingly, **IT IS HEREBY ORDERED** that:

1. FDN's request to compel Amazon to supplement its response to Interrogatory No. 2 to include information relating to Amazon's product detail pages distributed to consumers outside of the U.S. marketplace is **DENIED** except as stated above.

2. For the reasons set forth herein and stated orally at the motion hearing, FurnitureDealer.net, Inc.'s Motion to Compel Defendant Amazon.com, Inc. to Produce a Complete Response to Interrogatory No. 2 and Produce Documents Related to its Automated Web Scraping Software [ECF No. 320] is **DENIED** in its entirety.

3. This Order will be unsealed in its entirety fourteen days from the date of this Order, unless the parties show good cause for specific redactions herein. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information, if any, referred to in this Order, and shall file a joint letter no later than seven days from the date of this Order, identifying with specificity what redactions they believe are required and the basis for those redactions.

Dated: January 4, 2021

                                        *s/ Hildy Bowbeer*
                                        HILDY BOWBEER
                                        United States Magistrate Judge