# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FURNITUREDEALER.NET, INC.,<br><br>                 Plaintiff,<br><br>   v.<br><br>AMAZON.COM, INC., and<br>COA, INC. DBA COASTER<br>COMPANY OF AMERICA,<br><br>                Defendants. | Civil Action No. 0:18-cv-00232 (JRT/HB)<br><br>**DEFENDANTS AMAZON.COM, INC. AND COA, INC. DBA COASTER COMPANY OF AMERICA'S MEMORAMDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S 17 U.S.C. § 1202 CLAIM**<br><br>*~~TEMPORARILY FILED UNDER SEAL~~*<br><br>**PUBLIC REDACTED VERSION** |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ...................................................................................... 5

    A.    FDN built Coaster's website, coasterfurniture.com ....................................... 5

    B.    Coaster furniture is sold on amazon.com ..................................................... 8

    C.    FDN alleges that Defendants copied the Accused 1202 Descriptions from coasterfurniture.com ......................................................................... 10

III.  LEGAL STANDARD ............................................................................. 12

IV.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON FDN'S DMCA CLAIM ...................................................................................... 12

    A.    The Notices do not meet the statutory definition of CMI ......................... 13

           1.    The Website Copyright Notice on the bottom of the coasterfurniture.com webpages is not CMI ................................... 15

           2.    The Nothing On This Page Notice is also not CMI ......................... 18

    B.    FDN cannot establish any claim under section 1202(b) ........................... 25

           1.    FDN's section 1202(b)(1) claim is barred for all but one FDN Description by the statute of limitations ........................................ 25

           2.    FDN's section 1202(b)(3) fails because Defendants did not distribute copies of Accused 1202 Descriptions without CMI ........ 26

           3.    Defendants did not have reasonable grounds to know that the absence of CMI would induce, enable, facilitate, or conceal infringement ....................................................................... 28

           4.    FDN fails to prove any injury traceable to a section 1202 violation ........................................................................................... 30

V.   EVEN IF FDN PREVAILS ON ITS DMCA CLAIM, ITS DAMAGES ARE LIMITED TO STATUTORY DAMAGES FOR *AT MOST* 27 SEPARATE VIOLATIONS ................................................................... 31

    A.    Statutory damages under section 1203 are based on the number of violative acts by the defendant ................................................................. 31

    B.    FDN's interpretation of section 1203 would produce absurd results.......... 34

    C.    FDN's interpretation of section 1203 is unconstitutional ........................... 35

     D.     FDN can show *at most* 27 statutory violations ............................................ 36

VI.     CONCLUSION ........................................................................................................... 37

## I.    INTRODUCTION

Defendant Coaster Company of America ("Coaster") supplies furniture at wholesale, both to brick-and-mortar furniture stores and to ecommerce companies like Defendant Amazon.com, Inc. ("Amazon").  Plaintiff FurnitureDealer.Net, Inc. ("FDN") built a website, www.coasterfurniture.com, to promote Coaster's products.  FDN claims that Defendants[1] copied its descriptions of Coaster furniture (the "FDN Descriptions") from product pages on that website and used them as descriptions for the same Coaster furniture products on Amazon (the "Accused 1202 Descriptions").

This motion concerns not what Defendants allegedly copied from coasterfurniture.com, but what they did *not* copy:  (a) FDN's copyright notice at the very bottom of each webpage (the "Webpage Copyright Notice"); and (b) text on each product page that read "Nothing on this page may be copied or reproduced without explicit permission" (the "Nothing On This Page Notice") (collectively, the "Notices").  FDN claims that these Notices fit the statutory definition of "copyright management information" ("CMI"), and asserts that Defendants' failure to include the Notices alongside Accused 1202 Descriptions on Amazon violated 17 U.S.C. § 1202(b).  Defendants now move for summary judgment on this claim.[2]

---

[1] While this brief uses the term "Defendants," as explained in Coaster's separately filed Motion for Summary Judgment on Coaster-Specific Issues, many of FDN's arguments do not apply to Coaster as a matter of law.  For purposes of this motion only, Defendants assume FDN's arguments apply equally to Amazon and Coaster.

[2] FDN also sued Defendants for copyright infringement.  Defendants have separately moved for summary judgment on that claim.

Section 1202 was enacted in the early days of the internet in anticipation of an automated rights management system that can track and monitor electronic copyright management information when digital content is sold, transferred, licensed, or otherwise distributed online.  Although, over time, the concept of CMI has extended beyond the electronic watermarking it was intended to cover, CMI is not just any information included somewhere on a webpage that also contains a copyrighted work.  Section 1202 specifically requires CMI to be "information conveyed in connection with copies … of a work," and consistent with the original purpose of the provisions of the Digital Millennium Copyright Act ("DMCA") that protects the integrity of CMI:  provide notice about the copyright status of a work for the public and facilitate the detection of copyright infringement by copyright owners.  This rigorous requirement must be satisfied to prevail on a section 1202 claim.

Section 1202 addresses intentional removal of CMI, as well as distribution of copies of a work with knowledge that the CMI has been removed from it without authority.  The DMCA imposes a further hurdle to liability: the plaintiff has the burden of showing that the defendant had reasonable grounds to know that the absence of CMI would induce, enable, facilitate, or conceal copyright infringement.

But contrary to the explicit language and the purpose of the statute, FDN treats section 1202 as a super-copyright claim that will allow FDN to recover excessive damages no matter how tenuous the relationship between the Notices and FDN Descriptions and how thin the evidence that Defendants engaged in the prohibited conduct with the necessary states of mind.  Based on nothing more than its claim that the

Accused 1202 Descriptions appear on Amazon without the Notices, FDN seeks to recover over half a trillion dollars in damages. FDN's claim, as well as its calculation of damages, fails at every step.

*First*, as discussed in Section IV.A, FDN cannot prevail on a claim about the integrity of CMI because it has not identified anything that meets the definition of CMI. Section 1202(c) defines CMI as information conveyed "in connection with" a copyrighted work. The Notices fail to specifically connect with the FDN Descriptions, and the Nothing On This Page Notice is an incorrect statement that cannot convey copyright information about a work. Because there is no genuine dispute that FDN has failed to identify any CMI within the meaning of section 1202(c), its DMCA claim should be dismissed.

