# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FURNITUREDEALER.NET, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., and COA, INC. DBA COASTER COMPANY OF AMERICA, <br><br> Defendants. | Civil Action No. 0:18-cv-00232 (JRT/HB) <br><br> **FURNITUREDEALER.NET'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S 17 U.S.C. § 1202 CLAIM** |

**REDACTED**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND .............................................................................. 2

I.    DEFENDANTS ███ FURNITUREDEALER.NET'S NARRATIVE
TEXT PRODUCT DESCRIPTIONS ........................................................ 2

**II.    DEFENDANTS UPLOADED THE ███ DESCRIPTIONS
WITH REMOVED CMI AND USED THEM TO POPULATE
AMAZON PRODUCT DETAIL PAGES** .................................................. 5

**III.   FURNITUREDEALER.NET REPEATEDLY REQUESTED THAT
DEFENDANTS STOP DISTRIBUTING THE ███ PRODUCT
DESCRIPTIONS WITHOUT FURNITUREDEALER.NET'S CMI** .... 6

**IV.   DEFENDANTS CONTINUED DISTRIBUTING THE INFRINGING
DESCRIPTIONS WITHOUT FURNITUREDEALER.NET'S CMI
DESPITE REPEATED REQUESTS FROM
FURNITUREDEALER.NET** .................................................................... 7

ARGUMENT ........................................................................................................ 8

I.    FURNITUREDEALER.NET'S NOTICES CONSTITUTED CMI. ............ 9

    A.    Each of FurnitureDealer.Net's Notices Meet the Statutory Definition
of CMI .......................................................................................... 11

II.   DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW THAT
ANY PORTION OF FURNITUREDEALER.NET'S 1202(b)(1) CLAIM IS
BARRED BY THE STATUTE OF LIMITATIONS ................................. 25

    A.    Applying The Discovery Rule, There Are At Least Issues Of Fact
That Preclude Summary Judgment. ............................................. 26

    B.    Even If The Discovery Rule Did Not Apply, There Are Genuine
Issues Of Material Fact. ............................................................... 29

i

III.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT
        ON ANY PORTION OF FURNITUREDEALER.NET'S § 1202(b)(3)
        CLAIM ........................................................................................ 30

        A.    There Is Ample Evidence That Defendants Distributed Copies of
              FurnitureDealer.Net's Product Descriptions With CMI Removed.. 31

IV.     DEFENDANTS KNEW OR HAD REASONABLE GROUNDS TO
        KNOW THAT THEIR ACTS IN VIOLATION OF §§ 1202(b)(1) AND (3)
        WOULD INDUCE, ENABLE, FACILITATE, OR CONCEAL
        INFRINGEMENT ....................................................................... 35

        A.    There Is Substantial Evidence That Defendants Had Actual Or
              Constructive Knowledge That Their Conduct Would Induce, Enable,
              Facilitate, Or Conceal Infringement................................................ 36

        B.    Defendants' Indemnification Agreement Presents a Triable Issue of
              Fact as to Defendants' Actual or Constructive Knowledge. ........... 42

V.      FURNITUREDEALER.NET HAS BEEN INJURED BY DEFENDANTS'
        SECTION 1202 VIOLATIONS. ................................................... 43

VI.     FURNITUREDEALER.NET'S CLAIM FOR STATUTORY DAMAGES
        UNDER SECTION 1203 IS NOT PER SE UNCONSTITUTIONAL, NOR
        WOULD IT PER SE CREATE AN ABSURD RESULT ......................... 48

        A.    Defendants Committed Widespread Violations of Section 1202. ... 49

        B.    FurnitureDealer.Net's Claim For Statutory Damages Will Not Lead
              To An Absurd Result........................................................................ 51

        C.    FurnitureDealer.Net's Claim For Statutory Damages Will Not Lead
              To An Unconstitutional Result......................................................... 53

CONCLUSION ............................................................................................. 56

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanta-Star Auto. Research Corp. of Am. v. Reynolds Ford, Inc.*,
No. CIV-19-912-G, 2020 WL 5823537 (W.D. Ok. 2020) ............................ 18, 19, 23

*Agence France Presse v. Morel*,
769 F. Supp. 2d 295 (S.D.N.Y. 2011).................................................*passim*

*Agence France Presse v. Morel*,
No. 10-cv-02730, ECF. No 298 (S.D.N.Y. Nov. 20, 2013) ........................................ 43

*Alan Ross Mach. Corp v. Machinio Corp.*,
No. 17-CV-3569, 2019 WL 1317664, . (N.D. Ill. 2019) .....................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................ 8

*Arista Records LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 313 (S.D.N.Y. 2011)........................................................ 51

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
758 F. Supp. 1522 (S.D.N.Y. 1991)........................................................ 53

*Bose BV v. Zavala*,
No. 09-cv-11360, 2010 WL 152072 (D. Mass. Jan. 14, 2010)................................... 43

*Bounce Exch., Inc. v. Zeus Enter. Ltd.*,
No. 15CV3268 (DLC), 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) ........................ 12

*Capitol Records, Inc. v. Thomas-Rasset*,
680 F. Supp. 2d 1045 (D. Minn. 2010), *vacated on other grounds*, 692
F.3d 899 (8th Cir. 2012)........................................................ 52

*Capitol Recs., Inc. v. Thomas-Rasset*,
692 F.3d 899 (8th Cir. 2012) ........................................................ 32, 54, 55

*Capitol Recs., Inc. v. Thomas-Rasset*,
799 F. Supp. 2d 999 (D. Minn. 2011), vacated on other grounds, 692
F.3d 899 (8th Cir. 2012)........................................................ 49

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................ 8

*Comcast of Illinois X, LLC v. Hightech Elecs., Inc.*,
　No. 03-cv-3231, 2004 WL 1718522 (N.D. Ill. July 29, 2004) ................................... 43

*Comcast of Illinois X v. Multi-Vision Elecs., Inc.*,
　491 F.3d 938 (8th Cir. 2007) ..................................................................................... 26

*CoxCom, Inc. v. Chaffee*,
　536 F.3d 101 (1st Cir. 2008) ...................................................................................... 43

*Craigslist, Inc. v. Doe 1*,
　No. C09-4739, 2011 WL 1897423 (N.D. Cal. Apr. 25, 2011) ................................... 52

*Crenshaw Media Grp. LLC v. Davis*,
　No. 17-cv-2204, 2018 WL 3496473 (N.D. Tex. July 20, 2018) ................................. 49

*Design Basics, L.L.C. v. Carhart Lumber Co.*,
　No 8:13-cv-125, 2016 WL 424974 (D. Neb. Feb. 3, 2016) ........................................ 26

*Design Basics, LLC v. Chelsea Lumber Co.*,
　977 F. Supp. 2d 714 (E.D. Mich. 2013) .......................................................... 26, 27, 28

*DynaStudy, Inc. v. Houston Indep. Sch. Dist.*,
　325 F. Supp. 3d 767 (S.D. Tex. 2017) ....................................................................... 26

*Energy Intel. Grp., Inc. v. Kayne Anderson Capital Advisors*,
　948 F.3d 261 (D. Tex. 2020) ...................................................................................... 11

*F. W. Woolworth Co. v. Contemp. Arts*,
　344 U.S. 228 (1952) ................................................................................................... 55

*Fair Isaac Corp. v. Fed. Ins. Co.*,
　No. 16-cv-1054, 2021 WL 1111052 (D. Minn. Mar. 23, 2021) ................................. 25

*Fascinations, Inc. v. Amazon.com, Inc.*,
　1:15-cv-06068 (S.D.N.Y. 2015) ................................................................................ 53

*GC2 Inc. v. Int'l Game Tech.*,
　391 F. Supp. 3d 828 (N.D. Ill. 2019) ......................................................................... 33

*Goldstein v. Metro. Reg'l Info. Sys.*,
　No. 15-cv-2400, 2016 U.S. Dist. LEXIS 106735 (D. Md. Aug. 11,
　2016) .......................................................................................................................... 12

*Granger v. One Call Lender Servs., LLC*,
　No. CIV.A. 10-3442, 2012 WL 3065271 (E.D. Pa. July 26, 2012) ............................ 33

iv

*Handeen v. Lemaire*,
    112 F.3d 1339 (8th Cir. 1997) ..................................................................... 8

*Hirsch v. Rehs Galleries, Inc.*,
    No. 18-CV-11864, 2020 WL 917213 (S.D.N.Y. Feb. 26, 2020)........................... 26, 28

*Huffman v. Activision Publ'g, Inc.*,
    No. 219-cv-0005, 2020 WL 867493 (E.D. Tex. Dec. 14, 2020) ................................ 25

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
    No. 08-cv-03181, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010) ................................ 35

*Janik v. SMG Media, Inc.*,
    No. 16-cv-7308, 2018 WL 345111 (S.D.N.Y. Jan. 10, 2018) ......................... 12, 16, 18

*Jedson Eng'g, Inc. v. Spirit Constr. Servs.*,
    720 F. Supp. 2d 904 (S.D. Ohio 2010) .................................................................. 36, 42

*John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*,
    No. 12-cv-4194, 2013 2013 WL 1828671 (N.D. Tex. May 1, 2013).......................... 19

*Maglula Ltd. v Amazon.com, Inc.*,
    No. 19-cv-01570, Dkt. 480 (E.D. Va. May 18, 2021) .................................................. 8

*Mango v. BuzzFeed, Inc.*,
    356 F. Supp. 3d 368 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir.
    2020) .....................................................................................................................*passim*

*McClatchey v. Associated Press*,
    No. 05-cv-145, 2007 WL 1630261 (W.D. Pa. June 4, 2007) ..................................... 50

*McClatchey v. The Associated Press*,
    No. 3:05-cv-145, 2007 WL 776103 (W.D. Pa. Mar. 9, 2007).................................... 37

*Murphy v. Millennium Radio Group LLC*,
    650 F.3d 295 (D.N.J. 2011) .............................................................................. 12, 13

***page***. *GC2 Inc. v. Int'l Game Tech. PLC*,
    255 F. Supp. 3d 812 (N.D. Ill. 2017) ........................................................................ 16

*Pierson v. Infinity Music & Ent., Inc.*,
    300 F. Supp. 3d 390 (D. Conn. 2018)..............................................................*passim*

*Powers v. Caroline's Treasures Inc.*,
    382 F. Supp. 3d 898 (D. Ariz. 2019) ........................................................................ 29

*Preston Wood & Assocs., LLC v. Cameron Architects, Inc.*,
No. 16-cv-1427, 2018 WL 8732108 (S.D. Tex. Nov. 8, 2018) .................................. 34

*Ranco Indus. v. Bos. Floor Mats*,
No. 10-cv-5214, 2011 WL 1237938 (S.D. Tex. Mar. 31, 2011) ................................. 20

*RBH Energy, LLC v. Partners in Church Consulting, LLC*,
No. 15-CV-3988, 2016 WL 6496362 (N.D. Tex. May 6, 2016) ................................ 36

*Reilly v. Commerce*,
No. 15-cv-05118, 2016 WL 6837895 (S.D.N.Y. Oct. 31, 2016)........................... 32, 33

*Sheldon v. Plot Com.*,
No. 15-cv-5885, 2016 WL 5107072 (E.D.N.Y. Aug. 26, 2016) ........................... 49, 50

