# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FURNITUREDEALER.NET, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., and <br> COA, INC. DBA COASTER <br> COMPANY OF AMERICA, <br><br> Defendants. | Civil Action No. 0:18-cv-00232 (JRT/HB) <br><br> **DEFENDANTS AMAZON.COM, INC. AND COA, INC. DBA COASTER COMPANY OF AMERICA'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S 17 U.S.C. § 1202 CLAIM** <br><br> ~~FILED UNDER SEAL~~ <br><br> **PUBLIC REDACTED VERSION** |


# TABLE OF CONTENTS

Page

I.  THE NOTICES ARE NOT CMI .................................................................... 1

    A.  The Website Copyright Notice cannot support FDN's section 1202 claim .................................................................................................... 1

    B.  The Nothing On This Page Notice cannot support FDN's section 1202 claim .......................................................................................... 2

    C.  Whether the Notices are valid CMI is an issue of law for the Court ............ 3

II.  FDN'S SECTION 1202(B)(1) CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ........................................................................................ 3

    A.  It is undisputed that at most six acts of removal occurred within the statute of limitations period ........................................................................... 3

    B.  FDN cannot use the discovery rule to toll the statute of limitations ............. 4

III.  DEFENDANTS DID NOT DISTRIBUTE FDN DESCRIPTIONS UNDER SECTION 1202(B)(3) ...................................................................................... 6

IV.  DEFENDANTS DID NOT HAVE REASONABLE GROUNDS TO KNOW THEIR ACTIONS WOULD CONCEAL COPYRIGHT INFRINGEMENT ............................................................................................. 8

V.  FDN LACKS STANDING ............................................................................ 10

VI.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON FDN'S NOVEL DAMAGES THEORIES ................................................................. 10

    A.  FDN's interpretation of "each violation" has no support in the law ........... 11

    B.  FDN's interpretation of "each violation" violates the canons of absurd results and constitutional avoidance ............................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanta-Star Auto. Research Corp. of Am. v. Reynolds Ford, Inc.*,
   No. CIV-19-912-G, 2020 WL 5823537 (W.D. Ok. 2020) ............................................. 1

*Alan Ross Mach. Corp. v. Machinio Corp.*,
   No. 17-cv-3569, 2019 WL 1317664 (N.D. Ill. Mar. 22, 2019) ................................. 1, 2

*Capitol Records, Inc. v. Thomas-Rasset*,
   692 F.3d 899 (8th Cir. 2012) ................................................................................. 7, 13

*Capitol Recs., Inc. v. Thomas*,
   579 F. Supp. 2d 1210 (D. Minn. 2008) ......................................................................... 7

*Comcast of Illinois X v. Multi-Vision Elecs., Inc.*,
   491 F.3d 938 (8th Cir. 2007) ........................................................................................ 4

*Constitution Party of S. Dakota v. Nelson*,
   639 F.3d 417 (8th Cir. 2011) ...................................................................................... 10

*Design Basics, LLC v. Chelsea Lumber Co.*,
   977 F. Supp. 2d 714 (E.D. Mich. 2013) .................................................................... 4, 5

*Drauglis v. Kappa Map Grp., LLC*,
   128 F. Supp. 3d 46 (D. D. C. 2015) .............................................................................. 3

*GC2 Inc. v. Int'l Game Tech.*,
   391 F. Supp. 3d 828 (N.D. Ill. 2019) .......................................................................... 12

*GC2 Inc. v. Int'l Game Tech.*,
   No. 16-C-8794, 2018 WL 5921315 (N.D. Ill. Nov. 12, 2018) ........................... 2, 3, 11

*Gecker v. Gen. Elec. Cap. Corp.*,
   No. 14 C 8447, 2015 WL 5086398 (N.D. Ill. July 27, 2015) ....................................... 5

*Golan v. FreeEats.com, Inc.*,
   930 F.3d 950 (8th Cir. 2019) ...................................................................................... 13