*Second*, on undisputed facts, FDN cannot establish any claims under section 1202(b). As discussed in Section IV.B.1, with respect to section 1202(b)(1), which prohibits "remov[al]" of CMI, it is undisputed that for all but one FDN Description, any alleged removal of CMI occurred before January 26, 2015, outside the statute-of-limitations period. Accordingly, summary judgment should be granted on the statute of limitations for all but one FDN Description.

With respect to section 1202(b)(3), which prohibits "distribut[ion]" of copies of works with CMI removed, the undisputed facts show that Defendants, at most, ***displayed*** the Accused 1202 Descriptions on Amazon product pages, and did not—as the statute requires—***distribute*** the Accused 1202 Descriptions. As discussed in Section IV.B.2, summary judgment should be granted on FDN's section 1202(b)(3) claim.

Furthermore, as discussed in Section IV.B.3, FDN cannot establish *any* section 1202(b) claim because FDN cannot prove that Amazon had reasonable grounds to know that the absence of CMI would induce, enable, facilitate, or conceal copyright infringement. There is no evidence that the absence of the Notices induced, enabled, or facilitated even a single instance of infringement. Nor does the record contain any evidence that the absence of the Notices served to conceal infringement. FDN never tried to use the Notices to detect infringement either on Amazon or elsewhere, so their absence did not conceal infringement.

Hence, after extensive discovery, FDN has not produced any evidence that it has been injured by Defendants' alleged violation of section 1202. The statute provides that only those "injured by a violation of section … 1202 may bring a civil action … for such violation"; FDN has no basis to bring such a claim. *See* Section IV.B.4.

**Third**, even if FDN were to prevail on its DMCA claim, it would not be entitled to the over half a trillion dollars it seeks. It is well established that the number of "violations" (and thus the amount of statutory damages) turns on the defendants' acts. As discussed in Section V, FDN's theory stands that principle on its head by basing its damages on the number of views for the copies of the work with CMI removed. The number of violations cannot be, as FDN claims, well over ████████. *See* Ex. 1 at 23 (claiming as separate violations each transaction or glance view by website visitor).[3]

---

[3] Unless otherwise noted, all exhibits are attached to the concurrently filed Declaration of Moon Hee Lee.

4

FDN seeks a windfall based on a statutory interpretation that would create an absurd result and offend due process.  This Court should reject it, and hold instead that the maximum number of violations is 27, the number of batches that FDN points to in alleging Defendants added the Accused 1202 Descriptions to Amazon.

Section 1202 is not a vehicle that allows plaintiffs like FDN to plant traps inside their webpages to obtain a windfall.  Based on the undisputed facts and the governing law, FDN's DMCA claim against Defendants should proceed no further.

## II.    BACKGROUND

The following facts are not in dispute or are as alleged by FDN.  Defendants assume, for the purpose of this motion, that the alleged facts included below are true because even under FDN's version of the facts, FDN's DMCA claim fails.

### A.    FDN built Coaster's website, coasterfurniture.com

FDN makes websites for brick-and-mortar furniture retailers, and as part of this business, it builds and maintains its own online catalogs for products of major furniture manufacturers.  ECF No. 6 ¶ 8.  In 2010, Coaster hired FDN to build, host, and maintain its website, coasterfurniture.com, so that it featured an online product catalog and integrated dealer locator.  Ex. 2 ¶ 1.  As part of Coaster's service agreement with FDN, FDN was to build and maintain an up-to-date "Content Library" of Coaster product information, including "item descriptions," based on the product information provided by Coaster.  *Id.*, ¶ 2.  FDN did just that and created Coaster's online catalog using information, text, and images Coaster provided, and featured it on coasterfurniture.com.  Ex. 3 at FDN00015960 (to create Coaster collection description, FDN employee

"borrowed at least some keywords and phrases directly from [Coaster's] catalog …."); Ex. 4 209:11-22 (FDN CEO Andy Bernstein testifying that "[FDN] did use information from [Coaster] as a starting point"), 211:3-18 (Andy Bernstein testimony that "Coaster provide[d] [FDN] with images … [FDN] used to create [the] product presentations"). As shown below in the example product page on coasterfurniture.com, certain information about the product, such as the "item description," are in a separate boxed area.



Ex. 5 (annotated). The text under the heading "Item Description" is the text that FDN alleges Defendants removed CMI from ("FDN Descriptions"). *See* Ex. 6 ¶¶ 202-03.

The product pages on coasterfurniture.com contained other content that was created or owned by Coaster. *See* Ex. 7 168:3-8 (FDN CTO Joe Craddock agreeing that "not all of the information on an item page on Coaster Furniture.com about the item came from FDN"); 169:1-18 (similar); 176:20-177:12 (at least the photos, Coaster logo, and "[s]ome of the product information" came from Coaster); Ex. 4 131:23-132:17 (similar); 209:5-18 (for "the website that was on coasterfurniture.com we … did receive certain information from Coaster. Absolutely.").

Even though the product pages include information that FDN does not claim to own, FDN placed a version of the following two items on every product page on coasterfurniture.com:

1.     The text "Nothing on this page may be copied or reproduced without explicit permission."

2.     A copyright notice:



*See* EFC No. 6 ¶ 34.

FDN claims that these two Notices, shown below in the example product page, are CMI. *Id.*, ¶ 74.



Ex. 5 (annotated).

**B.    Coaster furniture is sold on amazon.com**

Coaster is an importer and distributor of furniture and furnishings.  *See* Ex. 8.

Coaster's products are described in its twice-annually published catalogs and, since 2010,

on coasterfurniture.com.  *See* Ex. 9 184:12-21; Ex. 2 (website services contract between

FDN and Coaster).  Amazon operates an ecommerce website, amazon.com.  *See* Ex. 6

¶ 38.  Amazon directly sells products to consumers on this website.  *See* Ex. 10 at

AMZ_FD_00042046.  Amazon often contracts with "vendors" to supply those products

to Amazon.  *E.g.*, Ex. 11 (a vendor contract between Amazon and Coaster).  Coaster is

one of Amazon's vendors.  Ex. 11.  In addition, third parties (known as "sellers") can use

Amazon to sell products to consumers.  *See* Ex. 12; *see also* Ex. 10 at

AMZ_FD_00042046.