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ...................................................................................................... 47

*Sony Music Ent. v. Cox Comm'c'ns, Inc.*,
464 F. Supp. 3d 795 (E. D. Va. 2020) ................................................................ *passim*

*Soos & Assocs., Inc. v. Five Guys Enterprises, LLC*,
No. 17-C-06577, 2020 WL 1027885 (N.D. Ill. 2020) .......................................... 18, 23

*Steele v. Bongiovi*,
784 F. Supp. 2d 94 (D. Mass. 2011) .................................................................... 46, 47

*Stevens v. Corelogic, Inc.*,
194 F. Supp. 3d 1046 (S.D. Cal. 2016), *aff'd*, 899 F.3d 666 (9th Cir.
2018) ............................................................................................................................. 41

*Stockart.com, LLC v. Engle*,
No. 10-cv-588, 2011 WL 10894610 (D. Colo. Feb. 18, 2011)............................. 32, 33

*Stockwire Research Grp., Inc. v. Lebed*,
577 F. Supp. 2d 1262 (S.D. Fla. 2008) ....................................................................... 51

*Stross v. Lifestyle LLC*,
No. 20-cv-177, 2020 U.S. Dist. LEXIS 213261 (S.D. Cal., Nov. 5,
2020) ............................................................................................................................. 41

*Tomelleri v. Zazzle, Inc.*,
No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083 (D. Kan. Dec. 9, 2015)................. 17

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir.), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41
    (2019) ................................................................................................. 34

*Ward v. Compound Ent. LLC*,
    No. 18-cv-7268, 2020 WL 6136293 (S.D.N.Y. Apr. 27, 2020) ................................. 31

*Warner Bros. Ent., Inc. v. X One X Prods.*,
    840 F.3d 971 (8th Cir. 2016) ............................................................... 49

*Warren Freedenfeld Assocs., Inc. v. McTigue*,
    531 F.3d 38 (1st Cir. 2008) ................................................................. 28

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*,
    18-cv-07548-AGT, Dkt. 106 (N.D. Cal. 2018), ECF No. 106 ................................. 53

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*,
    No. 18-cv-07548-AGT, 2020 U.S. Dist. LEXIS 163066 (N.D. Cal. Aug.
    17, 2020) ........................................................................................ 34

**Statutes**

Copyright Act section 504 ........................................................................ 51

Digital Millenium Copyright Act ............................................................. *passim*

**Rules**

Fed. R. Civ. P. 56 ....................................................................................... 8

Fed. R. Civ. P. 59 ..................................................................................... 51

**Other Authorities**

S. REP. 105-190 (1998) ............................................................................. 44

## INTRODUCTION

FurnitureDealer.Net uses Copyright Management Information ("CMI") to protect its original narrative text product descriptions—key aspects of FurnitureDealer.Net's business. Defendants removed FurnitureDealer.Net's CMI when they "████████" thousands of pages of FurnitureDealer.Net's www.coasterfurniture.com website. Defendants then widely distributed copies of FurnitureDealer.Net's ██████ product descriptions with CMI removed when they uploaded those copies and when they selected those copies for inclusion in Amazon product detail pages. Defendants' intentional actions violate the protections of 17 U.S.C. §1202.

Defendants seek to avoid liability for their misconduct by raising a host of arguments that are inconsistent with applicable law and ignore—or blatantly misrepresent—the clear evidentiary record. The evidence in this case strongly supports each of FurnitureDealer.Net's 1202 claims, and at the very least presents genuine issues of material fact that preclude summary judgment in Defendants' favor. Defendants' Motion should be denied.

1

## FACTUAL BACKGROUND

Many of the facts relating to this Motion are set out in FurnitureDealer.Net's

Memorandum in Support of its Motion for Partial Summary Judgment. Dkt 505 at 2-11.

Those facts are summarized below, together with additional facts relevant to this Motion.

**I.    DEFENDANTS ████████ FURNITUREDEALER.NET'S NARRATIVE TEXT PRODUCT DESCRIPTIONS**

Effective February 29, 2010, FurnitureDealer.Net and Coaster entered into an

agreement under which FurnitureDealer.Net ████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ Ex. 1 ¶ 1 (FDN00000956).[1]  Consistent with

the agreement, FurnitureDealer.Net developed, maintained, and hosted the website

www.coasterfurniture.com, and used FurnitureDealer.Net's original content—including

narrative text product descriptions—to dynamically populate the website. Ex. 2

(Craddock Dep. 18:23-20:20, 57:19-25); Ex. 1 at -960; Ex. 3 (A. Bernstein Dep. Vol. 1,

190:23-191:9); Ex. 4 (Furiani Dep. 128:12-130:5).

In 2014, Coaster and Amazon entered into a Vendor Terms and Conditions

contract.████████████████████████████████████████████████

████████x. 5 (AMZ_FD_00002103); Ex. 6 (AMZ_FD_00000944); Ex. 7

(AMZ_FD_00001295). Pursuant to this agreement, starting in late 2014 and extending at

---

[1] Exhibits citations are to the Declaration of John K. Harting filed concurrently

herewith.

least into 2016, ██████████████████████████████████████████

█████████████████████████████████████████████████████

████████    Ex. 8 (Sullivan Dep. 54:10-66:20, 78:12-20, 145:10-147:22, 172:17-

175:17); Ex. 9 (AMZ_FD_00003004) at 3006. Defendants were aware that

FurnitureDealer.Net owned the product descriptions that Defendants ██████ from the

www.coasterfurniture.com website. Ex. 10 (Clinton Dep. 12:1-15:10, 77:8-12); Ex. 11

(COA 020147); Ex. 12 (COA 017458); Ex. 13 at 14-16; Ex. 14 (Konetzny Dep. 94:7-

98:21). Indeed, FurnitureDealer.Net included conspicuous CMI on each page of the

www.coasterfurniture.com website.



Ex. 15 (FDN00055233) (modified).

## II. DEFENDANTS UPLOADED THE ██████ DESCRIPTIONS WITH REMOVED CMI AND USED THEM TO POPULATE AMAZON PRODUCT DETAIL PAGES

Defendants used the ██████ product descriptions to create Amazon product detail pages for Coaster products.[2] Ex. 16 (AMZ_FD_00000845) at -860; Ex. 17 (AMZ_FD_00043710) at -12; Ex. 18 (AMZ_FD_00036409). As part of that process, Defendants first █████████████████████████████████████ without FurnitureDealer.Net's CMI. *See, e.g.*, Ex. 19 (AMZ_FD_00003010); Ex. 10 (Clinton Dep. 145:2-148:2); Ex. 41; Ex. 8 (Sullivan Dep. 144:15-145:9). Defendants also frequently █████████████████████████████████████ ███████████████████ Ex. 21 (Goginsky Dep. 210:1-216:21).

Additionally, Defendants selected the ██████ product descriptions, without FurnitureDealer.Net's CMI, for use in dynamically generating product detail pages on Amazon.com, █████████████████████████████████ ██████████████ Ex. 22 (AMZ_FD_000042442); Ex. 23 (Andrews Dep. Tr. 120-127); Ex. 24 (AMZ_FD_000042626); Ex. 25 (AMZ_FD_000042527); Ex. 26 at 14. To make this determination, Amazon uses a ████

---

[2] Defendants incorrectly assert in their brief that FurnitureDealer.Net identified its 1202 contentions after the close of fact discovery. Dkt. 503 at 11. As detailed in briefing before the Court, from the outset of this case, FurnitureDealer.Net placed Defendants on notice that Defendants' "removal or alteration of copyright management information ... and their subsequent distribution of improperly modified works" constituted violations of the DMCA. Dkt. 6 ¶¶ 76-77. Moreover, FurnitureDealer.Net timely produced supplemental Initial Disclosures identifying a specific calculation of statutory damages in response to Defendants' own untimely discovery. Ex. 27 (FurnitureDealer.Net's Seventh Supplemental Initial Disclosures).

█ algorithm. Ex. 22; Ex. 28 (Kidder Rebuttal Report) ¶¶ 45-46. █████████

███████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

### III. FURNITUREDEALER.NET REPEATEDLY REQUESTED THAT DEFENDANTS STOP DISTRIBUTING THE ████████ PRODUCT DESCRIPTIONS WITHOUT FURNITUREDEALER.NET'S CMI

In a written "DMCA takedown request," FurnitureDealer.Net identified 394 representative examples of Amazon.com URLs containing infringing product descriptions. Ex. 29 (AMZ_FD_00038597). After receipt of FurnitureDealer.Net's request, Amazon conducted an investigation and determined that the descriptions being distributed by Defendants matched FurnitureDealer.Net's copyrighted descriptions. Ex. 32 (Heaney Dep. 76:4-14, 77:4-82:1); Ex. 10 (Clinton Dep. 226:2-227:1; 227:22-231:9); cf. Ex. 33 (Bundy Dep. 86:3-88:24, 90:15-17). Coaster similarly determined that FurnitureDealer.Net's product descriptions from www.coasterfurniture.com were being used on Amazon product detail pages. Ex. 34 (Ko Dep. Vol. 1, 123:12-125:10). Yet, Defendants did not stop distributing the infringing descriptions. Ex. 37 at 16-17.

Amazon also Amazon falsely represented to FurnitureDealer.Net that all of the identified descriptions had been supplied by Coaster, despite determining that at least

some of the product detail pages referenced in FurnitureDealer.Net's February 2016

notice contained product descriptions that had been supplied by third-party Amazon

marketplace sellers. Ex. 32 (Heaney Dep. 76:4-14, 77:4-82:1); Ex. 38

(AMZ_FD_00040750).

## IV. DEFENDANTS CONTINUED DISTRIBUTING THE INFRINGING DESCRIPTIONS WITHOUT FURNITUREDEALER.NET'S CMI DESPITE REPEATED REQUESTS FROM FURNITUREDEALER.NET

Amazon did ultimately remove FurnitureDealer.net product descriptions from

approximately 2,000 Amazon ASINs in mid-2018, but that was not until nearly six

months after FurnitureDealer.Net brought suit against Defendants for copyright

infringement and DMCA violations. Ex. 37 at 16-17. Moreover, even as of Amazon's last

discovery production in this case, Amazon continued to distribute at least some

FurnitureDealer.net product descriptions without FurnitureDealer.Net's CMI. Ex. 39

(Exhibit 5A to the Rebuttal Report of Douglas Kidder) at row 57274; Harting Decl. ¶ 41.

## ARGUMENT

Summary judgment should only be granted where there is no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that the facts material to the motion are not in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment is appropriate, the Court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

By ignoring much of the factual record, as well as FurnitureDealer.Net's detailed discovery responses, in an effort to demonstrate that there is no dispute of fact, Defendants' motion continues an unfortunate pattern of aggressive attempts by Amazon to avoid liability for intellectual property abuses based on hyper-technical arguments. *See e.g., Maglula Ltd. v Amazon.com, Inc.*, No. 19-cv-01570, Dkt. 480 at 2-3 (E.D. Va. May 18, 2021) (denying summary judgment and noting that "Amazon, led by its accomplished lead counsel, has aggressively—perhaps too aggressively at times—defended against the accusations in the Complaint").