*Hallaba v. Worldcom Network Servs. Inc.*,
   196 F.R.D. 630 (N.D. Okla. 2000) ............................................................................... 9

*Jedson Eng'g, Inc. v. Spirit Constr. Servs., Inc.*,
   720 F. Supp. 2d 904 (S.D. Ohio 2010) ........................................................................ 9

*John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*,
   No. 12-cv-4194, 2013 2013 WL 1828671 (N.D. Tex. May 1, 2013) ........................... 1

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
   No. 20-1931-DMG, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ............................. 4

*Mango v. Buzzfeed*,
   970 F.3d 167 (2d Cir. 2020) .......................................................................................... 7

*McClatchey v. Assoc. Press*,
   No. 3:05-cv-145, 2007 WL 1630261 (W.D. Pa. June 4, 2007) .................................. 13

*Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*,
   991 F.2d 426 (8th Cir. 1993) ........................................................................................ 6

*Pierson v. Infinity Music & Entm't, Inc.*,
   300 F. Supp. 3d 390 (D. Conn. 2018) ........................................................................... 1

*Ranco Indus. v. Bos. Floor Mats*,
   No. 10-cv-5214, 2011 WL 1237938 (S.D. Tex. Mar. 31, 2011) .................................. 1

*RBC Nice Bearings, Inc. v. Peer Bearing Co.*,
   676 F. Supp. 2d 9 (D. Conn. 2009) ............................................................................... 2

*Rowley v. Yarnall*,
   22 F.3d 190 (8th Cir. 1994) ........................................................................................ 13

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*,
   804 F. App'x 668 (9th Cir. 2020) ................................................................................. 3

*Soos & Assocs., Inc. v. Five Guys Enterprises, LLC*,
   No. 17-C-06577, 2020 WL 1027885 (N.D. Ill. 2020) ................................................. 1

*Stevens v. CoreLogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ................................................................................... 8, 9

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................................................ 10

*Union Pac. R.R. Co. v. U.S. Dep't of Homeland Sec.*,
   738 F.3d 885 (8th Cir. 2013) ...................................................................................... 13

*VHT, Inc. v. Zillow Group*,
   918 F.3d 723 (9th Cir. 2019) ...................................................................................... 11

*Watson v. Kappa Map Group, LLC*,
   No. 1:14-cv-100-TWT, 2015 WL 3932425 (N.D. Ga. June 25, 2015) .......................... 3

**Statutes**

17 U.S.C. § 106 ................................................................................................................ 6, 7

17 U.S.C. § 1202 ............................................................................................................ *passim*

17 U.S.C. § 1203 ........................................................................................... 10, 11, 12, 13

iv

I.  **THE NOTICES ARE NOT CMI**

   A.  **The Website Copyright Notice cannot support FDN's section 1202 claim**

FDN claims the generic copyright notice FDN placed in the footer of every page on www.coasterfurniture.com is CMI.  Such a notice is routinely rejected as CMI because courts reject arguments that they are "conveyed in connection with" specific photos or text on a webpage.  Mot. at 16-18.

Although FDN claims that "courts have routinely held that copyright information positioned at the bottom of a webpage is 'conveyed in connection with' copyrighted content on the page," the two cases FDN relies on are distinguishable.  Opp. at 18.  In the first case, *Pierson v. Infinity Music & Entm't, Inc.*, 300 F. Supp. 3d 390 (D. Conn. 2018), the alleged CMI specifically identified the website's "graphics" (which would have included the copied photo) as protected.  300 F. Supp. 3d at 391.  *But see Alan Ross Mach. Corp. v. Machinio Corp.*, No. 17-cv-3569, 2019 WL 1317664, at *3 (N.D. Ill. Mar. 22, 2019) (criticizing the *Pierson* notice as too general).  In the other case, *Advanta-Star*, the defendant copied the *entire* body of the webpages in question, so this case is consistent with the rule that a general copyright notice is not CMI as to specific material.  No. CIV-19-912-G, 2020 WL 5823537, at *4 (W.D. Okla. 2020).  FDN says that *Soos & Associates* approved a notice on the same page as the copyrighted material, but this was a physical piece of paper, and that court distinguished the website copyright notice cases for that reason.  No. 17 C 06577, 2020 WL 1027885 at *4 (N.D. Ill. Mar. 03, 2020). FDN's other cases, *John Perez* and *Ranco*, were default judgments.