Products sold on Amazon are associated with "product detail pages"—webpages

on amazon.com that contain information about the products being offered for purchase.

*See* Ex. 6 ¶¶ 65, 112.  In a representative product detail page shown below, the product

description at issue in this case is shown inside a red box, juxtaposed against an enlarged

version:



Ex. 13 (annotated).



There is no evidence that Amazon product detail pages contain a "print" button or otherwise authorize users to make copies of the page for later use.

### C. FDN alleges that Defendants copied the Accused 1202 Descriptions from coasterfurniture.com

By 2013, FDN had determined that FDN Descriptions were appearing on ecommerce sites, including Amazon. Ex. 21 (screenshot of product detail page on Amazon, dated April 13, 2013); Ex. 22 (same); Ex. 4 220:2-221:5 (noting that Andy

Bernstein "took these screenshots two minutes apart" in 2013). There is no evidence that FDN used CMI to try to detect infringement. *cf.* Ex. 4 233:17-241:1 (using text of FDN Descriptions to detect infringement). Rather, FDN found the text of the descriptions themselves by searching the web. FDN's Founder and CEO Andrew Bernstein testified that FDN "hired a copyright person," and ran "a report … from Copyscape that shows sites … that have Coaster description matches …." Ex. 4 235:19-24; 240:24-241:1 (similar). Instead of searching for the presence or copies of the purported pieces of CMI, FDN's CTO "configured the software to go and pull the information about each individual product from [FDN's] database and submit the long description into Copyscape to go and search for potential … copies or close copies out of the Internet." Ex. 7 137:20-140:4.

On January 26, 2018, FDN filed an action against Amazon, ECF No. 1, and on May 14, 2018, amended the complaint to add Coaster as a defendant, ECF No. 6, ¶¶ 3, 49-50. FDN alleges that Defendants used the FDN Descriptions without including the Notices, and brings claims for copyright infringement and violation of integrity of CMI under 17 U.S.C. § 1202. *See* ECF No. 6 ¶ 4.

As of the close of fact discovery, FDN identified 3,998 Accused 1202 Descriptions (and 3,998 corresponding alleged violations of section 1202) that it claims were used on Amazon product detail pages without CMI. *See* Ex. 23, at 18-19. On October 22, 2020—112 days after the close of fact discovery—FDN asserted that ▮▮▮▮▮▮▮▮ section 1202 violations have occurred, based on allegations regarding the number of transactions that occurred for related products, or the number of

times related product detail pages were displayed to consumers, respectively. Ex. 1, at 21-23. FDN's expert has only increased those numbers. Ex. 24 at Fig. 11. FDN's tally for its claimed damages award: ███████.

## III.  LEGAL STANDARD

Summary judgment is appropriate on a claim or defense, or part of a claim or defense, if "the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party is "entitled to all reasonable inferences—those that can be drawn from the evidence without resort to speculation." *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021) (citation omitted). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [factfinder] could reasonably find for the plaintiff." *Id.* (citation omitted). "[I]n responding to a properly supported summary judgment motion, the opposing party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000) (citation omitted). Instead, they must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citation omitted).

## IV.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON FDN'S DMCA CLAIM

To prevail on a claim under section 1202(b), FDN must show that Defendants engaged in at least one of the three ways for improper "removal or alteration of copyright management information":

       (b)     No person shall, without the authority of the copyright owner or the law—

           (1)     intentionally *remove* or alter any [CMI],

           (2)     *distribute* or import for distribution [CMI] knowing that the [CMI] information has been removed or altered …, or

           (3)     *distribute*, import for distribution, or publicly perform … copies of works … knowing that [CMI] has been removed or altered ….

17 U.S.C. § 1202(b) (emphases added).  Additionally, FDN must prove that Defendants engaged in the prohibited conduct with an additional mental state:  "having reasonable grounds to know[] that [the conduct] will induce, enable, facilitate, or conceal an infringement of [copyright]."  *Id.*

      Only sections 1202(b)(1) and (b)(3) are relevant to this case.  ECF No. 6 ¶ 79.  The Court should grant summary judgment in favor of Defendants.

      **A.**      **The Notices do not meet the statutory definition of CMI**

      17 U.S.C. § 1202(c) defines CMI as material (1) "conveyed in connection with" a work, that (2) conveys enumerated copyright information, including "the name of, and other identifying information about," the author or copyright owner of a work, or "[t]erms and conditions for use of the work."  This definition reflects the principle that "the point of CMI is to inform the public that something is copyrighted and to prevent infringement."  *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012).  On the flip side, "[a]llowing a plaintiff to make out a DMCA claim based on alleged CMI that does not link up in any way to the copyright registration is an invitation to unfair litigation against parties who have tried to

tread carefully to avoid copyright infringement." *Id.*

To be "conveyed in connection with a work," the CMI must appear in the "body" or the "area around the work." *Id.* at *6-*7 (citation omitted). A copyright notice on the webpage's footer or a generic prohibition against copying on a webpage is unlikely to satisfy this requirement for proximity. The Notices are, at best, generally associated with the website as a whole (such as the overall web design), and not any specific content (such as the images and text that may appear on a webpage). It is not customary to assume that the *New York Times* owns every photograph that appears on NYTimes.com based on a copyright notice at the footer of the website, or that "Amazon owns copyright with respect to every product it sells" based on the web address amazon.com. *Id.* at *6; *see also Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083, at *12 (D. Kan. Dec. 9, 2015) ("websites generally do not claim ownership or authorship over an image just because the image appears on the website"). Nor could the public have been expected to discern that FDN owned the FDN Descriptions by the presence of the Notices on the webpage.

Furthermore, "[c]ourts … have generally required more than a boilerplate terms of use notice" to qualify as CMI, *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 821 (N.D. Ill. 2017), and rejected items that contain inaccurate information from being CMI, *see, e.g.*, *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668, 670 (9th Cir. 2020) (concluding that an item that provided "fictitious name" is not CMI because it did not correctly identify the owner). The Nothing On This Page Notice is not CMI because it purports to require permission to copy *anything* on the webpage,

even though the webpage contains content that FDN admitted it does not own.  The

Nothing On This Page Notice thus conveys incorrect information and is not CMI.  *See*

*Alan Ross Mach. Corp. v. Machinio Corp.*, No. 17-cv-3569, 2019 WL 1317664, at \*2

(N.D. Ill. Mar. 12, 2019) (the CMI must actually "inform the public that something is

copyrighted and to prevent infringement").