In their motion, Defendants similarly ignore the factual record and raise a variety of legal arguments—with only cursory analysis—that find no support in the law of this Circuit. For this reason, alone, Defendants' motion should be denied in its entirety. *See Handeen v. Lemaire,* 112 F.3d 1339, 1345-47 (8th Cir. 1997) (summary judgment inappropriate due to "inadequacies" in defendant's analysis of the factual record).

8

However, even were the Court to substantively analyze Defendants' arguments, the arguments fail.

Viewing the evidence in a light most favorable to FurnitureDealer.Net, there are numerous issues of material fact that preclude summary judgment for Defendants on FurnitureDealer.Net's 17 U.S.C. § 1202 claims. Defendants' motion must be denied.

## I.    FURNITUREDEALER.NET'S NOTICES CONSTITUTED CMI.

Throughout the time it hosted the www.coasterfurniture.com website, FurnitureDealer.Net included conspicuous CMI on each page of the website in direct proximity to its copyrighted content. This CMI was in the form of multiple distinct

notices on every product detail page (where the bottom box highlights separate notices):



Ex. 15 (FDN00055233) (modified).

First and second, at the bottom of the page, FurnitureDealer.Net included a copyright notice stating "powered by: FurnitureDealer.Net," and further including a copyright registration symbol with the following information: "(c) [date]-[date] FurnitureDealer.net, Inc., All rights reserved. Nothing on this page may be copied or reproduced without explicit permission." (hereinafter referred to collectively as the "Copyright Notice"). *Id.* Third, in the middle of the page, FurnitureDealer.Net included a

notice stating that "[n]othing on this page may be copied or reproduced without explicit permission." *Id.* (hereinafter referred to as the "Nothing on this Page Notice"). These notices signaled to consumers and the public more generally that content on the page—including the narrative text product description on each page—was subject to FurnitureDealer.Net's copyright protections.

17 U.S.C. § 1202 defines "copyright management information" as "***any of the following information*** conveyed in connection with copies or ... displays of a work":

> (1) The title and other information identifying the work, including the information set forth on a notice of copyright. [***or***]
> (2) The name of, and other identifying information about the author of the work. [***or***]
> (3) The name of, and other identifying information about the copyright owner of the work, including the information set forth in a notice of copyright. [***or***]
> …
> (6) Terms and conditions for use of the work.

17 U.S.C. § 1202(c) (emphasis added).

Despite CMI's broad definition, Defendants argue that FurnitureDealer.Net's two notices are not CMI, but instead were a "trap[]" "plant[ed]" by FurnitureDealer.Net "to obtain a windfall." Dkt. 503 at 5. FurnitureDealer.Net's CMI notices were exactly the type of notices defined as CMI under § 1202(c), and Defendants' willful removal of these notices is precisely the type of actions the DMCA was intended to protect against.

### A.    Each of FurnitureDealer.Net's Notices Meet the Statutory Definition of CMI

Section 1202(c) defines CMI to include "***any of***" the items listed in (1)-(8) and is broadly construed. 17 U.S.C. § 1202(c) (emphasis added). *see also, e.g.*, *Energy Intel.*

*Grp., Inc. v. Kayne Anderson Capital Advisors*, 948 F.3d 261, 276-77 (D. Tex. 2020)

(PDF file names identifying each version of copyrighted daily newsletter constituted

CMI); *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 305 (D.N.J. 2011)

(copyright owner's name in a printed "gutter" credit near an image constituted CMI);

*Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305-06 (S.D.N.Y. 2011)

(attributions "Morel" and "by photomorel" on Morel's TwitPic page may constitute

CMI); *Empire Med. Rev. Servs., Inc. v. CompuClaim*, Inc., 326 F. Supp. 3d 685, 692

(E.D. Wis. 2018) (the DMCA establishes "broad and common-sense protection of

copyrighted works"); *Goldstein v. Metro. Reg'l Info. Sys*., No. 15-cv-2400, 2016 U.S.

Dist. LEXIS 106735, at *25 (D. Md. Aug. 11, 2016) ("had Congress intended CMI to be

equivalent to a notice of copyright, it could and would have said so.").

   Indeed, the statute imposes no specific requirements regarding placement of CMI,

but requires only that CMI be "***conveyed in connection with***" displays of a work. 17

U.S.C. § 1202(c). This requirement is also broadly interpreted:

> The term "conveyed" is used in its broadest sense and is not
> meant to require any type of transfer, physical or otherwise, of
> the information. It merely requires that the information be
> ***accessible in conjunction with, or appear with***, the work being
> accessed.

*Janik v. SMG Media, Inc*., No. 16-cv-7308, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10,

2018) (quoting S. Rep. No. 105–190 at 35 (1998)) (emphasis added); *see also Bounce*

*Exch., Inc. v. Zeus Enter. Ltd.*, No. 15CV3268 (DLC), 2015 WL 8579023, at *3

(S.D.N.Y. Dec. 9, 2015) ("'In connection with,' by plain reading and common sense,

comprehends information conveyed in or with a copyrighted work if that information

otherwise satisfies § 1202(c)'s criteria."). In contrast to traditional notices of copyright, the statutory definition of CMI is thus "extremely broad, with no restrictions on the context in which such information must be used in order to qualify as CMI." *Murphy*, 650 F.3d at 302.

### 1. FurnitureDealer.Net's Notices On Each Product Detail Page Constitute CMI.

As shown above, FurnitureDealer.Net included three notices on every product detail page of the www.coasterfurniture.com website, with each notice constituting CMI. These Notices include several items of information that each ***individually qualify as CMI*** under the enumerated list of Section 1202.

First, the Copyright Notice at the bottom of each page, alone, provides several forms of CMI, including:

- The "name, and other identifying information about," both the author of the work and the copyright owner (qualifying as CMI under 17 U.S.C. § 1202(c)(2)-(3).

- The dates of copyright and registration symbol (which provides "information identifying the work, including the information set forth on a notice of copyright," thus satisfying § 1202(c)(1).

- The language in the Copyright Notice stating "All rights reserved," and "Nothing on this page may be copied or reproduced without explicit permission" (which constitutes "[t]erms and conditions for use of the work" per 17 U.S.C. § 1202(c)(6)).



Ex. 15 (FDN00055233) (modified).

The Nothing on this Page Notice in the middle of each page also constitutes CMI as "[t]erms and conditions for use of the work."  *See* 17 U.S.C. § 1202(c)(6).



Ex. 15 (FDN00055233) (modified).

In relation to the Nothing on this Page notice (but not in relation to the Copyright Notice), Defendants cite to *GC2* to argue that mere "boilerplate" terms of use do not qualify as CMI. Dkt. 503 at 14. Yet, the holding in *GC2* was based not on the content of

15

the terms of use, but on the fact that they were conveyed on a webpage as a link to a **separate page**. *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 821-22 (N.D. Ill. 2017). As the court in *Pierson* observed, the cases cited by the *GC2* court do not support the proposition in *GC2* that courts "have generally required more than a boilerplate terms of use notice near a copyrighted work in order to find a party liable for distributing false CMI." *Pierson v. Infinity Music & Ent., Inc.*, 300 F. Supp. 3d 390, 395-96 (D. Conn. 2018) (citing *GC2*, 255 F. Supp. 3d at 821-22). Rather, in each case, the holding was fact specific.

> **2.    FurnitureDealer.Net's Notices On Each Product Detail Page Were Conveyed In Connection With the Product Descriptions.**

Defendants also contend FurnitureDealer.Net's notices are not CMI because they were not "conveyed in connection with" the copyrighted material. Dkt. 503 at 13-15. However, the record is clear that the notices were in fact "conveyed in connection with" each of FurnitureDealer.Net's copyright protected product descriptions.

FurnitureDealer.Net's notices were both "accessible in conjunction with" and "appeared with" the product description, as they were easily viewable above and below the product description as part of the website appearing on a consumer's computer screen. *See Janik*, 2018 WL 345111, at *12  (quoting S. Rep. No. 105–190 at 35 (1998)). A consumer viewing a product detail page would understand that FurnitureDealer.Net's Copyright Notice at the bottom of the page indicating that the page was "powered by" FurnitureDealer.Net, that "all rights [are] reserved," and that "***nothing on this page*** may

16

be copied or reproduced," applied to all content "*on this page*," including the textual product description located above the notice.

Likewise, a consumer viewing a product detail page would understand FurnitureDealer.Net's Nothing on this Page Notice, in the middle of the page, to indicate that the textual product description *immediately below the notice* is content "on this page" that may not be copied or reproduced. Indeed, a consumer would need to read over the bolded Nothing on this Page Notice in the middle of the page before even reaching the product description.

Contrary to Defendants' argument, "[p]hysical proximity is not the only appropriate measure of whether a copyright notice constitutes CMI." *Pierson*, 300 F. Supp. 3d at 396 (link to Terms of Use appearing at the bottom of webpage conveyed in connection with photographs on the webpage); *Tomelleri v. Zazzle, Inc*., No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083, at *13 (D. Kan. Dec. 9, 2015) ("[T]he phrase 'conveyed in connection with copies ... of the work' [does not require] that the information be located immediately adjacent to the image to qualify as CMI.").

As Defendants acknowledge, "the point of CMI is to inform the public that something is copyrighted and to prevent infringement."  Dkt. 503 at 13 (citing *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012)). Consistent with this broad purpose, the DMCA does not require that CMI appear on the work itself. *Mango v. BuzzFeed, Inc*., 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019) ("[T]he gutter credit need not be on the Photograph or present in the Photograph's metadata to constitute protected CMI."), *aff'd*, 970 F.3d 167 (2d Cir. 2020).

17

Rather, the issue is whether the notice is in the "area around" or "close enough" to the copyrighted work. *See Janik*, 2018 WL 345111, at *12.

In determining whether a notice is "close enough" to the copyrighted work, courts have held that a notice located "directly on the page containing the copyrighted material" is "physically proximate to the copyrighted work." *See, e.g.*, *Soos & Assocs., Inc. v. Five Guys Enterprises, LLC*, No. 17-C-06577, 2020 WL 1027885, at *4 (N.D. Ill. 2020); *Mango*, 356 F. Supp. 3d at 372, 378; *Agence France Presse* 769 F.Supp.2d at 305.

Indeed, courts have routinely held that copyright information positioned at the bottom of a webpage is "conveyed in connection with" copyrighted content on the page. *Pierson*, 300 F. Supp. 3d at 391-92, 396 (copyright notice and a link to terms of use in a website footer were "conveyed in connection with" a photograph positioned near the top of the webpage, even where printed webpages spanned 3-5 pages); *Advanta-Star Auto. Research Corp. of Am. v. Reynolds Ford, Inc.*, No. CIV-19-912-G, 2020 WL 5823537, at *4 (W.D. Ok. 2020) (refusing to dismiss the plaintiff's CMI claim where the alleged CMI was positioned in a website footer below copyright protected text)

Similarly, in denying Coaster's motion to dismiss, this Court correctly held that "if FDN is the owner of the Website ... a blanket notice covering its own contributions and others' is perfectly valid." Dkt. 91 at 20.

The record now before the Court is clear that FurnitureDealer.Net was the sole and exclusive owner of "all ... content, intellectual property, html pages ... and design elements" incorporated into and appearing on the www.coasterfurniture.com website. Ex. 1 at -957 ¶ 11.