1

FDN argues that *Alan Ross* is not on point because the plaintiff "failed to present any evidence that it held copyrights in the content at issue." Opp. at 22. But in fact, the court assumed that the plaintiff did own those copyrights. 2019 WL 1317664, at *3. Next, FDN attempts to distinguish *GC2* because the footer in that case contained a link to the CMI rather than the CMI directly. Opp. at 16. But that fact formed no part of the basis for the court's ruling.

### B.   The Nothing On This Page Notice cannot support FDN's section 1202 claim

FDN claims that the text "Nothing on this page may be copied or reproduced without explicit permission" is CMI. Not so.

The Notice cannot have been both accurate and conveyed with each piece of content on the page because FDN could own only some of that content, much of which was provided by Coaster. *See* Mot. at 21-24 (identifying photos, product dimensions, logos, and other content not owned by FDN). FDN says that it modified the "format" of Coaster's photos and "standardized the units of the dimensions," Opp. at 19 (citing Ex. 40 to Harting Decl. at 6), but such changes are not copyrightable, and certainly would not make FDN the owner of *Coaster's* copyrighted material. *See, e.g.*, *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 22-23 (D. Conn. 2009) (product dimensions not copyrightable). And FDN does not claim to own material like Coaster's logos. Instead, FDN simply assumes what consumers would "surely understand." *See* Opp. at 19. But even FDN's own expert testified that it is "not clear … what content that [the

Notice] applies to," Ex. 25 151:13-14,[1] and that on a page where the rightsholder does not own all the content, such a Notice is "not accurate." *Id.* 146:9.

### C. Whether the Notices are valid CMI is an issue of law for the Court

In the absence of underlying factual disputes, the legal question of whether CMI is "conveyed in connection with" a work "may properly [be] resolve[d] … at the summary judgment stage." *Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 59-60 n.12 (D. D. C. 2015). Many courts have done just that. *See, e.g.*, *id.*; *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668, 670 (9th Cir. 2020); *Watson v. Kappa Map Group, LLC*, No. 1:14-cv-100-TWT, 2015 WL 3932425, at *2 (N.D. Ga. June 25, 2015); *GC2 Inc. v. Int'l Game Tech.*, No. 16-C-8794, 2018 WL 5921315, at *6-7 (N.D. Ill. Nov. 12, 2018).

## II. FDN'S SECTION 1202(B)(1) CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

### A. It is undisputed that at most six acts of removal occurred within the statute of limitations period

FDN alleges that Defendants removed CMI in violation of section 1202(b)(1) when ███████████████████████████████████████████████████████████████████████████████████. Opp. at 27. The vast majority of the ███████████████████████████████████████ predate January 26, 2015, outside of the statute of limitations period. Mot. at 25-26; Ex. 18, column D.

---

[1] Unless otherwise noted, all exhibit citations are to the Declaration of Moon Hee Lee, ECF No. 504, or to the concurrently filed Second Declaration of Moon Hee Lee.

3

FDN does not dispute that its section 1202(b)(1) claim based on FDN Descriptions appearing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (if the statute of limitations is not tolled, *see* Section II.B, below).  Instead, FDN argues that Defendants undercounted, because Defendants looked only ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ from the relevant period.  Opp. at 29-30.  But "where the works are not identical," no section 1202(b)(1) violation exists.  *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. 20-1931-DMG, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020).