Because both the Website Copyright Notice and the Nothing On This Page

Notice—the only items FDN identifies as CMI—fail to satisfy the statutory definition of

CMI, FDN cannot make out a section 1202 claim.  *See* Ex. 19, at 4-5 (identifying

purported CMI).

> ### 1.   The Website Copyright Notice on the bottom of the coasterfurniture.com webpages is not CMI

The Webpage Copyright Notice, depicted below, is not CMI conveyed "in

connection with" the FDN Descriptions.  It is not "from the 'body' or the 'area around'"

the FDN Description.  *Pers. Keepsakes, Inc.*, 2012 WL 414803, at \*7 (citation omitted).

Furthermore, "[a] general copyright notice on the bottom of the page simply does not

inform the public that something [on the webpage] is copyrighted to prevent

infringement," and so is not CMI.  *Alan Ross*, 2019 WL 1317664, at \*3 (internal

quotation marks omitted).



The *Alan Ross Machinery v. Machinio* case presents a situation that is analogous to the dispute between FDN and Defendants.  Alan Ross brought a section 1202(b) claim against Machinio, alleging that Machinio "extracted data related to approximately 2,000 sales listing of certain machinery from the Alan Ross website and reproduced those listings on the Machinio website," without the copyright notice located on every webpage on the Alan Ross website.  *Id.* at *1.  Just like FDN, Alan Ross claimed that "the copyright notice displayed in the footer" of the webpages was CMI.  *Id.* at *2 (citation omitted).

The court disagreed, observing:

> [W]here the only CMI displayed by Alan Ross appears on the website's footer, not on the works or images themselves, the only conclusion the Court can reach about the general copyright notice at the bottom of Alan Ross's website is that it has some intellectual property rights in its own website, not that it is claiming ownership of a copyright to all of the photographs or information contained in the listing.

*Id.* at *3.  To conclude otherwise would create "a 'gotcha' system where a picture or piece of text has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere on the website."  *Id.* (quoting *Pers. Keepsakes*, 2012 WL 414830, at *7).

The same is true here.  The Webpage Copyright Notice falls squarely into the type of copyright notices at the bottom of webpages that courts routinely reject as CMI.  *See id.* (referring to "the abundance of case law in [that] District that suggests that a general copyright notice on the bottom of a webpage is not CMI 'conveyed in connection with' photographs and listings on those webpages"); *see, e.g.*, *SellPoolSuppliesOnline.com,*

*LLC*, 804 F. App'x at 670-71 (concluding for section 1202(a) claim that the "copyright notice … located at the bottom of the webpage in a shaded box, separating it from the rest of the content on the webpage" cannot be deemed "conveyed in connection with" specific content on the website); *GC2 Inc.*, 255 F. Supp. 3d at 822 (concluding for section 1202(a) claim that the "terms of use link simply appears at the bottom of every page on its website," and was not conveyed in connection with the specific artwork at issue).  A viewer of coasterfurniture.com does not encounter the Webpage Copyright Notice until going past Coaster's logo, images, and the FDN Description—all set in visually distinct areas—and scrolling all the way to the very bottom of the page.  The Webpage Copyright Notice is in the footer, "separating it from the rest of the content on the webpage," and has no connection to the FDN Description.  *SellPoolSuppliesOnline.com, LLC*, 804 F. App'x at 671.  This copyright notice cannot be deemed to be CMI for every individual piece of content on the webpage.  *See Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. 03-4962, 2004 WL 2583817, at *4, *14 (E.D. Pa. Nov. 12, 2004) (no DMCA violation where the book had a copyright notice but the copyrighted photos had no CMI near them).

Additionally, a "copyright notice" that is "generic and [does] not communicate" that the plaintiff owns the specific content at issue (as opposed to the website generally) is not CMI.  *See SellPoolSuppliesOnline.com, LLC*, 804 F. App'x at 670-71.  The court in *Alan Ross* concluded, with respect to the general copyright notice at issue there—"© 2018 – Alan Ross Machinery Corporation"—that "there is simply nothing to suggest that the copyright notice applied to anything other than Alan Ross's website."  2019 WL

1317664, at *3.  This is different from a webpage copyright notice that specifies what the notice applies to—*e.g.*, "Web Site and ***Original Verses***—© (1991-2012)"—which may be eligible as CMI for the poems on that webpage.  *Personal Keepsakes*, 2012 WL 414803, at *6 (emphasis added); *see also Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102-03 (N.D. Ill. 2014) (concluding that a piece of purported CMI—"***Photography***: Don Levey, Don Levey Studio"—may plausibly refer to photograph (emphasis added)).

By contrast, the Webpage Copyright Notice simply states "All rights reserved" or "powered by FurnitureDealer.net," without any reference to the FDN Descriptions.  Therefore, it is too generic to convey information about FDN Descriptions.  At best, it suggests that FDN may have some ownership interest in the website.  There is no genuine dispute of fact on this point:  FDN's expert Jonathan E. Hochman testified that if Defendants had included the Webpage Copyright Notice along with the Accused 1202 Descriptions on Amazon, the result would be "confusing," because it would be unclear what content on the page would be covered based on the Webpage Copyright Notice.  Ex. 25 151:10-152:9.  FDN's Website Copyright Notice is "simply too general to put the public on notice that the [FDN Descriptions] are subject to copyright protection" and is not CMI with respect to FDN Descriptions.  *Alan Ross*, 2019 WL 1317664, at *3.

### 2.    The Nothing On This Page Notice is also not CMI

The only other purported piece of CMI identified by FDN, the Nothing On This Page Notice, fares no better.  The text appears in the middle of the webpage, shown below in the excerpted version of a product page on coasterfurniture.com.



Ex. 5.