18

While Coaster provided some product information to FurnitureDealer.Net, such as product photos and dimensions, FurnitureDealer.Net made modifications to ***all such*** content before incorporating it on the website. Ex. 40 (Plaintiff FurnitureDealer.Net, Inc.'s Fourth Supplemental Answer to Amazon.com, Inc.'s First Set of Interrogatories) at 5; Ex. 3 (A. Bernstein Dep. Vol. 1, 132:6-24; 136:8-137:10); Ex. 40 at 5-7. As such, FurnitureDealer.Net's CMI notices were properly placed to convey this broad claim of rights. Dkt. 91 at 20.

Defendants also now assert that there are unprotectable facts on the product detail pages, "like Coaster's phone numbers."  Dkt. 503 at 23. Yet a consumer viewing a product detail page would surely understand the distinction between a phone number and elements subject to copyright protection on the product detail page. Moreover, Defendants' argument would require a separate CMI notice on every individual piece of protected content on the product detail page, which is both impractical and indeed not required by law. *See Agence France Presse*, 769 F. Supp. 2d at 305 ("This Court rejects the movants' argument that CMI must be removed from the photograph itself to state a claim for removal or alteration of CMI."); *Advanta-Star*, 2020 WL 5823537, at *4 (distinguishing *SellPoolSuppliesOnline.com* and *Personal Keepsakes* on the grounds that neither of those cases involved a situation in which the "copyrighted work is the text comprising the body of the webpages.");  *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 12-cv-4194, 2013 2013 WL 1828671, at *4 (N.D. Tex. May 1, 2013) (1202(a) violation where web page footers conveyed false copyright management

19

information); *Ranco Indus. v. Bos. Floor Mats*, No. 10-cv-5214, 2011 WL 1237938, at \*3 (S.D. Tex. Mar. 31, 2011) (same).

FurnitureDealer.Net's notices—positioned both above and below the product descriptions—are even more closely associated with the infringed content than the CMI "conveyed in connection with" the works in *Pierson* and *Advanta-Star*. On each product detail page, a consumer can easily view FurnitureDealer.Net's Copyright Notice and Nothing on this Page Notice on the same page.



Ex. 15 (FDN00055233) (modified). *See, e.g.*, *Pierson*, 300 F. Supp. 3d at 396 (terms of

use provided **on a separate webpage** constituted CMI).

Defendants rely heavily on *Alan Ross* for their assertion that FurnitureDealer.Net's

notices fail to adequately convey that the notice and terms applied to the textual product

descriptions on the page. Dkt. 503 at 16-18 (citing *Alan Ross Mach. Corp v. Machinio*

*Corp.*, No. 17-CV-3569, 2019 WL 1317664, at \*4. (N.D. Ill. 2019) (hereinafter, *Alan Ross III*).

Importantly, Alan Ross failed to present any evidence that it held copyrights in the content at issue. *Alan Ross III*, 2019 WL 1317664, at \*3, n.2, n.3 (questioning whether the content at issue was subject to copyright protection at all, and noting that the plaintiff failed to even address it); *see also Alan Ross II*, 2018 WL 6018603, at \*2, n.1 (N.D. Ill. Nov. 16, 2018). The court in *Alan Ross III* was thus evaluating whether the plaintiff's copyright notice applied to content that was not copyright protected at all—a fact influencing the court's determination that "there is simply nothing to suggest that the copyright notice applied to anything other than Alan Ross's website." *Alan Ross III*, 2019 WL 1317664, at \*3.

As the *Alan Ross* court recognized, "[a]llowing a plaintiff to make out a DMCA claim based on alleged CMI that ***does not link up in any way*** to the copyright registration is an invitation to unfair litigation against parties who have tried to tread carefully to avoid copyright infringement." *Alan Ross II* at \*2 n.1 (quoting *Pers. Keepsakes, Inc.*, 975 F. Supp. at 928-29) (emphasis added). Here, rather than reflecting a claim against parties who have tried to tread carefully to avoid copyright infringement, the Defendants engaged in widespread copying of FurnitureDealer.Net's product descriptions despite express knowledge that they did not have rights to do so. Ex. 34 (Ko Dep. Vol. 1, 123:12-139:4;  163:3-165:24 ); Ex. 4 (Furiani Dep. 198:1-4, 198:18-24, 199:16-21); Ex. 36 (Gold Dep. 209:18-211:6); Ex. 14 (Konetzny Dep. 94:7-98:21; 214:4-215:21);109:18-22); Ex. 35; Ex. 29; Ex. 30; Ex. 13 at 14-16.

22

Additionally, contrary to the record in this case, *Alan Ross III's* holding that the terms and conditions were not conveyed in connection with individual listings was based on the fact that the terms and conditions themselves were "located on a separate page." *Alan Ross III*, 2019 WL 1317664 at *4.

Defendants' reliance on *Mills v. Netflix, Inc.* is similarly misplaced, where the court in *Mills* determined that that the alleged CMI, a title located above an embedded video, could not have been removed from the video itself. No. 19-cv-7618, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020)*. As the *Advanta-Star* court observed, such holdings do not apply to a situation, as here, where the "copyrighted work is the text comprising the body of the webpages." *Advanta-Star*, 2020 WL 5823537 at *4.

Thus, FurnitureDealer.Net's Copyright Notice and FurnitureDealer.Net's Nothing on this Page Notice, each individually constitute CMI conveyed in connection with the product descriptions. *See, e.g.*, *Soos & Assocs.*, 2020 WL 1027885, at *4 (CMI was "clearly conveyed in connection with the copyrighted work" where it was directly on each page containing the copyrighted material).

Even if FurnitureDealer.Net's separate notices on every product detail page do not individually constitute CMI conveyed in connection with the product description, the notices in combination certainly do. As they appeared on each product detail page, FurnitureDealer.Net's notices sandwiched the product description with CMI.



Ex. 15 (FDN00055233) (modified).

The multiple notices sandwiching the content on the page signaled to consumers that content on the page was subject to copyright protections. Thus, the notices together constituted CMI conveyed in connection with the descriptions because they provided an even stronger indication to consumers that content on the page (and particularly content positioned between the notices) was subject to copyright protections.

24

3.    **At a Minimum, There is a Disputed Issue of Fact Regarding Whether FurnitureDealer.Net's Notices Constitute CMI.**

The factual record indicates that FurnitureDealer.Net's multiple notices on the product detail pages of the www.coasterfurniture.com website were undisputedly CMI "conveyed in connection with" the product descriptions. At the very least, however, there is a genuine issue of material fact regarding whether the notices were "close enough" or in the same "area" as the copyrighted content. *See Pierson*, 300 F. Supp. 3d at 396; *Huffman v. Activision Publ'g, Inc.*, No. 219-cv-0005, 2020 WL 867493, at *14 (E.D. Tex. Dec. 14, 2020) (a reasonable jury could decide that CMI located on a CD next to a copyrighted image was "conveyed in connection with" the image). For this additional reason, Defendants' motion should be denied.

## II.    DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW THAT ANY PORTION OF FURNITUREDEALER.NET'S 1202(b)(1) CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

FurnitureDealer.Net's claim under 1202(b)(1) relates to Defendants' acts of "intentionally remov[ing]" FurnitureDealer.Net's CMI when Defendants ▮▮▮▮▮ or otherwise copied thousands of product descriptions from the www.coasterfurniture.com website. 17 U.S.C. § 1202(b)(1); Ex. 8 (Sullivan Dep. 54:10-66:20, 78:12-20, 145:10-147:22, 172:17-175:17); Ex. 16 at -860; Ex. 9 at -3006; Ex. 41 (AMZ_FD_00043718).

Defendants bear the burden to demonstrate that the undisputed factual record establishes FurnitureDealer.Net's claim is time barred. *Fair Isaac Corp. v. Fed. Ins. Co.*, No. 16-cv-1054, 2021 WL 1111052, at *2 (D. Minn. Mar. 23, 2021). Defendants failed to

25

meet their burden. Defendants' assertions are unsupported by the evidence and fail to even address application of the "discovery rule" to the facts of the case.

Courts within the Eighth Circuit have "uniformly applied the discovery rule" to statutes of limitation for copyright infringement. *Design Basics, L.L.C. v. Carhart Lumber Co.*, No 8:13-cv-125, 2016 WL 424974, at *3 (D. Neb. Feb. 3, 2016) (collecting cases).

Under the discovery rule generally, "a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation." *Comcast of Illinois X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 944 (8th Cir. 2007) (citation omitted). The rule is evaluated under a "reasonable person" standard. *Id.*

Courts also routinely apply the discovery rule to claims under Section 1202. *See, e.g.*, *Hirsch v. Rehs Galleries, Inc.*, No. 18-CV-11864, 2020 WL 917213, at *5 (S.D.N.Y. Feb. 26, 2020); *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, __ (S.D. Tex. 2017). Thus, in evaluating Defendants' statute of limitations defense, the "discovery rule" should apply. *See Comcast of Illinois X*, 491 F.3d at 944 ("In federal question cases, the discovery rule applies 'in the absence of a contrary directive from Congress.'" (citation omitted)).

### A.     Applying The Discovery Rule, There Are At Least Issues Of Fact That Preclude Summary Judgment.

Under the discovery rule, a claim does not accrue based ***only*** on when a defendant commits an infringing act. *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d

714, 725 (E.D. Mich. 2013) (no evidence of "storm warnings" that would reasonably put the plaintiff on inquiry notice). Here, Defendants cited no evidence demonstrating when FurnitureDealer.Net "discover[ed], or with due diligence should have discovered, the injury forming the basis of" its CMI removal claim. *Id.* at 723-724 (citations omitted).

Defendants began ██████ FurnitureDealer.Net's product descriptions from the www.coasterfurniture.com website ██████████. Ex. 8 (Sullivan Dep. 54:10-55:19, 57:18-25, 62:12-63:14, 66:3-20, 78:12-20, 145:10-19, 147:1-22, 172:17-175:17); Ex. 9 at 3006. Significantly, this ██████ was first conducted by Amazon personnel as ████████████ public-facing product detail pages. Ex. 41; Ex. 42 (Amazon's 9th Supp. Resp. to FurnitureDealer.Net's First Set of Interrogatories) at 20-23; Ex. 9 at 3006. After █████ the product descriptions and removing FurnitureDealer.Net's CMI in the process, ████████████████ ████████████████████████████ ██████████ *See, e.g.*, Ex. 43 (AMZ_FD_00003002); Ex. 19; Ex. 44 (AMZ_FD_00031030); Ex. 45 (AMZ_FD_00031037).

Yet Defendants' motion fails to cite *any evidence* demonstrating that FurnitureDealer.Net was on inquiry notice of Defendants' section 1202(b)(1) violations before January 22, 2015. *See Chelsea Lumber Co.,* 977 F. Supp. 2d at 724.