In any event, FDN expert Degen identified an additional five descriptions appearing ▇▇▇▇▇▇▇▇▇▇ *non*-identical form within the limitations period. Second Kidder Declaration ¶¶ 2-6, Ex. K-D.  Thus, even if considered, this means there are at most six descriptions at issue.

### B. FDN cannot use the discovery rule to toll the statute of limitations

FDN says that the statute of limitations is tolled by the discovery rule.  Opp. at 25-29.  Under the discovery rule, "the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation."  *Comcast of Illinois X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 944 (8th Cir. 2007).  That happens when a plaintiff "becomes aware of suspicious activity that may indicate infringement."  *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 724-25 (E.D. Mich. 2013) (collecting cases).  Once Defendants identify "storm warnings" sufficient to put the plaintiff on such inquiry notice, "the burden shifts to [the

4

plaintiff] to show that it exercised reasonable due diligence and yet was unable to discover its injuries." *Id.*

FDN admits that it was aware that the Accused Descriptions were appearing on amazon.com without FDN's purported CMI prior to January 22, 2015. *See* Opp. at 27-28 (citing ECF No. 503 at 10). That is not just inquiry notice; that is FDN's *actual discovery of its alleged injuries*, which allegedly resulted from the presence of the Accused Descriptions on amazon.com without FDN's purported CMI. *See* Opp. at 44-46. FDN cannot benefit from the discovery rule.

FDN attempts to avoid this roadblock by claiming that, although it knew of its alleged injury, it did not know until April 2016 that Defendants were responsible. *See* Opp. at 27-28. The discovery rule does *not* apply where, as here, the plaintiff knew of its injury but did not know the identity of the proper defendants. *See, e.g.*, *Gecker v. Gen. Elec. Cap. Corp.*, No. 14 C 8447, 2015 WL 5086398, at *13 (N.D. Ill. July 27, 2015) ("the statute of limitations begins to run when a plaintiff has reason to know an injury was wrongfully caused, even if the plaintiff at that time does not know any or all of those who caused the injury") (analyzing Minnesota law).

Even if the discovery rule applied to uncertainty over the identity of the proper defendants, that would not enable FDN to toll the statute of limitations as to Amazon. FDN claims it was put on inquiry notice regarding the proper defendants for its suit when

███████████████████████████████████████████████████████████

███████████████ [.]" Opp. at 28. ███████████████████████

███████████, but it did nothing to change FDN's knowledge about *Amazon*.

5

Nonetheless, in January 2018 FDN brought its section 1202(b)(1) claim against Amazon, and *not* Coaster.  See ECF No. 1, ¶¶ 2, 73.[2]

## III.   DEFENDANTS DID NOT DISTRIBUTE FDN DESCRIPTIONS UNDER SECTION 1202(B)(3)

FDN argues that Defendants distributed the Accused Descriptions by *displaying* them on amazon.com.  But the text of section 1202 forecloses exactly this argument.

17 U.S.C. § 106 enumerates six separate exclusive rights of copyright holders, including distribution, display, and public performance.  Congress referenced "display" in one part of section 1202, providing that CMI can be "conveyed in connection with … *displays* of a work, including in digital form."  *Id.* § 1202(c).  But Congress did *not* include display—"in digital form" or otherwise—as one of the acts that can violate section 1202(b)(3), identifying only distribution, importation for distribution, and public performance.  The Court should not expand the meaning of "distribute" under section 1202 to include "display," which Congress intentionally omitted.

FDN offers no response to this textual argument.  Instead, FDN argues that "online 'offers of access' constitute distributions under section 1202, regardless of whether a copy has been disseminated or received."  Opp. at 32.  This line of argument is directly foreclosed by binding Eighth Circuit precedent requiring actual dissemination of copies of a work.  *See* Mot. at 27; *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993).  FDN does not address *National Car Rental*.

---

[2] FDN's DMCA claim against Coaster has other deficiencies as noted in Coaster's separate summary judgment motion (*see* ECF No. 449) as to FDN's DMCA claim.