Although the text is closer to the FDN Description, it is still not "conveyed in connection" with that description. In *Mills v. Netflix, Inc.*, the piece of purported CMI was a title of a YouTube video, "Fyre Festival COMPLETE Disaster. VLOG of Chaos!" No. CV 19-7618, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020). The court observed that the title "does not appear on Plaintiff's YouTube Video," but instead "on the website where Plaintiff's video was posted." *Id.* Hence, "Plaintiff's DMCA claim fails as a matter of law to the extent it is based on Defendants' alleged removal of the title … from Plaintiff's YouTube Video" rather than the website on which the video was posted. *Id.* Here too a disconnect exists between what the Nothing On This Page Notice refers to (the web page broadly) and the content FDN's section 1202 claim is based on (FDN

Descriptions).  The Nothing On This Page Notice is also placed outside a clear visual

demarcation visually separating it from the box housing the FDN Description.  This

further indicates that the text is not connected with FDN Descriptions.  *See Alan Ross*,

2019 WL 1317664, at *2 (where "there is a clear demarcation between the listings and

the copyright notice … the only plausible explanation is that the copyright notice refers to

the actual pages of the website" as opposed to individual pieces of content).

Even if the Court deems the Nothing On This Page Notice to be "conveyed in

connection with" FDN Description, it cannot be CMI for another crucial defect:  the

statement is incorrect.  According to FDN, the text—"Nothing on this page may be

copied or reproduced without explicit permission."—means that *nothing* on the product

page may be copied without FDN's permission.  Ex. 19 at 4-5.  But it is undisputed that

FDN does not own all of the content on the product pages; FDN's permission is not

required to copy those and uncopyrightable elements.

*Alan Ross* is again instructive.  There, Alan Ross "admit[ed] that it does not own

at least some of the photographs on its website," for instance, some photographs are the

"property of the seller of the item …."  2019 WL 1317664, at *2.  Based on this and "a

clear demarcation" separating the purported CMI from the allegedly copyrighted content,

the court concluded that "the only plausible explanation is that the copyright notice refers

to the actual pages of the website" rather than the material that had been allegedly copied.

*Id.*  Because Alan Ross, like FDN, did not base its DMCA claim on any theory that the

defendant "copied Alan Ross's *pages*" rather than discrete content on those webpages, its

section 1202 claim failed as a matter of law.  *Id.* at *2.  "It is simply not reasonable to

expect a viewer of the website to understand that each photograph was subject to protection when there is nothing near the photographs indicating who owns them."  *Id.* at *3.

FDN has also admitted that at least some of the content on the webpage—such as the logo, images, and product dimensions—is Coaster's content, not FDN's.  *See* Ex. 26 at 6-7 (FDN stating that Coaster provided "the photographs," "certain numeric or alphanumeric identifiers, product names, and collection names," "dimensions of Coaster products," and "product colors for its products that FurnitureDealer imported or otherwise included in its database"); Ex. 7 168:3-12; 169:1-18, 176:20-177:12 (similar); Ex. 4 131:23-132:17 (similar), 209:5-18 (A. Bernstein testimony that "some of the information that [Coaster] provided to [FDN] did appear on [Coaster] website and did get put into those product presentation of [Coaster] products ….").  These items, shown in red boxes below, makes it clear that the statement that "Nothing" may be copied without FDN's permission is incorrect:



Ex. 5 (annotated).

The product pages on coasterfurniture.com also contain facts and other unprotectible (*i.e.*, not copyrightable) elements, shown in green boxes below, that do not require any permission to use. *Id.*



*Id.* It is not true that one would need FDN's permission to copy facts like Coaster's

phone numbers or product dimensions. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499

U.S. 340, 347 (1991).

All told, it is undisputed that there is significant information that neither belongs to FDN nor requires FDN's permission to use:



Ex. 5 (annotated).  There is no dispute of material fact:  FDN's expert, Hochman, expressed that he has "concerns that maybe [the Nothing On This Page Notice is] not accurate."  Ex. 25 146:4-9.  Hochman further testified that in order to be "more accurate," the piece of CMI should, for example, specify that "nothing in this *product description* may be copied or reproduced."  *Id.* 153:9-25 (emphasis added).

What FDN claims as CMI are not CMI according to the statute.  FDN's DMCA claim against Defendants thus fails as a matter of law.

### B.     FDN cannot establish any claim under section 1202(b)

### 1.     FDN's section 1202(b)(1) claim is barred for all but one FDN Description by the statute of limitations

To prevail under section 1202(b)(1), FDN must show that Amazon "remove[d]" CMI from the FDN Descriptions.  The statute of limitations for bringing a section 1202 claim is three years.  17 U.S.C. § 507(b).  Because the complaint was filed on January 26, 2018, *see* ECF No. 1, any alleged act of removal prior to January 26, 2015 falls outside the statute of limitations.

There is no genuine dispute that only one instance of removal of CMI alleged by FDN could have occurred within the statute of limitations period.  The alleged copying would have resulted in exact matches with the content on coasterfurniture.com, because FDN alleges that the copying occurred by, for example, ███████████████████ ███████████████████.  And where there were exact matches, all but one description at issue came from ███████████████████████.  *See* Declaration of Douglas Kidder, Ex. K-A ¶ 12.  Kidder's analysis is unrebutted.

Therefore, there is no dispute of material fact that Amazon's alleged removal of CMI, with one exception, took place outside the statute of limitations.

Summary judgment should be granted for all other FDN Descriptions, and as explained in Section IV.B.3, summary judgment should be granted even as to this one description because FDN cannot show that Defendants possessed the requite scienter for section 1202(b).

> **2.      FDN's section 1202(b)(3) fails because Defendants did not distribute copies of Accused 1202 Descriptions without CMI**

To prevail under section 1202(b)(3), FDN would need to demonstrate that Defendants "*distribute[d]* … copies of works … knowing that [CMI] has been removed." 17 U.S.C. § 1202(b)(3) (emphasis added).  On the undisputed facts, FDN can at most argue that Defendants *displayed* the Accused 1202 Descriptions on Amazon.  Section 1202(b) conspicuously does not prohibit *displaying* copies of a work with CMI removed. And as matter of law, Defendants never distributed the Accused 1202 Descriptions at all.

As used in Title 17, "distribution" is a term of art.  Copyright law defines "publication" as "the *distribution of copies* … of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 101 (emphasis added). But "[a] … display of a work does not of itself constitute publication."  *Id.*; *see also* 17 U.S.C. § 106 (distinguishing a "display" right from a "distribut[ion]" right).  Though the statute distinguishes between "distribution" to the public, which constitutes publication, and mere public "display," which does not, "[c]ourts have reached differing conclusions as to whether merely placing a file on a website constitutes 'publication' within the

meaning of the Copyright Act."  *See Palmer/Kane LLC v. Gareth Stevens Publ'g*, 2017 WL 3973957, at *12 (S.D.N.Y. Sept. 7, 2017).