While Defendants assert that FurnitureDealer.Net was aware that infringing descriptions were appearing on Amazon.com as of April 2013, (Dkt. 503 at 10) there is *no evidence* that FurnitureDealer.Net was aware that Defendants ██████ product descriptions from the www.coasterfurniture.com in late-November, 2014, and thereby

27

removed FurnitureDealer.Net's CMI.[3]  Rather, when FurnitureDealer.Net first advised
Amazon of infringing product descriptions appearing on Amazon product detail pages,
FurnitureDealer.Net believed that the infringing content had been supplied by Amazon
third-party marketplace sellers. Ex. 46 (A. Bernstein Dep. Vol 2, 81:18-82:13; 153:1-13;
155:6-17). It was not until April 2016, when Amazon (falsely) advised
FurnitureDealer.Net that Coaster had supplied all of the infringing product descriptions at
issue that FurnitureDealer.Net had any reason to believe that Defendants had violated
section 1202(b)(1). Ex. 38.

Moreover, Amazon's public distribution of infringing product detail pages without
FurnitureDealer.Net's CMI would not alone place FurnitureDealer.Net on inquiry notice
of Defendants' 1202(b)(1) violations. A copyright holder is under no duty to police the
market for infringement of her copyright. *See, e.g., Hirsch v. Rehs Galleries, Inc.*, No.
18-cv-11864, 2020 WL 917213, at *5 (S.D.N.Y. Feb. 26, 2020) (under the DMCA, no
general duty to police the internet for infringing activity); *cf. Warren Freedenfeld
Assocs., Inc. v. McTigue*, 531 F.3d 38, 46 (1st Cir. 2008); *Chelsea Lumber Co.*, 977 F.
Supp. 2d at 725.

---

[3] Such evidence would be particularly relevant where Amazon first had to process
the product descriptions, and begin utilizing the descriptions to dynamically populate
product detail pages within the next month for such conduct to occur prior to the three
year statute of limitations. Indeed, under Defendants' suggested approach, Defendants
could remove CMI, but end-run liability by waiting three years to make such removal
known.

Thus, there is clear evidence from which a jury could find that no part of FurnitureDealer.Net's 1202(b)(1) claim is barred by the statute of limitations, and Defendants' motion should be denied. *See Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 908 (D. Ariz. 2019) ("The question of whether Plaintiff's claim accrued in 2009 or 2017 is properly presented to the jury." (citing *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 305 F. Supp. 3d 788, 795 (N.D. Ohio 2018)).

### B. Even If The Discovery Rule Did Not Apply, There Are Genuine Issues Of Material Fact.

Even if the "discovery rule" did not apply—which it does—there are genuine issues of material fact that preclude summary judgment for Defendants. Defendants claim that violations of 1202(b)(1) are limited to instances in which "***there were exact matches***" between the product descriptions ███ by Defendants and the infringing content appearing on Amazon product detail pages. Dkt. 503 at 25. Defendants' motion thus rests on an erroneous assumption that Defendants cannot be liable for CMI removal where, are removing FurnitureDealer.Net's CMI, Defendants made minor modifications to the ███ content.

Defendants either did or did not remove FurnitureDealer.Net's CMI. A reasonable jury could find that, where two product descriptions are, for example, remarkably alike, but something as simple as the color was changed, Amazon ███ the description and then changed the color in its spreadsheet.

As FurnitureDealer.Net's expert, Carl Degen, explained there were actually ███ potentially ███ product descriptions, including ███ descriptions that were not

exact matches, but where, for example, a typo was fixed or the color of the furniture item
changed from, e.g. brown to black:

> I understand that FDN contends that scraping one of FDN's
> copyright-protected product descriptions and removing its
> copyright management information constitutes a violation of
> DMCA even if Defendants later made minor changes to
> ▮▮▮▮▮ descriptions—***making the Kidder Report's
> requirement that a*** ▮▮▮▮ ***product description exactly match
> an FDN product description erroneous***.

Ex. 47 (Degen Rebuttal Report) ¶ 26 (emphasis added). Defendants have not met their

burden to identify what portion of these 2,022 DMCA violations post-date January 26,

2015. At the very least, Defendants' motion presents an incomplete analysis and an issue

of fact remains as to which instances of scraping in which Defendants modified the

▮▮▮▮ description post-dated January 26, 2015.

## III. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ANY PORTION OF FURNITUREDEALER.NET'S § 1202(b)(3) CLAIM

Section 1202 also precludes parties from "***distribut[ing]*** ... copies of works ...

knowing that copyright management information has been removed or altered without

authority of the copyright owner or the law." 17 U.S.C. § 1202(b)(3) (emphasis added).

Defendants' motion regarding § 1202(b)(3) is based on two false premises. First,

Defendants inaccurately equate the act of "distributing" copies in violation of 1202(b)(3)

with "publication." Looking past this linguistic sleight of hand, the record supports a

finding that Defendants engaged in extensive distributions in violation of 1202(b)(3).

Second, Defendants argue that they lacked the requisite intent for liability under section

1202(b)(3). Again the record demonstrates otherwise.

A.   **There Is Ample Evidence That Defendants Distributed Copies of FurnitureDealer.Net's Product Descriptions With CMI Removed.**

Section 1202(b)(3) provides that "[n]o person shall, without authority of the copyright owner – distribute ... copies of works ... knowing that [CMI] has been removed or altered without authority of the copyright owner ...."  Defendants argue that "[a]s used in Title 17, 'distribution' is a term of art," but fail to define this alleged term of art, citing instead purported definitions for the terms "publications" and "display."  Dkt. 503 at 26.

To the extent that Defendants argue that distribution and publication are synonymous, that is clearly incorrect. 17 U.S.C. § 101 demonstrates as much, defining "publication" (not distribution) and clearly reflecting that "publication" is narrower than "distribution" because "publication" only arises from a specific means of "distribution"— "distribution of copies ... of a work to the public by sale or other transfer of ownership, or by rental lease, or lending."  Indeed, in *Capitol Records, Inc. v. Thomas*, Judge Davis expressly rejected an identical argument that "distribution" and "publication" are synonymous. 579 F. Supp. 2d 1210, 1219 (D. Minn. 2008).

In contrast to the stringent requirements for publication, courts have routinely found that displaying or posting content on a website constitutes ***distribution*** under section 1202. *See, e.g.*, *Mango*, 356 F. Supp. 3d at 377-78 (act of displaying content on website without CMI was a "distribution"); *Ward v. Compound Ent. LLC*, No. 18-cv-7268, 2020 WL 6136293, at *5 (S.D.N.Y. Apr. 27, 2020) ("After defendant removed plaintiff's CMI from the Photograph, it displayed the altered images on the Compound website, thereby violating § 1202(b)(3)"), *report and recommendation adopted*, No. 18-

31

cv-7268, 2020 WL 4496763 (S.D.N.Y. Aug. 3, 2020); *Reilly v. Commerce*, No. 15-cv-05118, 2016 WL 6837895, at *11 (S.D.N.Y. Oct. 31, 2016) ("Plot Commerce posted the altered image to the Charged.fm Website, thereby distributing a work with the knowledge that its CMI was removed in violation of subsection 1202(b)(3)."); *Stockart.com, LLC v. Engle*, No. 10-cv-588, 2011 WL 10894610, at *14 (D. Colo. Feb. 18, 2011) (posting images on a website constituted  distribution in violation of 1202(b)(3)), *report and recommendation adopted*, Order dated Apr. 7, 2011 (Text Only Order).

The goal of the DMCA was to "adapt" copyright protections to "digital networks" and "keep pace with emerging technology."  S. Rep. No. 105-190, 2 (1998). Consistent with that goal, online "offers of access" constitute distributions under section 1202, regardless of whether a copy has been disseminated or received. Ex. 48 (FDN00063957); *Capitol Recs., Inc. v. Thomas-Rasset,* 692 F.3d 899, 906 (8th Cir. 2012) (affirming grant of permanent injunction enjoining defendant from "upload[ing]" copyright protected content to peer-to-peer networks); *Sony Music Ent. v. Cox Comm'c'ns, Inc.*, 464 F. Supp. 3d 795, 811 (E. D. Va. 2020) (reasonable jury could find distribution right was directly violated based on evidence of subscribers' use of peer-to-peer file sharing network).

The record demonstrates that Defendants distributed copies of FurnitureDealer.Net's product descriptions with CMI removed in a number of ways. Each of these could validly be found by the jury to constitute a violation of 1202(b)(3).

First, after removing FurnitureDealer.Net's CMI, Defendants ███████████

████████████████████████████████████████████████████

████████████████. Ex. 41; Ex. 8 (Sullivan Dep. 144:15-145:9). A reasonable

32

jury could find each such upload constitutes an unauthorized distribution, as courts have held that uploading content online, to facilitate unauthorized access by third parties, constitutes a "distribution" in violation of section 1202. *Reilly*, 2016 WL 6837895, at *11; *Stockart.com*, 2011 WL 10894610, at *14; *Granger v. One Call Lender Servs., LLC*, No. CIV.A. 10-3442, 2012 WL 3065271, at *5 (E.D. Pa. July 26, 2012) ("Defendants posted the infringing product onto the internet on six separate occasions ... thereby committing six violative acts.")

Moreover, Defendants ███████████████████████████████ ████████████████████████████████████████████ ██████ Ex. 49 (Hochman Opening Report) ¶¶ 207-08. Courts have found that "reuploads" of content constitute separate distributions, in addition to initial "uploads" of the same content. *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 850 (N.D. Ill. 2019) (violations where defendants "uploaded" and "reuploaded copyrighted assets … to servers accessible by … users."). FurnitureDealer.Net's expert, Carl Degen, identified the number of such uploads that could reasonably be found to constitute violations of section 1202(b)(3). Ex. 50 (Degen Rebuttal Figure 11).

Second. ████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████. The record demonstrates that Amazon did not simply create static copies of product detail pages. Rather, every time a consumer visited a product detail page, Amazon used a profit-oriented algorithm to specifically select the product description to distribute. Ex. 22; Ex. 23 (Andrews Dep.

33

120-127). As explained in FurnitureDealer.Net's affirmative Motion for Partial Summary Judgment, Amazon's selection was designed to identify and distribute the most sales-conducive product description available from Amazon's databases. Dkt. 505 at 29-31.

Significantly, Defendant Amazon's own experts allege that Amazon utilized this selection process at all times relevant to this action. Ex. 28 ¶¶45-46. At least one court has specifically held that Amazon's use of profit-oriented selection algorithms to select infringing material constitutes a volitional act. *See generally Williams-Sonoma, Inc. v. Amazon.com, Inc*., No. 18-cv-07548-AGT, 2020 U.S. Dist. LEXIS 163066, at *15-16 (N.D. Cal. Aug. 17, 2020); *cf. VHT, Inc. v. Zillow Grp., Inc*., 918 F.3d 723, 732 (9th Cir.) ("[D]irect copyright liability for website owners arises when they are ***actively involved*** in the infringement"), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019).[4]  Mr. Degen also calculated the number of times Amazon selected and distributed ███████ product descriptions without FurnitureDealer.Net's CMI. Ex. 50.