Instead, FDN relies on *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012), which held that an injunction against making copyrighted works available to the public was appropriate "whether or not that conduct by itself violates rights under the Copyright Act." Because it expressly says that it is not a holding about liability, that case does not help FDN.

FDN next claims that "courts have routinely found that displaying or posting content on a website constitutes *distribution* under section 1202," but FDN's string cite that follows does not support this. *See* Opp. at 31-32. In *Mango v. Buzzfeed*, the defendant stipulated that distribution had occurred. 970 F.3d 167, 173 n.3 (2d Cir. 2020). FDN's other three citations are to default judgments. FDN does not cite a *single case* where this issue was actually briefed and decided.

Finally, FDN attempts to distinguish the many cases holding that online display is *not* distribution—no easy task because FDN relies on the same cases for this very proposition in opposing summary judgment on its copyright claim. *Compare* Mot. at 27-28 *with* ECF No. 544 at 20. FDN argues that these cases, decided in the context of disputes over publication, do not apply here because "'publication' is narrower than 'distribution.'" Opp. at 31. In fact, the opposite is true; as the case FDN relies on explains, "[t]he statutory definition of publication is broader than the term distribution as used in § 106(3)," and "all distributions within the meaning of § 106(3) are publications." *Capitol Recs., Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1220 (D. Minn. 2008). The publication cases holding that mere display on a website is not distribution are therefore directly on point. *See* Mot. at 27-28.

7

## IV. DEFENDANTS DID NOT HAVE REASONABLE GROUNDS TO KNOW THEIR ACTIONS WOULD CONCEAL COPYRIGHT INFRINGEMENT

To make out a section 1202 claim, FDN must show that Defendants had "reasonable grounds to know" that displaying the Accused Descriptions on amazon.com would "induce, enable, facilitate, or conceal" copyright infringement. Concealment is the only theory actually advanced by FDN. Ex. 27 at 5, 9-11.

To survive summary judgment on this ground, FDN must come forward with either "specific evidence that removal of CMI … will impair their policing of infringement," or that Defendants' distribution of the Accused Descriptions without CMI "conceal[ed] … a pattern of such infringement likely to recur in the future." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018). FDN has failed to do either.

FDN's *only* argument on concealment is that if the Notices had not been removed, it could have identified the Accused Descriptions by "simply search[ing]" for its CMI. Opp. at 39-40, 44. But there is *no evidence* in the record that (1) the Notices would have appeared in a searchable form; (2) that FDN had an effective way to find them; and (3) that FDN ever tried searching for them. This is a speculative counter-factual based entirely on attorney argument, which is not enough to defeat summary judgment.

In fact, the record shows that FDN did not need the Notices to build its infringement case, so their absence concealed nothing. FDN never even tried to use the Notices to detect infringement; instead, it used software to automatically identify potentially infringing product *descriptions*. Ex. 7 137:20-140:4; Ex. 4 233:17-22, 240:24-241:1. On these facts, FDN's section 1202 claim cannot survive summary

8

judgment. *CoreLogic*, 899 F.3d at 675 (affirming grant of summary judgment where there was no evidence that CMI "is of any practical significance to the [plaintiffs] in policing copyright infringement of their images"). Notably, FDN does *not* contend that the absence of its Notices concealed infringement from visitors to amazon.com. Nor could it. FDN's own expert testified that the presence of the Notices on amazon.com would not have made clear who owned what content. Ex. 29, 141:10-142:18; 150:12-151:14; 152:21-153:25.

FDN cannot satisfy *CoreLogic*, so it tries to distinguish it. FDN argues that *CoreLogic* does not apply here because the plaintiff there did not contend that CoreLogic had infringed copyright, but instead that third parties had infringed. Opp. at 40-41. That is simply wrong. *See* Ex. 30, at 8-9 ("There is no doubt that CoreLogic is a direct copyright infringer of plaintiffs' photos …").