This Court does not need to discern the precise boundary between online distribution and online display to resolve the question of whether Defendants "distributed" FDN Descriptions without CMI.  In this situation, the Eighth Circuit law is clear.  The Eighth Circuit held long ago that "distribution" under Title 17 requires the transfer of "copies of [a] work."  *See Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993) (emphasis omitted); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1223-24 (D. Minn. 2008) (noting that "*National Car Rental* decision is the binding law of the Eighth Circuit" and that it held that distribution requires "an actual dissemination of … copies" of a work).  Defendants have not transferred copies of the Accused 1202 Descriptions, but instead made them available for viewing.  Under the binding precedent, Defendants have, at most, displayed, not distributed, them by allegedly placing them on Amazon.

FDN cannot circumvent Congress's choice to exclude acts of display from the ambit of 1202 by pointing to the fact that the material was displayed on the web, as opposed to in some other manner.  In numerous cases regarding publication (a standard satisfied by a showing of distribution), courts have found that uploading material to the web, without affirmatively facilitating permanent downloads or printing of the material, is a "display" rather than a "distribution."  *See, e.g.*, *Rogers v. Better Bus. Bureau of Metro Hous., Inc.*, 887 F. Supp. 2d 722, 733 (S.D. Tex. 2012) (the defendants failed "to prove as a matter of law that posting the webpages on the … website constituted a

distribution at all ….”); *Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189, 197

(S.D.N.Y. 2006) (holding that posting images of a play on a website did not constitute

publication); *McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481, 2010 WL 4615772, at *4

(S.D.N.Y. Nov. 9, 2010) (holding that the "claim that images composing the Collection

were posted on her website would not … suffice to plead 'publication'"). This is also the

approach taken by the Copyright Office, which has stated that web material is published

if it is "expressly made available for download, such as when users can click on a

'Download Now' button or similar link to obtain copies." *See* Copyright Office, Circular

66: Copyright Registration of Websites and Website Content, at 4 (2019), *available at*

https://www.copyright.gov/circs/circ66.pdf.

FDN has pointed to no such "Download Now" or "Print" button affirmatively

authorizing viewers to retain a copy of the Accused 1202 Descriptions. Accordingly,

there has been no "distribution" of them by Amazon, and there can be no

section 1202(b)(3) claim.

> **3.      Defendants did not have reasonable grounds to know that the
> absence of CMI would induce, enable, facilitate, or conceal
> infringement**

For any section 1202(b) claim, the plaintiff must prove that the defendant engaged

in the act of removal or distribution "having reasonable grounds to know, that [the

conduct] will induce, enable, facilitate, or conceal an infringement …." *See Stevens v.

Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018) (stating the requirement based on the

language of section 1202(b)). FDN, as "a plaintiff bringing a Section 1202(b) claim"

bears the burden to "make an affirmative showing, such as by demonstrating a past

'pattern of conduct' or 'modus operandi,'" that the defendant possessed that mental state. *Id.* at 674.  FDN cannot do that here.  FDN does not allege that Amazon induced, enabled, or facilitated infringement.  *See* Ex. 27 at 9-11.  FDN also does not offer any evidence that Defendants had reasonable grounds to know that the failure to include the Notices on Amazon would conceal copyright infringement.

First, FDN cannot establish that Defendants had reasonable grounds to know that the absence of the Notices would conceal infringement because FDN can "identify no instance in which the removal of CMI metadata from any [Product Description] … conceal[ed] an infringement." *Corelogic*, 899 F.3d at 675 (emphasis omitted).  Nor does FDN provide any evidence that the absence of the Notices caused a single infringement of any FDN Description by anyone, "let alone a pattern of such infringement likely to recur in the future," so Defendants cannot be liable to FDN under section 1202.  *Id.*

This is not surprising because FDN never used the Notices to prevent or detect copyright infringement.  FDN looked for copyright infringement by using a program that searched for the text of the *FDN Descriptions* rather than the Notices.  Ex. 7 137:20-140:4 (detailed testimony from Craddock explaining how FDN used "Copyscape" to look for "copies or close copies out on the Internet" of "original long descriptions" of products); Ex. 4 233:17-22 (A. Bernstein describing the result of FDN employees who are detecting FDN content on other websites), 240:24-241:1 (A. Bernstein testimony that he generated "a report … from Copyscape that shows sites that are infringing that have *Coaster description matches* …." (emphasis added)).  The fact that FDN has not "ever used CMI … to prevent or detect copyright infringement" "cuts against any inference that

29

CMI … is of any practical significance to [FDN] in policing copyright infringement of [FDN Descriptions]," and undermines its ability to establish "a 'pattern of conduct' or 'modus operandi' involving policing infringement by tracking [the Notices]." *Corelogic*, 899 F.3d at 675 ("the plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alternation of CMI").

Because there is no genuine dispute that Defendants did not have reasonable grounds to know that their actions would conceal copyright infringement, the Court should grant summary judgment on FDN's section 1202 claim in its entirety.

### 4. FDN fails to prove any injury traceable to a section 1202 violation

Only a person "injured by a violation of section … 1202 may bring a civil action … for such violation." 17 U.S.C. § 1203(a). "That § 1203(c) allows for statutory damages in lieu of actual damages does not change the first requirement that [the plaintiff] be injured before it can bring a claim under the Act." *Alan Ross*, 2019 WL 1317664, at *4. FDN cannot bring an action under section 1202 because it can prove no injury traceable to any alleged section 1202 violation.