The number of unauthorized distributions Defendants performed in violation of section 1202(b)(3) is a question for the jury. Defendants' motion for summary judgment should be denied. *Preston Wood & Assocs., LLC v. Cameron Architects, Inc*., No. 16-cv-1427, 2018 WL 8732108, at *2 (S.D. Tex. Nov. 8, 2018) (refusing to disturb jury's

---

[4] While the *Zillow* court separately found that an ***automated*** photo selection did not amount to volitional conduct, here, Amazon uses its product description algorithm to "make[] an editorial, qualitative decision among different [product descriptions] of the same product, regardless of any rights ... to enhance product sales and boost internet traffic on Amazon's website." *See Williams-Sonoma*, 2020 U.S. Dist. LEXIS 163066, at *16.

finding that the defendant violated §1202 11,516 times when it sent emails to third parties containing the same infringing material); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 08-cv-03181, 2010 WL 4366990, at *42 (S.D. Tex. Oct. 27, 2010) (genuine issue of fact as to whether defendant's acts were violative).

## IV.    DEFENDANTS KNEW OR HAD REASONABLE GROUNDS TO KNOW THAT THEIR ACTS IN VIOLATION OF §§ 1202(b)(1) AND (3) WOULD INDUCE, ENABLE, FACILITATE, OR CONCEAL INFRINGEMENT

Defendants seek summary judgment on FurnitureDealer.Net's claims under both section 1202(b)(1) and (b)(3). Dkt. 503 at 28-30. Devoting fewer than two pages to their argument, Defendants assert that FurnitureDealer.Net has not "allege[d] that Amazon induced, enabled, or facilitated infringement."  *Id.* at 29. Defendants are incorrect, and once again ignore the evidentiary record, including FurnitureDealer.Net's detailed discovery responses and the extensive evidence cited therein. Defendants also ignore that their removal of CMI operated to ***actively conceal their own infringement***. The evidence of Defendants' wrongful intent is clear and, at the very least, there are genuine issues of material fact that preclude a grant of summary judgment for Defendants.

Section 1202 prohibits parties from removing CMI and distributing copies of works without CMI where the defendant knows or has reasonable grounds to know "that it will induce, enable, facilitate, or conceal an infringement of any right under [Title 17]." This element may be demonstrated by actual or constructive knowledge. *Mango*, 356 F. Supp. 3d at 377. Moreover, the infringement that may be induced, enabled, facilitated, or concealed may be that of a third party or it may be ***the defendant's own infringement***.

*See id.; RBH Energy, LLC v. Partners in Church Consulting, LLC*, No. 15-CV-3988, 2016 WL 6496362, at *1 (N.D. Tex. May 6, 2016).

Courts have consistently held that, where a defendant's actions also constitute copyright infringement, the defendant knew or had reasonable grounds to know that its DMCA violations would conceal at least *its own infringement*. *Mango*, 356 F. Supp. 3d at 378 (employee acted with requisite knowledge because he "should have reasonably known that altering [CMI] ... would have wrongfully implied that BuzzFeed had permission to use the Photograph, thus concealing its infringement."); *RBH Energy*, 2016 WL 6496362, at *1 (requisite knowledge where defendant "attempted to conceal its [own] infringement" and further "had grounds to know that it would enable and facilitate further infringement by any web user who could copy and use" the image.).

Courts have also looked to the relationship between co-defendants and found that a co-defendant's insistence on an indemnification clause is sufficient to create a triable issue of fact as to whether the defendant had the requisite knowledge. *See, e.g.*, *Jedson Eng'g, Inc. v. Spirit Constr. Servs.*, 720 F. Supp. 2d 904, 931 (S.D. Ohio 2010).

As explained below, Defendants' argument ignores the evidentiary record, which demonstrates several points in time at which a jury may determine that Defendants had the requisite knowledge.

      **A.    There Is Substantial Evidence That Defendants Had Actual Or Constructive Knowledge That Their Conduct Would Induce, Enable, Facilitate, Or Conceal Infringement.**

The question of Defendants' intent is one for the jury. *See Pierson*, 300 F. Supp. 3d at 396-97 ("[I]ntent is always a subjective matter of inference and thus rarely

amenable to summary judgment." (citations omitted)). Here, the record is replete with
evidence from which a jury could determine that Defendants had the requisite actual or
constructive knowledge.

It is undisputed that Defendants knew that FurnitureDealer.Net owned the product
descriptions on the www.coasterfurniture.com website, and ███████████████████
██████████████████ Ex. 12; Ex. 51 (FDN00054781): Ex. 14 (Konetzny Dep. 94:7-
98:21), Ex. 4 (Furiani Dep. 144:7-146:22); Ex. 11; Ex. 13 at 14-16; Ex. 1 at -957 ¶ 11;
Ex. 10 (Clinton Dep. 13:1-15:10, 77:8-12).

Despite this knowledge, Coaster and Amazon entered an agreement which
purported to authorize ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████ removing FurnitureDealer.Net's CMI in the process. Ex. 5 ¶ 2; Ex. 6 ¶¶ 2, 3; Ex.
9 at -3006; Ex. 8 (Sullivan Dep. 54:10-66:20, 78:12-20, 145:10-147:22, 172:17-175:17);
Ex. 16 at -860; Ex. 41. Each of these thousands of pages contained CMI that
conspicuously identified FurnitureDealer.Net as the owner of copyrights to content
appearing on the █████ pages, expressly stating that content appearing on the pages
may not be "copied or reproduced without explicit permission." *See, e.g.* Ex. 15
(FDN00055233).

Based on these facts alone a jury could find that Defendants knew, or should have
known, that their actions would induce, enable, facilitate, or conceal infringement. *See
McClatchey v. The Associated Press*, No. 3:05-cv-145, 2007 WL 776103, at *6 (W.D. Pa.

37

Mar. 9, 2007) ("[A] reasonable factfinder could conclude that by cropping out the copyright notice, Defendant had the requisite intent to induce, enable, facilitate or conceal infringement."); *see also Agence France Presse*, 2014 WL 3963124, at *5, *7 (fact that AFP works in an industry where copyright is prevalent and has extensive experience with copyright ownership relevant to liability).

But there is more. Upon receipt of FurnitureDealer.Net's written notice identifying infringing product descriptions, Amazon conducted an internal investigation and confirmed that the product descriptions appearing on Amazon product detail pages identified by FurnitureDealer.Net in fact matched the identified FurnitureDealer.Net product descriptions. Ex. 10 (Clinton Dep. 226:2-227:1; 227:22-231:22); *cf*. Ex. 33 (Bundy Dep. 86:3-88:24, 90:15-17); Ex. 32 (Heaney Dep. 76:4-14, 77:4-82:1). Amazon's investigation also revealed that at least some of the infringing product descriptions identified by FurnitureDealer.Net had been supplied by third-party Amazon marketplace sellers. Ex. 32 (Heaney Dep. 76:4-14, 77:4-82:1). Defendants' investigations thus confirmed that the descriptions over which FurnitureDealer.Net claimed ownership were being used by Defendants, as well as by third parties. Based on this investigation, Amazon recognized that it had a problem. *Id.*; Ex. 33 (Bundy Dep. 185:5-186:20).

Coaster similarly recognized that FurnitureDealer.Net's product descriptions appearing on the www.coasterfurniture.com website were being used on Amazon product detail pages. Ex. 14 (Konetzny Dep. 252:24-256:13); Ex. 35; Ex. 29; Ex. 30; Ex. 34 (Ko Dep. Vol. 1, 31:2-33:13, 72:14-73:15, 110:8-111:8; 123:12-134:9, 163:3-165:24)).

Despite this knowledge, Defendants continued to distribute infringing copies of FurnitureDealer.Net's product descriptions with CMI removed. A reasonable jury could conclude that the Defendants had actual knowledge that their continued distribution of Amazon product detail pages utilizing thousands of additional product descriptions ███ from the www.coasterfurniture.com website would induce, enable, facilitate, or conceal infringement.

A jury could similarly find that the complaint filed in this case provided Defendants with at least constructive knowledge that their actions would induce, enable facilitate, or conceal infringement. Dkt. 1; Dkt. 6. Nevertheless, Defendants still continued their distribution of infringing product descriptions with FurnitureDealer.Net's CMI removed. Ex. 52 at 17-20; Ex. 39 at row 57274.

A jury may also consider the fact that Defendants' removal of FurnitureDealer.Net's CMI and distribution of the infringing descriptions without FurnitureDealer.Net's CMI substantially concealed Defendants' own infringement and that of third-party marketplace sellers in connection with this case. Due to the absence of its CMI, FurnitureDealer.Net was forced to undergo a laborious process to identify the infringing descriptions by comparing the descriptions appearing on Amazon product detail pages to FurnitureDealer.Net's copyright protected descriptions. Ex. 3 (A. Bernstein Dep. Vol. 1, 246:5-247:1). This occurred both before and after FurnitureDealer.Net filed suit. Ex. 53 (K. Bernstein Dep. 55:22-56:3); Dkt. 21 at ¶¶ 55-58.

39

Had Defendants not removed FurnitureDealer.Net's CMI, Defendants' infringing activities would have been more readily identifiable.

Amazon also has a documented history of ignoring the intellectual property rights of others, from which a jury could determine that Defendants should have known that their actions would induce, enable, facilitate, or conceal infringement. For example, Amazon instructs third-party marketplace sellers ███████████████████ ████████████████████████████████████████. Ex. 54 (AMZ_FD_00029094). Amazon also admitted that it receives ████████████ ████████████████████████████████████████ ████████████████████████ Ex. 33 (Bundy Dep. 30:8-25; 38:14-39:13).

Despite knowing of such widespread infringement, Amazon personnel make no effort to determine whether content they ████████ from websites for inclusion on Amazon product detail pages is protected by copyrights. Ex. 10 (Clinton Dep. 175:15-177:22). Accordingly, Amazon was "not surprised" when FurnitureDealer.Net brought suit to enforce its copyright. Ex. 33 (Bundy Dep. 185:9-186:20).

Thus at a minimum, Defendants should have known that their actions of removing FurnitureDealer.Net's CMI and distributing the infringing descriptions without CMI would induce, enable, facilitate, or conceal copyright infringement. *See Agence France Presse*, 2014 WL 3963124, at *7.

Defendants' reliance on the 9th Circuit's decision in *Corelogic* is readily distinguishable as there the plaintiff did not assert an underlying copyright infringement

40

claim. *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1053 (S.D. Cal. 2016), *aff'd*, 899

F.3d 666 (9th Cir. 2018). Therefore, the plaintiff in *Corelogic* was required to

demonstrate that the defendant knew or should have known that its removal of CMI

would lead to future infringement *by third parties*. *Corelogic*, 899 F.3d at 673, 676.

Other courts considering *Corelogic* have recognized this key fact and

distinguished *Corelogic* accordingly. *See, e.g.*, *Mango*, 970 F.3d at 173–74 (plaintiff in

*Corelogic* "did not allege—let alone prove—an underlying claim of copyright

infringement that would support the knowing concealment of either that infringement or

another"); *Stross v. Lifestyle LLC*, No. 20-cv-177, 2020 U.S. Dist. LEXIS 213261, at *7

(S.D. Cal., Nov. 5, 2020) (denying motion to dismiss 1202 claim because, unlike in

*Corelogic*, the plaintiff included copyright infringement claim).

Here, FurnitureDealer.Net has alleged claims of direct copyright infringement

against both Defendants, as well as claims of vicarious and contributory copyright

infringement against Coaster. Dkt. 6.[5]

At a minimum, the extent of Defendants' knowledge or constructive knowledge

regarding whether its acts of CMI removal and distribution without CMI would induce,

enable, facilitate, or conceal infringement are questions for the jury to determine.