Finally, , standing alone, is sufficient evidence to survive summary judgment. But                                                                                                                                                                                                                                                                                   in connection with the particular work at issue. No such facts exist here.

There is no dispute that FDN has failed to meet the scienter requirements.

9

## V. FDN LACKS STANDING

At summary judgment, FDN must support standing with "affidavits or other evidence in the record." *Constitution Party of S. Dakota v. Nelson*, 639 F.3d 417, 420-21 (8th Cir. 2011). As the Supreme Court recently clarified, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). FDN cannot substantiate any injury.

FDN first claims that if the Notices were not removed, it would have been easier to build its infringement case. Opp. at 44-46. As explained in Section IV, this is speculation contradicted by the record, and it is not sufficient to survive summary judgment.

FDN next claims it suffered "substantially increased … risk of third-party infringement." Opp. at 46. But "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm …." *TransUnion*, 141 S. Ct. at 2210-11. FDN offers no evidence to support the existence of this risk, much less an actual harm sufficient to support standing. This speculation cannot support FDN's ▮▮▮▮ claim.

## VI. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON FDN'S NOVEL DAMAGES THEORIES

17 U.S.C. § 1203 provides an award of statutory damages for "each violation" of section 1202. FDN, through three overreaching interpretations of this provision, claims that Defendants' actions can be subdivided ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "violations,"

10

each worth up to $25,000. *See* Ex. 24 at 8. Defendants moved for summary judgment on FDN's legal theories. In the absence of underlying factual disputes, "what constitutes a 'violation' for purposes of the statutory damages" under section 1203 is a question of law that courts can and do address at summary judgment. *GC2 Inc.*, 2018 WL 5921315, at *6-7. FDN does not dispute that the number of violations under section 1203 turns on the Defendants' "violative acts," and not the number of people who viewed the Accused Descriptions. *See* Mot. at 31-32.

### A. FDN's interpretation of "each violation" has no support in the law

FDN's first theory is that Defendants committed a violative act each time a user completes a transaction from a product detail page with an Accused Description. *See* Mot. at 32-33 (citing Ex. 1 at 23; Ex. 28 ¶ 204). FDN offers no defense of this theory at all in its opposition, so the Court should grant summary judgment on it.

FDN's second theory is that Defendants committed a "violative act" each time a user viewed a product detail page with an Accused Description, because, if Amazon's database contains multiple product descriptions, an algorithm determines which one to display. Opp. at 33-34. As explained in detail in Defendants' opposition to FDN's motion for partial summary judgment (ECF No. 560 at 24-25), the undisputed record shows that the algorithm Amazon used in this case is exactly the kind of "trumping" rule the Ninth Circuit held was not volitional in *VHT, Inc. v. Zillow Group*, a case FDN cites but does not distinguish. 918 F.3d 723, 733 (9th Cir. 2019).

FDN's third theory is that Defendants committed a violative act each time they uploaded a spreadsheet containing Accused Descriptions to Amazon's databases *even if*

11

*the descriptions were already present in the database and the upload changed nothing about when and how they would be displayed.* Opp. at 32-33. Even if the Court holds that displaying Accused Descriptions was a distribution under section 1202(b)(3), such uploads cannot be violations of the statute because they do have any causal relationship to the display. FDN's expert, Hochman, states ███████████████

███████████████ Ex. 49 to Harting Decl. ¶¶ 207-08. What FDN characterizes as the creation of a new "version" is just as likely to be ███████████████

███████ *Id.* ¶ 208. There is nothing in the statute that suggests this method of data entry should have legal significance.[3]

### B. FDN's interpretation of "each violation" violates the canons of absurd results and constitutional avoidance

FDN's interpretation of section 1203, which would ███████████████ damages awards from a small number of uploads, is an absurd result that should be rejected. FDN tries to justify its request for ███████████ on the basis of Defendants' supposedly-egregious conduct. Opp. at 52. Even if true, egregiousness relates to the *amount* of each statutory damages award within the $2,500-$25,000 range, not *how many* violations occurred.