FDN can offer no evidence for any harm that resulted from the removal of CMI, as opposed to its copyright infringement claim. FDN has not offered any evidence of such harm. FDN's expert, Jonathan Hochman, testified that he has "gone through and … identified some harm from copying," but as to the harm flowing from the removal of CMI, he wavered saying, "the trick is that you're trying to separate out the harm of

removing the CMI from the harm of copying." Ex. 25 155:24-156:3. Hochman could identify no aspect of his report or FDN's evidence that showed an injury from a section 1202(b) violation. Hochman resorted to speculating that the harm that FDN could "potentially" suffer "if the infringement is concealed." *Id.* at 154:11-158:17. This hypothetical injury, is unsupported by evidence and is not enough to allow FDN to bring a claim under section 1202. *See Steele v. Bongiovi*, 784 F. Supp. 2d 94, 98 (D. Mass. 2011) (dismissing section 1202 claim in part because the plaintiff cannot articulate an injury specific to section 1202); *Alan Ross*, 2019 WL 1317664, at *4 (dismissing the section 1202 claim because "[the plaintiff]'s failure to allege any injury … is fatal to its claim"). Because FDN cannot prove an injury under section 1203, the Court should grant summary judgment to Defendants on the section 1202 claim.

## V. EVEN IF FDN PREVAILS ON ITS DMCA CLAIM, ITS DAMAGES ARE LIMITED TO STATUTORY DAMAGES FOR *AT MOST* 27 SEPARATE VIOLATIONS

As with copyright infringement, section 1202 provides a choice of actual damages, violator's profits, or statutory damages. 17 U.S.C. § 1203(c). Statutory damages range from $2,500 to $25,000 "for each violation of section 1202." *Id.*, § 1203(c)(3)(B). As explained below, even if FDN prevails on its section 1202 claim, FDN's statutory damages are limited to an award based on a maximum of 27 violations.

### A. Statutory damages under section 1203 are based on the number of violative acts by the defendant

The number of violations of section 1202—and thus the number of statutory damages available—is the number of "violative acts performed by the defendant."

*McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007). The defendant in *McClatchey* posted the plaintiff's photograph without the CMI to an online platform once; subsequently, the photo was received by the platform's 1,147 subscribers. The court held that there was only one violation, which corresponded to the only violative act the defendant committed: posting the photo. *Id.* The *McClatchey* rule has been widely adopted to limit the number of section 1202 violations to the number of times the defendant intentionally acted to distribute the plaintiff's work. *See, e.g.*, *Stockwire Research Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1267 (S.D. Fla. 2008) ("Following the *McClatchey* analysis, … this Section focuses solely on the Defendants' conduct, or in other words, the number of times the Unauthorized Product was posted on the internet for distribution….") (video posted for permanent download); *GC2 Inc.*, 2018 WL 5921315, at *8 (same) (app posted for permanent download).

The number of recipients who access the content does not affect the number of violative acts. *See McClatchey*, 2007 WL 1630261, at *6 ("The DMCA damages provisions are clearly focused on the defendant's conduct."); *Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, No. 13-C-560, 2016 WL 5794746, at *3 (E.D. Wis. Oct. 4, 2016), *reconsideration granted on other grounds*, 2017 WL 354258 (E.D. Wis. 2017) ("the DMCA applies for each act violating the DMCA without respect to how many individuals are recipients of the affected work").

In view of the clear authority to the contrary, FDN's position that each transaction or page view (referred to as "glance views" by FDN) constitutes a separate violation

cannot stand.  Ex. 1 at 23; Ex. 28 ¶ 204 (stating each transactions indicates at a distribution), ¶ 205 (stating FDN's contention that each glance view constitutes a separate distribution).  These acts are not acts by the Defendants and so are not violations.  *See Stockart.com, LLC v. Engle*, No. 10-cv-00588, 2011 WL 10894610, at *14 (D. Colo. Feb. 18, 2011) ("Courts interpreting Section 1203(c)(3)(B) in the context of unlawful distribution of a copyrighted work on a website have found that 'each violation' constitutes only the violative acts performed by the defendant, or in other words, 'each time a defendant unlawfully posted an unauthorized product for distribution on the internet.") (citation omitted).

FDN cannot obtain a different result by arguing that Defendants performed a violative act each time a product detail page was loaded on amazon.com.  According to FDN's own expert, this common means of loading a modern webpage is based on an automatic process that is triggered by a third party (a customer) who is not controlled by Amazon in any way.  *See* Ex. 6 ¶ 219.  And the court in *Reilly v. Plot Commerce*, specifically rejected FDN's argument:  "Where, as here, the violator posts a single image to a single website, I cannot conclude that each page within that website on which the image appear necessarily implies a separate 'violative act' by the defendant."  No. 15-CV-05118, 2016 WL 6837895, at *11 (S.D.N.Y. Oct. 31, 2016).  The court noted that "[m]any web pages are 'dynamic,'" and that a content "need only be uploaded once to a database before it can be used to create multiple dynamic web pages based on the choices made by the user of the site."  *Id.*  At most, the initial uploading of the content to a

database is the violative act, not subsequent generation of webpages.  The Court should

reject FDN's theory that there is a separate violation each time a web page is loaded.

### B.    FDN's interpretation of section 1203 would produce absurd results

"[S]tatutory damages under Section 1203(c)(3)(B) are not intended to provide

Plaintiff with a windfall totally independent of Defendant's conduct."  *Test Innovators,*

*Inc. v. Revolution Prep, LLC*, No. CV 18-08941, 2019 WL 8198198, at *3 (C.D. Cal.

Sept. 5, 2019).  Courts have rejected requests for damages under section 1202 in the

millions or billions of dollars.  For example, in *Stockwire Research Group*, the Court

observed that a "violation" does not occur each time material is viewed because "the

Court does not believe Congress, in enacting the DMCA legislation, authorized, nor

intended, the requested windfall of between *$29,465,000.00 to $294,650,000.00* in

statutory damages, on the basis of three internet uploads."  577 F. Supp. 2d at 1267 n.8;

*see also Craigslist, Inc. v. Doe 1*, No. C09-4739, 2011 WL 1897423, at *5 (N.D. Cal.

Apr. 25, 2011) (rejecting as improper windfall the plaintiff's bid for "billions of dollars in

damages under the DMCA even though the most it can muster to allege as its actual

damages in an amount in excess of $5,000 per year") (internal quotation marks omitted).