Defendants' efforts to ignore the factual record and FurnitureDealer.Net's contentions to

---

[5] For the same reason, contrary to Defendants' assertions, whether
FurnitureDealer.Net used its CMI to detect copyright infringement is irrelevant.

present these claims as purely legal issues is unavailing. Defendant's motion for summary judgment on FurnitureDealer.Net's section 1202 claims should be denied.

**B.    Defendants' Indemnification Agreement Presents a Triable Issue of Fact as to Defendants' Actual or Constructive Knowledge.**

A defendant's insistence on an indemnification clause to protect itself from potential infringement claims creates a triable issue of fact as to whether the defendant should have known that its section 1202 violations would induce, enable, facilitate, or conceal infringement. *Jedson Eng'g*, 720 F. Supp. 2d at 931.

In this case, Coaster has alleged in its motion that Amazon likewise insisted upon execution of an agreement that both purported 

Ex. 5; Ex. 6. Indeed, soon after receiving FurnitureDealer.Net's January 2016 request to cease distribution of infringing product descriptions, Amazon demanded that Coaster

Ex. 35.

may lead a jury to determine that at least Amazon knew or should have known that its actions would induce, enable, facilitate, or conceal the parties' infringement. *Jedson Eng'g*, 720 F. Supp. 2d at 931.

## V.    FURNITUREDEALER.NET HAS BEEN INJURED BY DEFENDANTS' SECTION 1202 VIOLATIONS.

A plaintiff need merely have a protectable interest in order to be a "person injured" capable of bringing suit under section 1203. *Bose BV v. Zavala*, No. 09-cv-11360, 2010 WL 152072, at *2 (D. Mass. Jan. 14, 2010) (an entity that "controls the technological measures that protect copyrighted works" is a "person injured" by the circumvention of those measures within the meaning of the DMCA) (citing *Echostar Satellite, L.L.C. v. Viewtech, Inc.,* 543 F.Supp.2d 1201, 1205–06 (S.D. Cal. 2008) (although plaintiff did not hold copyrights in the copied works, plaintiff had "the authority to control the [CMI] measures protecting the programming"); *Comcast of Illinois X, LLC v. Hightech Elecs., Inc.,* No. 03-cv-3231, 2004 WL 1718522, at *6 (N.D. Ill. July 29, 2004) (entity that "controlled access to copyrighted material" was "a person injured from a violation of 17 U.S.C. 1201" and therefore could bring suit pursuant to the DMCA.); *Agence France Presse v. Morel*, No. 10-cv-02730, ECF. No 298 at 895 (S.D.N.Y. Nov. 20, 2013)  ("The injury language in the damages section [of the DMCA] thus clarifies that one must have some interest protected by statute in order to sue; in other words, when one cannot sue for a DMCA violation because one doesn't like that the defendant has violated the DMCA.").

Thus, as with constitutional standing, the "person injured" standard for DMCA standing is not a high bar. *CoxCom, Inc. v. Chaffee,* 536 F.3d 101, 108 (1st Cir. 2008) (plaintiff need not show that defendant's actions "actually ... cause[d] financial harm to [plaintiff]" to demonstrate constitutional standing for DMCA); *Bose*, 2010 WL 152072 at

*2 (*CoxCom* "sets a relatively low bar with respect to constitutional standing under the DMCA.").

These broad interpretations of section 1203 are consistent with the intent of the DMCA to "adapt" copyright protections to "digital networks" and "keep pace with emerging technology." S. REP. 105-190, 2 (1998).

Indeed, FurnitureDealer.Net is the very type of copyright owner the DMCA is intended to protect—one seeking "reasonable assurance that they will be protected against massive piracy." *Id.* Further, the harms committed by the Defendants are the exact type of "massive piracy" that the DMCA sought to protect against. S. Rep. No. 105-190, 8.

Because Defendants distributed copies of FurnitureDealer.Net's product descriptions without FurnitureDealer.Net's CMI, FurnitureDealer.Net was forced to undertake a "painstaking" effort to un-conceal and identify the hundreds of instances of infringing content identified in FurnitureDealer.Net's 2016 notice letter to Amazon. Ex. 53 (K. Bernstein Dep. 59:15-17); Ex. 29. FurnitureDealer.Net was forced to conduct a detailed "word by word" comparison of Amazon product detail pages, and could not simply search for the CMI FurnitureDealer.Net included on each of the thousands of web pages ████ by Defendants. Ex. 53 (K. Bernstein Dep., 55:22-56:3); Ex. 55 (K. Bernstein Dep. Ex. 1164).

Defendants' removal of FurnitureDealer.Net's CMI and distribution of the infringing product descriptions without FurnitureDealer.Net's CMI also further concealed Defendants widespread "scraping" of thousands of FurnitureDealer.Net product descriptions. In the months following FurnitureDealer.Net's original January 2016 notice,

44

Coaster sought to conceal Defendants' infringement by falsely claiming ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████    Ex. 56 (COA 019901). Yet Coaster had signed agreements purporting to

████████████████████████████████████████████████████████

████████████████    Ex. 5; Ex. 6 . Amazon also falsely represented to FurnitureDealer.Net

that all of the product descriptions at issue had been supplied by Coaster, when in fact

Amazon knew that ███████████████████████████████

██████████████████████████████████    Ex. 32

(Heaney Dep. 76:4-14, 77:4-82:20).

As a result of these false claims, FurnitureDealer.Net was forced to engage in

further painstaking expert analysis to identify the true source of thousands of infringing

product descriptions. Ex. 57 (Appendix D to Degen Opening Report); Ex. 38 at 751

("FurnitureDealer.Net has continued to search for its descriptive text being used without

its authority [and] has already identified voluminous additional Amazon url's containing

such descriptive text."). Indeed, in one more attempt to conceal their infringement,

Defendants now seek through their *Daubert* motion to exclude the very expert analysis

that was necessitated by Defendants' removal of CMI.[6]  Dkt. 478 at 35-37.

---

[6] As explained in FurnitureDealer.Net's Opposition to Defendants' *Daubert*
Motion, because Defendants' infringement was not readily identifiable based on
FurnitureDealer.Net's CMI, FurnitureDealer.Net's expert Carl Degen performed an
extensive analysis to correlate FurnitureDealer.Net's copyright protected product
descriptions with the descriptions that appeared on Amazon product detail. Ex. 57.

Had defendants not removed FurnitureDealer.Net's CMI and distributed infringing copies without FurnitureDealer.Net's CMI, FurnitureDealer.Net could have avoided substantial efforts to determine and demonstrate the true source and full extent of Defendants' infringement. Ex. 58 (Hochman Dep., 136:7-21 (explaining how removal of CMI concealed Defendants' infringement)).

Defendants' 1202 violations also further deprived FurnitureDealer.Net of proper attribution to its valuable content, and substantially increased the risks of third-party infringement. By removing FurnitureDealer.Net's CMI and widely distributing copies of FurnitureDealer.Net product descriptions with FurnitureDealer.Net's CMI removed, Defendants provided literally millions of recipients with copies of FurnitureDealer.Net's content—without any indication that FurnitureDealer.Net was the source of that valuable content. Defendants thus deprived FurnitureDealer.Net of the right to control its own content and enabled third parties selling products on Amazon.com to utilize the infringing descriptions.  FurnitureDealer.Net was clearly injured by Defendants 1202 violations. [7]

Defendants' injury argument spans less than a single page and relies on two readily distinguishable cases. Both of these cases addressed the sufficiency of pleadings at the motion to dismiss stage. *Alan Ross III*, 2019 WL 1317664, at *1 (dismissing

---

[7] Similarly, due to the inherent difficulty in quantifying injuries under the DMCA, the statute provides statutory damages as a remedy for plaintiffs. 17 U.S.C. § 1203(c)(3).

plaintiff's second amended complaint); *Steele v. Bongiovi*, 784 F. Supp. 2d 94, 94 (D. Mass. 2011) (dismissing plaintiff's complaint).

In *Alan Ross III*, the court addressed the sufficiency of a complaint that "fails to allege an injury" arising from violations of section 1202. *Alan Ross III*, 2019 WL 1317664, at *4. The court did not analyze whether Alan Ross was an "injured party" for purposes of section 1203. Rather, the court's decision relied ***entirely*** on its prior analysis of the plaintiff's separate ***Lanham Act claim***—which the court found required a showing of "proximate cause." *Alan Ross II*, 2018 WL 6018603, at *3. There is no such proximate cause requirement for DMCA claims. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n. 19 (1984) ("We have consistently rejected the proposition that a … kinship exists between copyright law and trademark law."). The *Alan Ross* decisions thus provide no basis for Defendants' summary judgment argument.

The Defendants' reliance on *Steele* is equally inapposite. The plaintiff in Steele did not bring suit for violation of section 1202. Rather the plaintiff in that case brought a DMCA claim against its attorneys after losing a claim for copyright infringement. *Steele*, 784 F. Supp. 2d at 96. Dismissing the plaintiff's DMCA claim based on "submit[ing] false evidence to the federal courts in the form of that altered [work]," the court observed that "Steele's claim of injury appears to be ***that the defendants' violation of the DMCA caused him to lose his copyright infringement case*** ... and that, but for their violation, he would have prevailed." *Id.* at 96, 98. Finding that "the alleged alterations ... were immaterial to this Court's [copyright infringement] opinion," the court held that the plaintiff was not a person injured under section 1203. *Id.* at 98.

47

The specific facts of *Steele* do not apply here. FDN is not seeking to recover for falsification of court filings that purportedly led to the loss of a copyright case. Rather, the present circumstances represent a real world e-commerce market where the Defendants' CMI removal and subsequent distributions are exactly the type of harms that the DMCA is intended to protect against. Even more, here, the Court has already considered FurnitureDealer.Net's DMCA claims at the pleading stage and denied Coaster's motion to dismiss. Dkt. 91. For the foregoing reasons, Defendants' motion should be denied.

## VI. FURNITUREDEALER.NET'S CLAIM FOR STATUTORY DAMAGES UNDER SECTION 1203 IS NOT PER SE UNCONSTITUTIONAL, NOR WOULD IT PER SE CREATE AN ABSURD RESULT

Defendants raise several arguments in an attempt to prematurely reduce the statutory damages flowing from their section 1202 violations.  Dkt. 503 at 31-37. However, "a fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Sony Music Ent.*, 464 F. Supp. 3d at 836.

To that end, section 1203 sets forth a range of statutory damages that a jury may award for "each violation" of section 1202. 17 U.S.C. 1203(c)(3)(B); *Sony*, 464 F. Supp. 3d at 836 (jury awards statutory damages). As discussed herein, there are several acts, each intentionally carried out by Defendants, that a jury may find constitute violations of section 1202, including: Defendants' acts of removing FurnitureDealer.Net's CMI;

██████████████████████████████████████████

███████████████

If and when the jury awards an amount of statutory damages, the court at that time can address whether there are constitutionality or absurd results concerns, but to do so now would be premature. *Capitol Recs., Inc. v. Thomas-Rasset*, 799 F. Supp. 2d 999, 1001-02 (D. Minn. 2011) (addressing defendant's arguments regarding size and constitutionality of statutory damages award following jury trial), vacated on other grounds, 692 F.3d 899 (8th Cir. 2012). Moreover, it is the "absolute amount of the award, not just the amount per violation" that is "relevant to whether the award is so severe and oppressive as to be wholly disproportionated to the offense and obviously unreasonable." *Warner Bros. Ent., Inc. v. X One X Prods.*, 840 F.3d 971, 977 (8th Cir. 2016). However, even if the Court were to consider the issue of statutory damages now, the Defendants' arguments fail for the following reasons.