FDN's interpretation of section 1203 to ███████████████

---

[3] *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 850 (N.D. Ill. 2019) is not on point because in that case the defendants uploaded entirely new versions of their apps that were then downloaded, also in their entirety, by users. Here, as FDN acknowledges, there was no new "version" of the product page created ███████████████
███████████████

12

███████████████████████████████ also violates due process. *See Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907-08, 910 (8th Cir. 2012) (statutory damages total is subject to due process review); *see Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962-63 (8th Cir. 2019) ("[S]tatutory damages … of $1.6 billion violate the Due Process Clause.").

The Court should not wait to evaluate FDN's damages theories until after a verdict. In construing statutes, courts avoid readings that would "produce absurd results," *Rowley v. Yarnall*, 22 F.3d 190, 192 (8th Cir. 1994), or raise "grave and doubtful constitutional questions," *Union Pac. R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 892-93 (8th Cir. 2013). The Court need not see a final judgment to determine the correct interpretation of section 1203. *See, e.g.*, *McClatchey v. Assoc. Press*, No. 3:05-cv-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007) (limiting number of section 1202 statutory damages awards before trial as a matter of law). This is particularly true where, as here, even the *minimum* award under section 1203—$2,500, multiplied by ███████████████████—would still produce an absurd and ████████████ ███████████████ Ex. 24 at 8. FDN should not be able to proceed under this damages theory even if its section 1202 claim survives.

Dated: July 30, 2021               DURIE TANGRI LLP

                                   By:           */s/ Joseph C. Gratz*
                                       Adam R. Steinert (#0389648)
                                       asteinert@fredlaw.com
                                       Laura L. Myers (#0387116)
                                       lmyers@fredlaw.com
                                       **FREDRIKSON & BYRON, P.A.**
                                       200 South Sixth Street, Suite 4000

13

Minneapolis, MN 55402-1425
Telephone: (612) 492-7000

Joseph C. Gratz (*pro hac vice*)
jgratz@durietangri.com
Vera Ranieri (*pro hac vice*)
vranieri@durietangri.com
Samuel J. Zeitlin (*pro hac vice*)
szeitlin@durietangri.com
**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

Allyson R. Bennett (*pro hac vice*)
abennett@durietangri.com
Moon Hee Lee (*pro hac vice*)
mlee@durietangri.com
**DURIE TANGRI LLP**
953 East 3rd Street
Los Angeles, CA 90013
Telephone: (213) 992-4499

***Attorneys for Defendant
Amazon.com, Inc.***

Dated: July 30, 2021               CISLO & THOMAS LLP

By: _____*/s/ Daniel M. Cislo*_____
Daniel M. Cislo (admitted *pro hac vice*)
dancislo@cislo.com
Kelly W. Cunningham (admitted *pro hac vice*)
kcunningham@cislo.com
Mark D. Nielsen (admitted *pro hac vice*)
mnielsen@cislo.com
Peter S. Veregge (admitted *pro hac vice*)
pveregge@cislo.com
**CISLO & THOMAS LLP**
12100 Wilshire Blvd., Suite 1700
Los Angeles, CA 90025
Telephone:   (310) 451-0647

14

        Rebecca Makitalo (admitted *pro hac vice*)
        rmakitalo@cislo.com
        **CISLO & THOMAS LLP**
        2829 Townsgate Road, Suite 330
        Westlake Village, CA 91361
        Telephone:   (805) 496-1164

        Holley C. Horrell (#399636)
        hhorrell@greeneespel.com
        Anna M. Tobin (#395706)
        ATobin@greeneespel.com
        **GREENE ESPEL PLLP**
        222 South Ninth Street, Suite 2200
        Minneapolis, MN  55402
        Telephone:   (612) 373-0830

        *Attorneys for Defendant*
        *COA, Inc. dba Coaster Company of America*

15