FDN tops them all:  Under FDN's theory that each page view or transaction

constitutes a violation of section 1202, FDN would be eligible for ▮▮▮▮▮▮▮▮▮

▮▮▮▮  in statutory damages for descriptions that FDN charged ▮▮▮▮▮▮▮▮

▮▮▮ .  *See* Kidder Rebuttal Rpt. ¶ 113 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Such a windfall was

not intended by Congress and creates absurd results.  *McClatchey*, 2007 WL 1630261, at

*6 ("Congress would not have intended to make the statutory damages windfall totally

independent of the defendant's conduct."); *see also Arista Records LLC v. Lime Grp.*

*LLC*, 784 F. Supp. 2d 313, 317 (S.D.N.Y. 2011) ("Plaintiffs' position on statutory

damages … offends the 'canon that we should avoid endorsing statutory interpretation

that would lead to absurd results.'")  "The absurdity of this result is one of the factors that

has motivated other courts to reject Plaintiffs' damages theory." *Arista Records*, 784 F.

Supp. 2d at 317 (citing *McClatchey*, 2007 WL1630261, at *4); *Craigslist*, 2011 WL

1897423, at *5 ("Similar to the plaintiffs in *Arista Records* and *Stockwire Research*

*Group*, craigslist seeks a broad interpretation of the DMCA's 'each violation' language

that could produce billions of dollars in damages.  This too would be an absurd result that

was not intended by Congress, particularly considering the factors involved in this

case.").  This Court should also reject FDN's theory to avoid absurd results.

### C.    FDN's interpretation of section 1203 is unconstitutional

FDN's interpretation of section 1203 would also produce result in damages award

that violates the Due Process Clause of the Constitution.  "To the extent an award is

grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary

deprivation of property." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417

(2003) (holding that an award where the ratio between punitive and compensatory

damages was 145 to 1 violated due process).  This well-established principle extends to

recovery under section 1203.  For example, in *Test Innovators*,  the court concluded, in

the context of section 1202 claim, that the plaintiff's request for "an award of almost

9,000 times" the cost incurred by the plaintiff in creating the content cannot comport with

the Constitution. 2019 WL 8198198, at *3 (noting that "[s]uch an exorbitant award would offend the canon that [courts] should avoid endorsing statutory interpretations that would lead to absurd results" (citation omitted)).

FDN here seeks an award of *over* ▮▮▮▮▮▮▮ *times* what it charged Coaster to create the FDN Descriptions (a subset greater than the Accused 1202 Descriptions implicated in FDN's section 1202 claim). It's no wonder that FDN is not seeking actual damages; FDN charged ▮▮▮▮▮▮ throughout the life of its contract with Coaster, which included creating the product descriptions in addition to a host of other services. Kidder Rebuttal Rpt. ¶ 113; Ex. 2. Yet, FDN claims it is entitled to a statutory damages of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 24 at Fig. 11. This cannot be constitutional.

### D. FDN can show *at most* 27 statutory violations

As explained in Defendants' motion for summary judgment on FDN's copyright claim, the FDN Descriptions constitute one work for the purposes of statutory damages because FDN registered them as a compilation and made them available as a compilation. *See, e.g.*, *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010).

The number of violations is no more than 27, which is the maximum number of potential batches in which Amazon added the Accused 1202 Descriptions to its database for use on Amazon product pages. This number is undisputed. As noted above, the alleged copying would have resulted in exact matches with the content on

coasterfurniture.com. Amazon's expert found ████████████████████████

████████████████████████. Kidder Decl., Ex. K-C, at 158 (noting Degen

████████████████████████).

Although, as discussed above, display on Amazon product pages is not

distribution within the meaning of section 1202(b)(3), even if it *were*, Defendants

committed at most 27 violative acts. Therefore, should FDN's claims survive at all, the

Court should hold that the proper measure of FDN's statutory damages is based on at

most 27 violative acts under section 1203.

## VI.  CONCLUSION

FDN cannot show that (1) it has CMI to bring a section 1202 claim, (2) the

essential elements of its DMCA claim, or (3) the exorbitant damages award that it seeks.

Accordingly, Defendants respectfully request that this Court grant summary judgment as

to FDN's section 1202 claim. In the alternative, the Court should find that FDN's

statutory damages on its DMCA claim is limited to a calculation based on at most 27

violative acts.


Dated:  May 14, 2021                         DURIE TANGRI LLP

                                             By:_____/s/ Joseph C. Gratz_____
                                                  Adam R. Steinert (#0389648)
                                                  asteinert@fredlaw.com
                                                  Laura L. Myers (#0387116)
                                                  lmyers@fredlaw.com
                                                  **FREDRIKSON & BYRON, P.A.**
                                                  200 South Sixth Street, Suite 4000
                                                  Minneapolis, MN 55402-1425
                                                  Telephone: (612) 492-7000

Joseph C. Gratz (*pro hac vice*)
jgratz@durietangri.com
Vera Ranieri (*pro hac vice*)
vranieri@durietangri.com
Samuel J. Zeitlin (*pro hac vice*)
szeitlin@durietangri.com
**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

Allyson R. Bennett (*pro hac vice*)
abennett@durietangri.com
Moon Hee Lee (*pro hac vice*)
mlee@durietangri.com
**DURIE TANGRI LLP**
953 East 3rd Street
Los Angeles, CA 90013
Telephone: (213) 992-4499

*Attorneys for Defendant*
*Amazon.com, Inc.*

Dated: May 14, 2021

CISLO & THOMAS LLP

By: _____*/s/ Daniel M. Cislo*_____

Daniel M. Cislo (admitted *pro hac vice*)
dancislo@cislo.com
Kelly W. Cunningham (admitted *pro hac vice*)
kcunningham@cislo.com
Mark D. Nielsen (admitted *pro hac vice*)
mnielsen@cislo.com
Peter S. Veregge (admitted *pro hac vice*)
pveregge@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Suite 1700
Los Angeles, CA 90025
Telephone: (310) 451-0647

38

Rebecca Makitalo (admitted *pro hac vice*)
rmakitalo@cislo.com
**CISLO & THOMAS LLP**
2829 Townsgate Road, Suite 330
Westlake Village, CA 91361
Telephone:   (805) 496-1164

Holley C. Horrell (#399636)
hhorrell@greeneespel.com
Anna M. Tobin (#395706)
ATobin@greeneespel.com
**GREENE ESPEL PLLP**
222 South Ninth Street, Suite 2200
Minneapolis, MN  55402
Telephone:   (612) 373-0830

*Attorneys for Defendant*
*COA, Inc. dba Coaster Company of America*