### A. Defendants Committed Widespread Violations of Section 1202.

A plaintiff "may elect to recover an award of statutory damages for ***each violation*** of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203. FurnitureDealer.Net may thus make a claim for, and the jury may choose to award, statutory damages for each act of CMI removal committed by Defendants in violation of section 1202(b)(1), and each "distribution" in violation of section 1202(b)(3). *See Sheldon v. Plot Com.*, No. 15-cv-5885, 2016 WL 5107072, at *17 (E.D.N.Y. Aug. 26, 2016) (award of $25,000 in statutory damages per violation for each instance in which defendant removed CMI and each instance in which defendant added its own

49

CMI), report and recommendation adopted, No. 15-cv-5885, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016); *Crenshaw Media Grp. LLC v. Davis*, No. 17-cv-2204, 2018 WL 3496473, at *2 (N.D. Tex. July 20, 2018) (awarding statutory damages for each of 243 instances of CMI removal).

Defendants' argument that they violated section 1202 █████████████ as a result of "batch uploads" is both factually and legally inaccurate for a number of reasons. Dkt. 503 at 36. At a minimum, there are fact issues precluding a determination of awardable statutory damages at this stage. Indeed, Defendants' argument ignores the multiple types of violative acts, described above in §§ II-III, that a jury could reasonably find constitute violations of sections 1202(b)(1) and 1202(b)(3).[8]

Finally, Defendants' assertions regarding the number of FurnitureDealer.Net works registered is not determinative of the number of times Defendants violated section 1202, and does not affect the calculation of statutory damages under section 1203. *See Sheldon*, 2016 WL 5107072, at *17.

---

[8] *McClatchey*, relied upon by the Defendants, actually supports the denial of Defendants' motion as that court interpreted the "each violation" language of section 1203(c)(3) to mean that a plaintiff is entitled to a statutory award for "each violative act performed by Defendant." *McClatchey v. Associated Press*, No. 05-cv-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007). In this case, there is substantial evidence that Defendants committed numerous violative acts. As detailed above, the number of such acts was substantial, but the specific number of acts demonstrated by the evidence in this case must be determined by a jury.

### B.    FurnitureDealer.Net's Claim For Statutory Damages Will Not Lead To An Absurd Result.

Defendants also argue that they are entitled to summary judgment because they face enormous liability *if* the jury finds that each of their alleged acts violates section 1202 *and if* the jury awards the maximum allowable statutory award per violation. Defendants' motion is without merit for several reasons.

First, Defendants' arguments do not support the premature determination of allowable statutory damages that Defendants urge. This Court will have the opportunity to review the sufficiency of the evidence supporting any jury award—after the Court and the jury have had the opportunity to consider all of the evidence at trial. Fed. R. Civ. P. 59.

Second, FurnitureDealer.Net does not seek to recover statutory damages that are "totally independent of Defendant[s'] conduct."  Dkt. 503 at 34. Rather, FurnitureDealer.Net only seeks damages arising from Defendants' conduct. Defendants performed thousands of separate intentional acts violating section 1202. *See infra* §§ II-III. This is not a case like *Stockwire*, where the plaintiff sought to impose broad liability for the number of times a website was viewed "on the basis of three internet uploads." *Stockwire Research Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1267 (S.D. Fla. 2008). Rather, this is a case where Defendants face liability based on their massive violations of section 1202.[9]

---

[9] *Arista Records* is even more inapposite as it only addressed the statutory damages available under section 504 of the Copyright Act, which are awarded for

Third, none of the cases cited by Defendants involve facts even approaching Defendants' willful and widespread misconduct here. In awarding statutory damages, the jury may properly consider the need for deterrence, as the amount of the award can play an important role in deterring future violations by the defendant. *See, e.g.*, *Capitol Records, Inc. v. Thomas-Rasset*, 680 F. Supp. 2d 1045, 1054 (D. Minn. 2010), *vacated on other grounds*, 692 F.3d 899 (8th Cir. 2012) (noting the "strong need for deterrence" due to the defendant's conduct). In the present case, the need for deterrence is critical, particularly given Defendants' relative size and power. *See Sony*, 464 F. Supp. 3d at 841–42 ("The overall size and wealth of the defendant is a valid consideration for a statutory damages award.").

Nor have Defendants argued that they would not be able to absorb statutory damage award necessary deter an individual infringer of their size, where Amazon is the largest online retailer in the world and even Coaster, while not the behemoth of Amazon, has an annual revenue in the hundreds of millions. Ex. 49 at 10; Ex. 59 (Degen Opening Report) at 21.[10]

The jury may also consider evidence of Defendants' willfulness, such as the fact that Defendants continued distributing FurnitureDealer.Net's product descriptions with

---

infringement "with respect to any one work," and unlike statutory damages under section 1203, are ***not*** based on a number of violations committed by the defendant. *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 313, 321 (S.D.N.Y. 2011).

[10] Indeed, the court in *Craiglist* expressly noted that the relatively low statutory damage award reached in that case would be sufficient for deterring future conduct by the individual defendant. *Craigslist, Inc. v. Doe 1*, No. C09-4739, 2011 WL 1897423, at *5 (N.D. Cal. Apr. 25, 2011).

CMI removed long after being placed on express notice of their infringement, and continue at least some distributions to this day. Ex. 39 at row 57274; Harting Decl. ¶ 41.

There is also ample evidence in the record that Amazon has engaged in a widespread pattern of disrespecting intellectual property rights—including copyrights. Other copyright owners have struggled to obtain a response from Amazon when sending repeated communications alleging copyright infringement on Amazon product detail pages. Ex. 60 (Bundy Dep. Ex. 26). (Complaint, *Fascinations, Inc. v. Amazon.com, Inc*., 1:15-cv-06068 (S.D.N.Y. 2015); Second Amended Complaint, *Williams-Sonoma, Inc. v. Amazon.com, Inc*., 18-cv-07548-AGT, Dkt. 106 (N.D. Cal. 2018), ECF No. 106. Amazon has also failed to properly staff its copyright department charged with responding to claims of copyright infringement. Ex. 33 (Bundy Dep. 30:8-25; 38:14-39:13). Not surprisingly, between 2014 and November 2020 alone, Amazon was sued for copyright infringement over 150 times. Ex. 61 (Appendix F to Hochman Opening Report). In consideration of these facts, the jury may find that a large statutory award is needed to deter Defendants. *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1545 (S.D.N.Y. 1991) ("substantial damages [were] necessary to deter Kinko's from repeating the conduct proved," considering the company's net income and total assets).

### C. FurnitureDealer.Net's Claim For Statutory Damages Will Not Lead To An Unconstitutional Result.

In another single-page argument, Defendants argue that they are entitled to summary judgment because ***if*** the jury finds that Defendants' alleged acts are in fact violations of section 1202, ***and if*** the jury awards the maximum allowable statutory

award per violation, the resulting award would be unconstitutional. Dkt. 503 at 35-36. This argument fails for the reasons addressed in section VI.B above.

Moreover, Defendants' argument is not grounded in the law. Defendants suggest that a statutory damages award must correspond to actual harm, citing the contractual payments that Defendant Coaster made to FurnitureDealer.Net.[11] *Id.* While such concerns are relevant to ***punitive*** damages, ***statutory*** damages do not present the same concerns. The Eighth Circuit has recognized that statutory damages only violate the Due Process Clause if they are disproportionate "***to the offense***" committed. *Capitol Records*, 692 F.3d at 907 (emphasis added). Here, the jury has not made any award of damages, so it is premature to assess the proportionality of damages to Defendants' offenses.

Moreover, Defendants had fair notice of the potential statutory award resulting from their actions. More specifically, "this concern about fair notice ***does not apply to statutory damages***." *Id.* at 907 (8th Cir. 2012) (quoting *Campbell*, 538 U.S. at 417) (emphasis added). Here, Defendants were on notice of the potential statutory damages to be awarded against them. *Sony*, 464 F. Supp. 3d at 845 ("Whereas a defendant ignorant of the statute might be shocked by a similar outcome, there is ample support that Cox knew about both the number of infringement notices and the requirements of the DMCA.").

_____

[11] In its Agreement with FurnitureDealer.Net, Coaster expressly acknowledged ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Ex. 1 at -964 ¶ 4.

A statutory damage award also need not correlate to actual harm. While courts consider disparity between actual harm and ***punitive damages awards***, no such correlation is required with respect to ***statutory damages awards***. *Capitol Records,* 692 F.3d at 907. As the Eighth Circuit has recognized, "[i]t makes no sense to consider the disparity between 'actual harm' and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate." *Id.* at 907–08 (citing *Cass Cnty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir.1996)); *see also Agence France Presse*, 2014 WL 3963124, at *10, *12-13; *F. W. Woolworth Co. v. Contemp. Arts,* 344 U.S. 228, 233 (1952) (holding that "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy").

The question of statutory damages is one properly left for the jury with review by this Court, and the Defendants' motion should be denied.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment of

FurnitureDealer.Net's 17 U.S.C. § 1202 claim should be denied in its entirety.


Dated:  June 25, 2021               By:  */s/  Christopher K. Larus*
                                         Christopher K. Larus (0226828)
                                         John K. Harting (0392234)
                                         Jessica Gutierrez Alm (0396359)
                                         Vivek Biswas (0401163)
                                         Francois O. Ecclesiaste (0397444)
                                         Ellen K. Levish (0400878)

                                         **ROBINS KAPLAN LLP**
                                         800 LaSalle Avenue, Suite 2800
                                         Minneapolis, Minnesota 55402
                                         Telephone: (612)349-8500
                                         Facsimile: (612) 339-4181

                                         ***Counsel for Plaintiff***
                                         ***FurnitureDealer.Net***

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| FURNITUREDEALER.NET, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., and COA, INC. DBA COASTER COMPANY OF AMERICA, <br><br> Defendants. | Civil Action No. 0:18-cv-00232 (JRT/HB) <br><br> **CERTIFICATE OF WORD COUNT COMPLIANCE** |

This brief complies with Local Rule 7.1. This brief was prepared in proportionally spaced typeface in 13 point font, using Microsoft Word 2016. The text of the brief, including headings, footnotes, and quotations, contains 11,973 words.


Dated:  June 25, 2021          By:  *s/ John K. Harting*
                                    Christopher K. Larus (0226828)
                                    John K. Harting (0392234)
                                    Jessica Gutierrez Alm (0396359)
                                    Vivek Biswas (0401163)
                                    Francois O. Ecclesiaste (0397444)
                                    Ellen K. Levish (0400878)

                                    **ROBINS KAPLAN LLP**
                                    800 LaSalle Avenue, Suite 2800
                                    Minneapolis, Minnesota 55402
                                    Telephone: (612)349-8500
                                    Facsimile: (612) 339-4181

                                    *Counsel for Plaintiff*
                                    *FurnitureDealer.Net*