**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

FURNITUREDEALER.NET, INC,

                              Civil No. 18-232 (JRT/HB)

                Plaintiff,

v.                         **MEMORANDUM OPINION AND ORDER**
                             **ON MOTIONS TO EXCLUDE**

AMAZON.COM, INC, and COA, INC.
d/b/a COASTER COMPANY OF AMERICA

                Defendant.

---

Christopher K. Larus, Ellen Levish, Francois Ecclesiaste, Jessica Lee Gutierrez, & John K. Harting, **ROBINS KAPLAN LLP**, 800 LaSalle Avenue, Suite 2800, Minneapolis MN 55402, for plaintiff;

Adam R. Steinert, Laura L. Myers, & Nirmani Chethana Perera, **FREDRICKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402; Allyson R. Bennett, Joseph C. Gratz, & Vera Ranieri, **DURIE TANGRI LLP**, 217 Leidesdorff Street, San Francisco, CA 94111, for Defendant Amazon.Com, Inc;

Anna Tobin & Holley C. M. Horrell, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402; Daniel M. Cislo, Kelly W. Cunningham, Mark D. Nielsen, Peter S. Veregge, & Rebecca Makitalo, **CISLO & THOMAS LLP**, 12100 Wilshire Boulevard, Suite 1700, Los Angeles, CA 90028; Robert J. Gilbertson, **FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**, 225 South Sixth Street, Suite 1750, Minneapolis, MN 55402, for Defendant COA, Inc.

Plaintiff, Furnituredealer.net ("FDN"), commenced this lawsuit against Defendants Amazon.com ("Amazon") and COA, Inc. d/b/a/ Coaster Company of America ("Coaster") asserting copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA") against both Defendants and a breach of contract claim against Coaster. The

claims arise from a dispute over the use of product descriptions FDN wrote for Coaster (the "FDN Descriptions") on Amazon product detail pages.  The parties have each retained experts and have now filed Motions to Exclude.

FDN filed Motions to Exclude expert opinions offered by Brian Buss, Gordon Everest, Ralph Oman, and Dr. George John.  The Court will grant in part and deny in part FDN's Motion to Exclude portions of the report and opinions of Brian Buss.  Portions of Buss's quantitative apportionment analysis are too subjective, but the Court will allow Coaster thirty days to amend Buss's expert report to correct the errors identified herein. The remainder of the challenged portions of Buss's expert report are admissible.  FDN's Motion to Exclude Gordon Everest's report and opinions is granted because Everest's testimony is unnecessary as the Court determined in its Summary Judgment Order that fraud is required under 18 U.S.C. § 411(b).  The Court will grant FDN's Motion to Exclude both the initial and rebuttal expert reports of Ralph Oman as they are littered with impermissible legal analysis and conclusions.  Lastly, FDN's Motion to Exclude portions of Dr. George John's report is denied because John utilized the correct legal standard for nexus.

As to Defendants' Motion to Exclude, the Court will grant in part and deny in part the motion.  The following opinions from Hochman are inadmissible: (1) opinions on substantial similarity; (2)   portions of his opinions on Defendants' state of mind, motivations, and intent; and (3) opinions on direct, contributory, and vicarious copyright

2

infringement.  The remainder of his testimony is admissible at this stage.  There are only two sentences of Degen's reports and opinions that are inadmissible because they impermissibly opine on Defendants' state of mind.  Hughes' testimony is inadmissible because it is unnecessary.

**BACKGROUND**

### I.   FACTUAL BACKGROUND

The Court adopts in full the factual summary contained in its Summary Judgment Order and summarizes herein.  (Order Cross Mots. Summ. J., March 25, 2022, Docket No. 706.)  In 2010, Coaster and FDN entered into an agreement where FDN agreed to build and host a website for Coaster which would feature Coaster's product catalog and an integrated dealer locator.  (Decl. John Harting Supp. FDN's Mot. Partial Summ. J. ("1st Harting Decl."), Ex. 3, May 14, 2021, Docket No. 512.)  As part of this agreement, FDN would create and enhance product descriptions of Coaster's furniture, known as the FDN Descriptions.  (Id.; Decl. John Harting Opp. Defs' Mot. Summ. J. Copyright Claim, ("2nd Harting Decl."), Ex. 11, at 123:12–22; Ex. 15, at 55:3–56:10, June 25, 2021, Docket No 545.)  FDN housed the FDN Descriptions, along with other relevant product information, on two different automated databases: the Content Management System ("CMS") and FDealer.  (Decl. Samuel J. Zeitlin Supp. Defs.' Mot. Summ. J. Copyright Claim, Ex. 15, at 57:19–25, May 14, 2021, Docket No. 494.)

FDN then displayed the FDN Descriptions on product detail pages on www.coasterfurniture.com along with two separate copyright notices. (2nd Harting Decl., Ex. 8 at 123:4–124:21, 127:5–20; Decl. Moon Hee Lee Supp. Defs.' Mot. Summ. J. 1202 Claims, Ex. 5, May 14, 2021, Docket No. 504.)  In 2015, FDN applied for a copyright registration in the CMS database, which housed the FDN Descriptions, under the title "Automated database of furniture catalogs and collections (photographs and text)." (Zeitlin Decl., Ex. 27.)  After several communications between the Copyright Office and FDN, the Copyright Office granted FDN a copyright with the effective date of registration listed as September 22, 2015.  (Zeitlin Decl., Ex. 27.)

In 2014, Coaster contracted with Amazon to sell its products.  (1st Harting Decl., Ex. 22.)  In order to create product detail pages for the Coaster products on Amazon.com, Amazon scraped product information from www.coasterfurniture.com, including the FDN Descriptions.  (1st Harting Decl., Exs. 22, 34, 37, & 85.)  Beginning in 2013, FDN discovered that hundreds of separate Amazon detail pages contained FDN Descriptions.  (Lee Decl., Exs. 21–22; 1st Harting Decl., Ex. 40.)  FDN sued Amazon alleging copyright infringement. (Compl., Jan. 25, 2018, Docket No. 1.)  Six months later, Amazon removed approximately 2,000 FDN Descriptions from its database.  (Decl. John Harting Opp. Defs.' Mot. Summ. J. 1202 Claims ("3rd Harting Decl."), Ex. 37 at 16–17, June 26, 2021, Docket No. 574.)

4

## II.    PROCEDURAL HISTORY

FDN filed this lawsuit against Amazon in 2018, later pleading in Coaster as a party. (Compl.; Am. Compl., May 14, 2018, Docket No. 6.)   The parties completed expert discovery by April 23, 2021.  They then filed Cross Motions for Summary Judgment along with five Motions to Exclude testimony from a seven different experts.  (Mot. Exclude Buss, May 14, 2021, Docket No. 436; Mot. Exclude Everest, May 14, 2021, Docket No. 444; Mot. Exclude Oman, May 14, 2021, Docket No. 460; Mot. Exclude Dr. George John, May 14, 2021, Docket No. 468; Mot. Exclude Hochman, Degen, Hughes, May 14, 2021, Docket No. 476.)

## DISCUSSION

## I.    STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The district court has a gate-keeping obligation to make certain that all testimony admitted under Rule 702 satisfies these prerequisites and that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified, that his or her methodology is scientifically valid, and that "the reasoning or methodology in question is applied properly to the facts in issue*." Marmo v. Tyson Fresh Meats, Inc*., 457 F.3d 748, 757–58 (8th Cir. 2006).  Expert testimony is inadmissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Id.* at 757.

"[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999).  However, the Eighth Circuit has held that "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo*, 457 F.3d at 758.  "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988).  "Only if [an] expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must

such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir.

2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)).

## II.    ANALYSIS

### A.   FDN's Motion to Exclude Portions of Brian Buss's Expert Report and Opinions (Docket No. 436)

Buss was retained as a rebuttal expert by Coaster to respond to portions of FDN's

opening expert reports and to offer his own opinion on certain damages limitations.

(Decl. John Harting Supp. Mot. Exclude Buss ("Harting/Buss Decl."), Ex. 1 ("Buss Expert

Report"), May 14, 2021, Docket No. 438.)  FDN has filed a motion to exclude the following

portions of Buss's report: (1) opinions on the "nexus" between the alleged infringement

and gross revenues; (2) the apportionment analysis; and (3) Buss's use of the phrase

"more derivative."  (Memo. Supp. FDN's Mot. Exclude Buss, at 3, May 14, 2021, Docket

No. 437.)

#### 1.    Buss's Nexus Opinion

The Copyright Act provides that if an infringer is found liable for copyright

infringement, a copyright owner is entitled to recover actual damages suffered and any

profits of the infringer attributed to the infringement.  17 U.S.C. § 504(b).  "In establishing

the infringer's profits, the copyright owner is required to present proof only of the

infringer's gross revenue, and the infringer is required to prove his or her deductible

expenses and the elements of profit attributable to factors other than the copyrighted

work."  *Id.*  The copyright owner has the initial burden of establishing that there exists a

"nexus" between the infringement and the infringer's profits. *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003). In other words, the copyright owner must show that the infringed work "contributed to" the profits of the infringer. *Id.* at 797.

Buss does not claim there no nexus between the infringement and Defendants' profit but instead opines that FDN has failed to meet the burden of nexus required under the statute. (Harting/Buss Decl., Ex. 2 ("Buss Dep.") at 122:13–22.) FDN asks the Court to exclude this nexus opinion for two reasons. First, FDN asserts that Buss is solely rebutting its expert Carl Degen, but since Degen never opined on nexus, Buss's opinion is outside the scope of the expert reports and should be excluded. Second, FDN states that Buss's report should be excluded because he applied the wrong legal standard for nexus and therefore his opinion is unreliable.

### a. Rebuttal of the Incorrect Expert

Buss's rebuttal expert report states that "[he] was not asked to review and rebut the 'Hochman Report[.]'" (Buss Expert Report at 12.) Rather, Buss writes that he is rebutting Degen's expert report. (Buss Expert Report at 16–18.) FDN asserts that only Hochman opines on nexus, Degen's report never even mentions the word nexus, and therefore, Buss's opinion should be excluded because his rebuttal to Degen is irrelevant. *See UnitedHealth Grp. v. Columbia Cas. Co.*, No. 05-cv-1289, 2011 WL 13186677, at *2 (D. Minn. Sept. 6, 2011) ("[R]ebuttal reports are, however, excludable if they exceed the scope of the matter experts addressed."). FDN is incorrect for two reasons.

8

First, while true that Buss only formally states he is rebutting Degen, Buss functionally rebuts Hochman's opinion as well.  Buss listed Hochman's report as a document he relied upon, and Buss engaged with exhibits that Hochman used in his own report on nexus.  (Buss Expert Report at 13, 17 & Ex. A.)  Further, Buss stated that while he was not asked to rebut Hochman's report, he "did consider statements in the Hochman Report addressing the claim of independent economic value." (Buss Expert Report at 12.) FDN impliedly asserts that because Buss did not formally state he was rebutting Hochman's expert report he is barred from addressing or rebutting that report entirely. FDN's assertion is not supported in the law nor has FDN made a persuasive case for the Court to implement such a rule.  The Court sees no reason to prioritize form over function on a *Daubert* motion as this type of rule cuts against the liberal nature of the standard. Thus, the Court finds that Buss did functionally rebut Hochman.

Next, contrary to FDN's claims, Degen does opine on nexus even if he does not explicitly use that term.  Nexus can be understood as a link between the infringer's profits and the copyrighted work, so any opinion on how that copyrighted work contributed to the infringer's profits is an opinion on nexus regardless of whether the term nexus was used.  Degen's expert report discusses this type of link.

One section of Degen's report is  titled "Defendants' Benefits From Using FDN's Copyright-Protected Product Descriptions" which discusses the "benefits using FDN's copyright-protected product descriptions have on attracting customers . . . as well as

influencing customers' ultimate purchase decisions (i.e. conversion rate)."  (Degen Expert

Report, at ¶¶ 208–15.)  Additionally, Degen's Appendix E includes a column which lists

the dollar amount of Amazon and Coaster's revenues that can be attributable to the

infringement.  (Decl. Francoise Ecclesiaste Opp. Mot. Exclude Hochman, Degen, Hughes,

Ex. 24 ("Appendix E"), June 26, 2021, Docket No. 578.)  These portions of Degen's expert

report can reasonably be interpreted as his opinion that the infringement contributed to

the infringer's profits, or in other words, nexus.  Simply because Degen did not use the

term nexus or because he was not retained to primarily opine on nexus does not mean

that Buss could not reply to his opinions on the topic.  Both of FDN's arguments fail to

look at the actual substance of the expert reports and asks the Court to exclude testimony

simply because the experts did not use what FDN deemed to be the proper phrasing.

Buss's nexus opinion does not fall outside the scope of the expert reports it addressed

and will be helpful to the trier of fact.

### b.  Appropriate Legal Standard

FDN's second argument for exclusion of Buss's nexus opinion centers on its

assertion that Buss employed the incorrect legal standard.  Based on the parties' vigorous

dispute on this issue, one would think they disagree on what the legal standard for nexus

is.  However, upon closer examination, the parties advocate for very similar standards.

Courts have phrased their definition of nexus in a variety of ways.  The Eighth

Circuit has articulated the standard for nexus as a "casual connection" between the

profits and the copyrighted work or, in other words, that the work "contributed to" the profits. *Andreas*, 336 F.3d at 797.  The same standard has been employed in this district. *Honeywell Int'l Inc. v. ICM Controls Corp.*, No. 11-cv-569, 2017 WL 374901, at *5 (D. Minn. Jan. 26, 2017).   And other circuits, in citing *Andreas*, have held that a copyright owner must show that the revenues are "reasonably related" to the infringement.  *Beasley v. LFP, Inc.*, 691 F.3d 747, 770 n.6 (6th Cir. 2012); *Thornton v. J. Jargon Co.*, 580 F. Supp. 2d 1261, 1279–80 (M.D. Fla. 2008).   Neither party disputes that, based upon this case law, the standard for nexus requires a showing of causation that is less stringent than "but-for" causation.[1]

The case law also establishes that nexus cannot be met by demonstrating a merely theoretical relationship between the alleged infringement and the profits.  A copyright owner must present more than "mere speculation" that the copyrighted work contributed to profits.  *Andreas*, 336 F.3d at 796.  Courts must be careful to "guard against a plaintiff[ ] claiming the defendant's profit from something only feebly connected to the infringement."  *Honeywell*, 2017 WL 374907, at *6 n.5; *Fair Issac Corp. v. Fed. Ins. Co.*, 447 F. Supp. 3d 857, 877 (D. Minn. 2020) ("[T]he revenue stream must bear a legally significant relationship to the infringement.").   Thus, while a copyright owner need not show "but-

---

[1] Though Coaster cites to a case that does apply a but-for causation standard, *see Tri-Marketing, Inc. v. Mainstream Marketing Services, Inc.*, No. 09-13, 2010 WL 1924456 (D. Minn. May 12, 2010), Coaster cited this case for its discussion of the evidentiary requirements of nexus, not to assert that the causation must be but-for.

for" causation in proving nexus, the copyright owner also must present concrete evidence of that causation that crosses the line from mere speculation into plausibility.

Buss recited this correct legal standard as his opinions on nexus are rooted in an understanding that nexus can be established by showing a "connection," "causal connection," or a "causal link" or that the copyrighted work was a "contributing factor" to profits. (Buss Expert Report at 10 n.34, 18–19.) One particular factor considered by Buss needs further analysis.

One of the factors Buss looked at was whether FDN's experts had shown that the infringement "resulted in sales that would not have otherwise occurred" which can be interpreted as a "but-for" analysis. (Buss Expert Report at 18.) This was, however, just one factor that Buss reviewed in reaching his overall conclusions on nexus. His nexus opinion did not depend solely on whether FDN had shown that the infringement led to sales. (Buss Dep. at 119:14–120:9 (clarifying this was just one of the types of data he looked to in his analysis); Buss Expert Report at 18 (listing several factors FDN's experts would have had to establish to prove a connection.)) Contemplation of this one factor does not transform his entire analysis of nexus into improper expert testimony. Because Buss employed the correct standard for nexus, his opinion on this issue is admissible. FDN is free to challenge the weight and credibility of Buss's opinions, but these challenges are more appropriate at a later stage. Thus, the Court will not exclude Buss's nexus opinions.

12

### 2.    Buss's Apportionment Analysis

Once a copyright owner has established a nexus, the infringer may reduce their potential damages by demonstrating the existence of elements of their profit that are attributable to factors other than the copyrighted work.  17 U.S.C. § 504(b); *Andreas*, 336 F.3d at 796.  This is known as an apportionment analysis.

Buss opines on apportionment, providing his opinion on the amount of Coaster's profits that can be attributed to the infringement of the FDN Descriptions.[2]  (Buss Expert Report at 22–26.)  Buss's apportionment opinion was based on a 17-factor apportionment test.  (Decl. Brian Buss, Ex. 1 ("Schedule 7"), June 25, 2021, Docket No. 537.)  To each factor, Buss assigned a score standing for the level of connection between the infringement and that particular factor.  (*Id.* at 4–5.)  Buss did not explicitly define what each score stood for in his report, however, under the column "Greater

---

[2] In a footnote, FDN argues that the statute requires Buss to identify elements of profit attributable to factors other than the infringement, and since Buss did the opposite, opining on which portion of the profit is attributable to the infringement, his opinion should be excluded.  FDN over generalizes Buss's opinion.  Buss identifies several factors that contributed to Coaster's profit other than the FDN Descriptions.  (Buss Expert Report at 25 ("These observations indicate components of the FDN Text are not key factors in Coaster's ability to generate revenue and profits.  Other elements of the Amazon product pages, other marketing activities, familiarity with the Amazon and Coaster brands, supply chain relationships and physical assets have greater contribution to profits than the alleged infringement of the FDN Text.").)  Furthermore, its argument points out a distinction that ultimately makes no difference.  Identifying that the FDN Descriptions contributed to no more than 5% of Coaster's profits, necessarily implies the corollary analysis that other factors contributed to the remainder of Coaster's profits.  Any conclusion that infringement contributed 5% to the profits requires the conclusion that other factors must have contributed 95%.  Therefore, calculating it either way is permissible under the statute.

13

Apportionment %" located in Schedule 7, he would use the term "None" when a factor was assigned 1, and "Low" when a factor was assigned a 2. (Schedule 7 at 4–5.) Buss stated in his deposition that a score of 1 meant there was no connection between the factor and the infringement, a score of 2 meant a low connection, and so on. (Buss Dep. at 219:4–19.) Buss then took the scores of each of the 17-factors and calculated a total score from which he determined that the FDN Descriptions contributed to no more than 5% of the total infringer profits. (Buss Expert Report at 25.) Buss provided an explanation on how he reached this 5% of profits number in his deposition but omitted such detail from his expert report. (Buss Dep. at 220:19–223:6.)

FDN seeks to exclude Buss's quantitative apportionment opinion which consists of the opinions discussed above—the scores of 1-5 assigned to each of the 17-factors and his final percentage calculation. FDN also asks the Court to exclude Buss's use of the term "more derivative" when describing the relationship between the FDN Descriptions and the descriptions originally provided to FDN by Coaster. (Schedule 7, at 5.)

### a. Quantitative Apportionment Opinion

FDN asks the Court to exclude the quantitative portions of Buss's expert report because they are too speculative and unreliable. Buss's report omits his methodology for assigning the scores of 1-5 to each of the 17-factors. His report also does not explain how he used those scores to then reach his ultimate calculation of a 5% apportionment rate. The only mention of Buss's methodology appears in his deposition testimony.

14

*Fahmy v. Jay-Z* provides the Court with some guidance. 2015 WL 5680299, at *2 (C.D. Cal. Sept. 24, 2015). In *Fahmy*, a copyright infringement case involving a particular song, the defendants presented an expert to opine on apportionment. *Id.* That expert identified six factors which drove the success of the song, including the alleged infringement used in the song. *Id.* The expert then assigned percentages to each factor, which he asserted represented his professional opinion on the extent to which the success of the song could be attributed to that particular factor. *Id.* at *3. Upon a *Daubert* motion, the court allowed the expert to testify about the specific factors he identified but excluded the percentage ranges because: (1) the expert failed to explain how he calculated the percentage numbers; (2) the expert admitted in his deposition that he could not speculate on whether someone could replicate his analysis; (3) the expert's method was not peer reviewed; and (4) the opinion would mislead the jury given the complexity of apportionment. *Id.* at *4.

Several of the factors in *Fahmy* are likewise relevant here and render Buss's quantitative apportionment opinions too subjective to allow them to be presented to the jury as is. Like the expert in *Fahmy*, Buss does not explain his methodology for assigning scores and calculating the final percentage. Buss admitted in his deposition testimony that assigning scores is a "subjective analysis" akin to "you know it when you see it[.]" (Buss Dep. at 220:1–17.) Further, the use of the scoring ranges and the ultimate percentage determination would mislead and confuse the jury on several counts. First,

because Buss argues that the amount of revenue that can be apportioned to the alleged infringement is no greater than 5%, a jury may interpret this as an absolute ceiling. This could impermissibly cabin the jury in their apportionment analysis. Second, apportionment is an incredibly complex issue and could result in the jury attaching undue weight to Buss's opinion as an expert.

Unlike the expert in *Fahmy* though, Buss's method has been peer-reviewed and previously admitted by courts. Buss's apportionment analysis appeared in a chapter of a book published by Business Valuation Resources LLC and a peer-reviewed journal called "The Value Examiner." (Buss Decl. Opp. Mot. Exclude, ¶¶ 12, 13, & Ex. 4, June 25, 2021, Docket No. 536.) Buss's similar apportionment analyses have been admitted in two other cases: *Stockdale Investment Group, Inc. v. Stockdale Capital Partners,* LLC, No. 18-cv-2949 (S.D. Tex.) and *Gianni Versace S.r.l. v. Fashion Nova, Inc.*, No. 19-10074 (C.D. Cal.). Though Buss's apportionment analysis has been peer-reviewed, his quantitative apportionment analysis is impermissibly subjective. As his opinion currently stands, it is inadmissible.

However, because Buss's method has been peer-reviewed and published, the Court will allow Coaster thirty days to amend and re-submit Buss's expert report to rectify the subjectivity issues. In particular, any amended expert report must address the method used to assign scores to each of the 17-factors and must detail how he calculated a final percentage of apportionment. The Court will then address any remaining concerns FDN has with the amended expert report on a motion in limine.

16

### b. Buss's Use of Term "More Derivative"

FDN asserts that Buss's opinion that the FDN Descriptions were "more derivative" of Coaster's original product descriptions should be excluded because this opinion constitutes inadmissible speculation, is not helpful or relevant to the trier of fact, and lacks foundation.

Buss uses this term in Schedule 7 and his expert report, stating that one of his key observations is that the "FDN Text is **derived** from product specifications provided by Coaster." (Schedule 7 at 5; Buss Expert Report at 24.) Buss clarified that he did not intend the use of that term to convey any legal meaning. (Buss Dep. at 250:12–251:16.) Rather, he asserts he only meant to convey the point that the FDN Descriptions were based on product descriptions sent to FDN from Coaster.

Buss's use of the term was not in a legal sense and is the result of inartful lawyering. The fact that the FDN Descriptions were created based on information provided by Coaster is relevant to Buss's apportionment analysis and would ultimately be helpful to the trier of fact. But the use of the term derivative certainly has legal connotations that could confuse a jury. As such, the Court can properly deal with this issue by either issuing a limiting instruction or addressing it in a motion in limine. For now, the Court will deny FDN's request to exclude Buss's opinion regarding the "more derivative' nature of the FDN Descriptions.

In sum, the Court will grant in part and deny in part FDN's Motion to Exclude portions of Buss's rebuttal expert report.

### B. FDN'S Motion to Exclude Gordon Everest's Expert Report and Opinions (Docket No. 444)

Gordon Everest's expert report focuses on the differences between the database schemas of CMS and FDealer–that is, the way they classify, categorize, order, group, place, and arrange data. The Court has concluded on summary judgment that in order to overcome the presumption of validity, a defendant must show fraud under § 411(b). (Order Cross Mots. Summ. J. at 26–33.) Section 411(b) does not invalidate a copyright registration if a plaintiff can prove that the inaccurate information in a copyright registration was included in good faith. (*Id.* at 31–32.) Defendants have not argued that the use of data from FDealer, rather than CMS, rose to the level of fraud. Instead, they argue that FDN knew the information was inaccurate because the schemas between the two databases were different. Since the Court finds that the use of data from FDealer instead of CMS was made in good faith, Everest's testimony regarding the differences between the schemas is unnecessary. Therefore, the Court will grant FDN's Motion to Exclude Everest's expert report and opinions.[3]

---

[3] As the Court noted in its Order on Summary Judgment, Defendants are not precluded from presenting evidence of fraud committed by FDN in filing their copyright registration. If Defendants choose to argue that FDN acted fraudulently under § 411(b) they may submit a revised version of Everest's testimony that discusses how his opinions are relevant to a determination of fraud within thirty days of the filing of this Order. The Court will then consider any objections to that amended testimony on a motion in limine.

### C. FDN'S Motion to Exclude Ralph Oman's Expert Reports and Opinions (Docket No. 460)

Ralph Oman is an expert witness for Coaster who claims to opine on both the legal and technical inadequacies of FDN's copyright.  Oman was the Register of Copyrights at the U.S. Copyright Office from 1985-1993 and is now a professor in patent and intellectual property law at George Washington University School of Law.  (Decl. Francois Ecclesiaste Supp. Mot. Exclude Oman ("Ecclesiaste/Oman Decl."), Ex. 1 ("Oman Initial Report") at 2, May 14, 2021, Docket No. 462.)  Oman authored an initial and a rebuttal expert report.  FDN has asked the Court to exclude the entirety of both reports.

### 1.    Oman's Initial Expert Report

[E]xpert testimony on legal matters is not admissible, but rather matters of law are for the trial judge, and it is the judge's job to instruct the jury on them." *Thomas v. Barze*, 57 F. Supp. 3d 1040, 1059 (D. Minn. 2014) (quoting *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (cleaned up).  "Opinions that merely tell the jury what result to reach are not admissible."  *Lee v. Anderson*, 616 F.3d 803, 808 (8th Cir. 2010).[4]

---

[4] To note, Oman's testimony has been excluded in eight prior cases.  *See, e.g., Jonathan Browning, Inc. v. Venetian Casino Resort LLC*, 2009 WL 1764652, at *1–2 (N.D. Cal. June 18, 2009) (excluding opinions on copyrightability and the decision of the Copyright Office to issue a certificate of registration); *Paul Morelli Design, Inc. v. Tiffany and Co.*, 200 F. Supp. 2d 482, 486–87 (E.D. Pa. 2002) (excluding opinion on originality and Copyright Offices practices and procedures); *Osment Models, Inc. v. Mike's Tarin House, Inc.*, 2010 WL 4721228, at *2 (W.D. Mo. Nov. 15, 2010) (excluding opinion on copyrightability).

Oman's opinions on § 411(b) are inadmissible because the Court has determined that § 411(b) codified the affirmative defense of fraud on the Copyright Office. (Order Cross Mots. Summ. J. at 26–33.) Oman offers no opinions as to whether FDN's actions constituted fraud, so his opinions on § 411(b) are irrelevant and unhelpful to the trier of fact.

Outside of his § 411(b) opinions, the remainder of Oman's opinions in his initial expert report can be categorized as follows: (1) the FDN descriptions were published prior to registration ("Publication Opinions"); (2) FDN does not own the FDN Descriptions ("Ownership Opinions"); (3) the FDN Descriptions constitute one work for the purposes of statutory damages ("Statutory Damages Opinions"); and (4) the practices and procedures of the Copyright Office ("Practices and Procedures Opinions").

Oman's Publication, Ownership, and Statutory Damages Opinions are inadmissible as they clearly cross the line into impermissible testimony on legal matters attempting to instruct the jury on the law. Oman's opinions read more like a legal brief than an expert report. For example, in a discussion on publication, Oman states that the "Print this Page" button is "tantamount to transferring the right of reproduction and further distribution, which is the penultimate action for publication under copyright law." (Oman Expert Report at 17.) Whether or not the FDN Descriptions are published is a legal question central in this case, and which must be determined by a trier of fact. Oman cannot offer a legal conclusion on this issue, it is patently prohibited.

20

In writing the Ownership Opinions, Oman interprets the contract between Coaster and FDN, testimony that is entirely improper for an expert to offer. *Lemond Props., LLC v. Chart Inc.*, 2018 WL 490976, at *2 (D. Minn. Jan. 19, 2018) ("Construction of an unambiguous contract is a legal question for the court, while construction of an ambiguous contract is a factual question for the jury.").[5]

Oman's Statutory Damages Opinions are inadmissible because he does not have any expertise as a damages expert. Furthermore, his opinion on damages can be boiled down to Oman interpreting what "one work" means under the statute and opining on how this impacts the damages available to FDN. (Oman Expert Report at 7 n.3.) It is for the Court to determine the relevant legal standards on statutory damages and for the factfinder to determine if those standards are met.

Oman's Practices and Procedures Opinions are not legal conclusions, but they are likewise inadmissible on different grounds. Regardless of whether Oman actually offered substantive Practice and Procedure Opinions in his expert report or intends to offer more

---

[5] Furthermore, the Court has already addressed the issue of ownership over the FDN Descriptions in its Order on Coaster's Motion to Dismiss. (Order Coaster's Mot. Dismiss, Mar. 14, 2019, Docket No. 91.) The Court held that even if Coaster's provision of the descriptions to FDN constitutes a contribution, the Court was not persuaded that Coaster was a joint author because Coaster paid FDN to create and enhance its content, particularly through keyword enhancing product descriptions. (*Id.* at 15.) The contract language itself evidences that Coaster had no intent to be a joint author. (*Id.*) Therefore, the Court found it probable that FDN was the sole author of the FDN Descriptions. (*Id.*) The Court went on, even if Coaster owned rights in the website, which it allegedly copyrighted, it is best characterized as a collective, allowing FDN to enjoy copyright protections in the website's individual contributions such as the FDN Descriptions. (*Id.*) The Court's previous analysis holds true here. Any expert testimony on ownership is foreclosed because Coaster is not a joint author of the FDN Descriptions.

testimony to the jury on this topic,[6] his opinions are unhelpful to the trier of fact.  What Oman believes the practices and procedures of the Copyright Office are is irrelevant because any opinion he offers stale.  Oman was the Register over twenty years ago.  Many things have changed in that time and Coaster has not represented why Oman would have any relevant information on the current practices and procedures that could be informative to the trier of fact.

One portion of his Practices and Procedures Opinions, the testimony as to the history and development of group registration, is potentially more relevant because Oman was the Register of the Copyright Office when this process was first rolled out.  However, this testimony is not necessary for several reasons.  First, Coaster can present legislative history which sufficiently expresses Oman's opinions on the different legislative ideas and motivations surrounding group registration.  Second, Oman himself stated that "Compendium III confirms my recollection of our concerns when we promulgated our regulation on automated database registrations,"  (Oman Expert Report at 7) so Coaster can simply present those portions of Compendium III that express Oman's opinions on the matter.  Thus, if Coaster is worried that any of Oman's opinions, if excluded, will not come before the trier of fact, this worry is unsubstantiated.  Lastly, this portion of Oman's testimony is minor and is surrounded by pervading legal analysis and factual conclusions

---

[6] To be clear, though Coaster asserted that it planned to elicit further testimony from Oman at trial, Coaster is barred by Federal Rule of Civil Procedure Rule 26(a)(2)(B)(i) from offering new opinion testimony that was not initially disclosed.

such that extracting this small portion would be impractical. *Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 13128409, at *2 (C.D. Cal. Jan. 26, 2011) (holding that extricating Oman's opinion from pervasive legal analysis is impracticable).

Oman's Initial Expert Report is inadmissible as it is riddled with impermissible legal analysis and the narrow opinions that do not constitute legal conclusions are unhelpful to the trier of fact. Thus, the Court will grant FDN's Motion to Exclude Oman's initial expert report.

### 2.    Oman's Rebuttal Expert Report

Oman's rebuttal report is inadmissible for similar reasons. Oman submitted a rebuttal to FDN's experts Hochman and Degen. (Ecclesiaste/Oman Decl., Ex. 5.) Oman offers three main opinions in his rebuttal: (1) FDN's automated database is uncopyrightable ("Copyrightability Opinions"); (2) the effective date of registration is no earlier than 2017 ("Date of Registration Opinions"); and (3) the copyright management information ("CMI") placed on Coaster's webpage by FDN was misleading and the FDN Descriptions never contained CMI themselves ("CMI Opinions").

Outside of these three main categories discussed in depth below, Oman begins his rebuttal report by offering several haphazard opinions that must be excluded. Oman states that FDN has failed to meet the requirements of group registration, that the FDN Descriptions constitute one work for purposes of statutory damages, and that FDN can receive no protection for "sweat of brow." (Oman Rebuttal Report at 2–6.) These

opinions are clear cut legal conclusions and are inadmissible.  *See S. Pine Helicopters, Inc.*,

320 F.3d at 841.

Oman's Copyrightability Opinions are inadmissible because Oman simply opines

on what he thinks the standard for copyrightability is, applies the facts of this case to that

standard, and concludes that FDN has failed to meet the standards for copyrightability.

(Oman Rebuttal Report at 9–12.)  Oman cannot embed his legal analysis into historical

context and hope to survive *Daubert*.

Oman's Date of Registration Opinions similarly fail because Oman repeats the law

as it relates to effective registration dates, states how he believes the Copyright Office

would have or should have handled the application, applies the facts of this case to his

interpretation of the law, and reaches a conclusion on the date of registration.  (Oman

Rebuttal Report at 6–8.)  It is the Court's role to instruct the jury on the relevant law and

it is the jury's role to apply the facts to the law in order to determine when the copyright

was effective.  *See Thomas*, 57 F. Supp. 3d at 1059.  Furthermore, Oman's opinion is

inadmissible because it misstates the factual record.  Oman claims that there was never

an original deposit submitted in 2015.  (Oman Rebuttal Report at 6.)  This is directly

contradicted in the communications from the Copyright Office requesting a replacement

deposit.  (Zeitlin Decl., Ex. 28 at 9.)

Lastly, Oman's CMI Opinions are not only legal conclusion, they are unhelpful and

unreliable because Defendants' have presented no reason why Oman is an expert on the

DMCA.  Oman was not the Register when the DMCA was enacted nor has he established any particular expertise on the statute.  There is no reason to believe Oman has a better understanding of the DMCA than a lay person.  Thus, these opinions are inadmissible because they are unhelpful, unreliable, and again, constitute legal conclusions.

In sum, the Court cannot imagine a more clear-cut example of impermissible expert testimony on legal matters than both of Oman's expert reports.  The Court will grant FDN's Motion to Exclude Oman's rebuttal expert report in addition to his initial expert report.

### D.  FDN's Motion to Exclude Portions of Dr. George John's Report and Opinions (Docket No. 468)

John is an Amazon expert who has been tasked with rebutting certain opinions offered by FDN's experts.  FDN seeks to exclude John's opinion on the nexus between Amazon's alleged infringement and Amazon's revenues.  (Decl. Harting Supp. Mot. Exclude John ("Harting/John Decl."), Ex. 1 ("John Expert Report"), May 14, 2021, Docket No. 470.)  Similar to its arguments on Buss's nexus opinion, FDN asserts that John employed the incorrect legal standard for nexus, thus warranting exclusion.

The standard for nexus does not require a showing of "but-for" causation, but rather a less stringent causal connection.  Courts have used phrases such as a "causal connection," "contributed to," and "reasonably related."  *Andreas*, 336 F.3d at 797; *Beasley*, 691 F.3d at 770 n.6. There is, however, an evidentiary burden that a copyright owner must meet in establishing nexus.  A copyright owner cannot demonstrate merely

a theoretical relationship between infringement and profits, they must present more than

"mere speculation."  *Andreas*, 336 F.3d at 796.  The copyright owner must explain how

the infringement "contribute[s] somehow" to those profits.  *Id.*

Defendants take issue with John's recitation of the legal standard in paragraph 126

of his expert report.  (John Expert Report at ¶ 126.)  Paragraph 126 states as follows:

> FDN bears the burden of demonstrating a nexus between the
> copyright infringement and the indirect profits.  That is, I
> understand that FDN has a burden to show that infringement
> of FDN Product Descriptions **contributes to** the revenue FDN
> seeks to recover from Amazon.  I also understand that FDN
> must show that the FDN Descriptions did more than just
> **contribute somehow** to the generation of revenue from the
> sale of Coaster furniture.  Instead, I understand that FDN must
> show through evidence beyond **mere speculation** that the
> infringement **led to** the generation of the revenue FDN has
> identified as the 'infringer profits.'

(*Id.* (emphasis added).)

John's recitation of the legal standard is substantially accurate.  The phrases

"contributes to," "contribute somehow," and "mere speculation" all derive from *Andreas*

and correctly state both the standard and the evidentiary burden of nexus.  The only

phrase that raises an issue is "led to," which Defendants argue employs a but-for standard

and taints his entire analysis.

The Court agrees with FDN that this phrase can potentially be understood as

articulating a but-for standard.  It is also not derived from any case law.  But the phrase

does not necessitate this conclusion, it can also be interpreted as stating a causation

standard lower than but-for.  Both would be reasonable readings of that phrase.  "Led to"

26

is ambiguous and since the Court must resolve doubts in favor of admissibility, John's use of this term does not render his entire nexus legal standard inaccurate nor render his testimony inadmissible on a *Daubert* motion.

Contrary to FDN's assertion, the substance of John's nexus analysis utilizes the correct legal standard. John looks at factors that do not require but-for causation such as whether the FDN Descriptions contributed to search engine optimization ("SEO") outcomes or how an FDN Description impacted a customer's decision-making process on Amazon. (*See, e.g.*, John Expert Report at ¶¶ 130–38, 142.) And as discussed in relation to Buss, John is allowed to consider but-for causation as one of the factors in his nexus analysis, so long as it is not the sole factor he considers. John's expert report makes clear that it is not. Though his use of the term "led to" was inartfully worded, it is not enough to render his entire testimony on nexus and apportionment inadmissible under the lenient standards of admissibility at this stage.

### E. Defendants' Motion to Exclude Portions of John Hochman's Expert Report and Opinions (Docket No. 476)

John Hochman is the founder of Hochman Consultants, an internet marketing agency. (Decl. Vera Ranieri Supp. Mot. Exclude Hochman, Degen, & Hughes, Ex. 5, June 26, 2021, Docket No. 481.) Hochman has served as an expert consultant and witness in the fields of e-commerce, Internet advertising, software development, technology entrepreneurship, and Internet security. (Renieri Decl., Ex. 1 at ¶ 8 ("Hochman Expert

Report").)  Hochman has been retained by FDN to author a number of opinions in this case related to FDN's copyright infringement and DMCA claims.

Defendants seek to exclude vast portions of Hochman's Expert Report, delineating eight different types of opinions that warrant exclusion.  The Court will review each of Defendants' arguments, though it notes that requesting the Court to dissect the proffered experts' anticipated testimony and prohibit certain opinions is a task better undertaken through motions in limine or objections at trial rather than through a *Daubert* motion. *Nat'l Presto Indus. v. U.S. Merchs. Fin. Grp.*, No. 18-cv-3321, 2021 WL 2515806, at *31 (D. Minn. June 18, 2021).  However, since the parties have fully briefed the issues, the Court will consider them at this stage.

### 1.   Substantial Similarity

Hochman opines on substantial similarity.  The second element of a copyright infringement claim is copying.  Copying can be demonstrated through proof of actual copying. *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 964 (8th Cir. 2005).  In the absence of such direct evidence, a copyright owner can prove copying by showing that the defendant had access to the copyrighted works and that the defendant's work was substantially similar to the copyrighted work. *Id.*   Neither party disputes that Defendants had access to the FDN Descriptions, but they do contest whether the product descriptions on Amazon's product detail page ("Accused Descriptions") were substantially similar to the FDN Descriptions.

The Eighth Circuit applies a two-step analysis to determine substantial similarity. *Id.* at 966. There must be substantial similarity between the general ideas and substantial similarity between the expression of those ideas. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987). The first step of the analysis, analyzing the substantial similarity of ideas, is analyzed extrinsically, focusing on the objective similarities between the two works. *Id.* Because the extrinsic test focuses on objective criteria such as the "type of artwork involved, the materials used, the subject matter, and the setting for the subject," expert opinion evidence may be considered. *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006). If there is substantial similarity in ideas, similarity of expression is then analyzed intrinsically, looking at the response of an ordinary, reasonable person to the form of expression. *Id.* Expert opinions are not appropriate on the intrinsic test. *Id.*

Hochman's expert report discusses the similarity between the Accused Descriptions and the FDN Descriptions. (Hochman Expert Report at ¶¶ 119–48, 152–64.) Hochman begins his review of substantial similarly by organizing Appendix E[7] to Degen's Expert Report by cosine similarity score. Hochman then reviewed the data visually to confirm that all Accused Descriptions were substantially similar to the FDN Descriptions.

---

[7] Appendix E compiled all of the FDN Descriptions and compared them with the Accused Descriptions. Degen then assigned a cosine similarity score which is a standard used in computer science to measure the similarity between two texts. (Renieri Decl., Ex. 24; Hochman Expert Report at ¶ 133.) Appendix E is discussed at length *infra* Part F.5.

(Hochman Expert Report at ¶ 133.)  In reviewing the descriptions, Hochman claims he used his "[own] common understanding of the  meaning of 'substantially similar'" and that he spent an average of a few seconds comparing each description.  (Renieri Decl., Ex. 2 ("Hochman Dep.") at 108:10–12, 121:12–13.)   Hochman opined that the Accused Descriptions paraphrased the FDN Descriptions and ultimately had the same "total concept and feel."  (Hochman Expert Report at ¶¶ 156, 164.)

Notwithstanding other reasons why Hochman's opinion on substantial similarity should be excluded, Hochman's opinion is simply not helpful to the trier of fact.  "If the subject matter is within the jury's knowledge or experience . . . the expert testimony remains subject to exclusion because the testimony does not then meet the helpfulness criterion of Rule 702."  *Lee*, 616 F.3d at 808–09.  Comparing the similarity between two textual descriptions does not require any sort of special or technical knowledge.[8]  While true that a few of the Accused Descriptions are more difficult to read because of the appearance of HTML, those descriptions are not so significantly muddled that no reasonable person could read the text that appears around the HTML to determine similarity.  (*See, e.g.*, Hochman Expert Report, at ¶ 141.)  Therefore, the Hochman expert report on substantial similarity employs no specialized or technical knowledge.

---

[8] Indeed, when asked how he compared the descriptions, Hochman stated that he looked at which words had been switched out and whether those words are synonymous.  (Hochman Dep. at 124–126:21.)  This is well within the ability of any ordinary person.

Hochman's opinions that allegedly opine specifically on the factors of the extrinsic test, such as subject matter of the art, are ultimately unhelpful because there is likewise no need for specialized knowledge on these factors.  The type of artwork involved, the materials used, the subject matter, and the setting are all determinations a lay person can make.[9]  The FDN Descriptions are textual descriptions of pieces of furniture, they are not so significantly technical that a reasonable person could not understand similarity of ideas or expression without specialized knowledge.

Outside of the fact that Hochman's opinions are simply unnecessary, they are impermissible because they discuss the similarity of expression.  *Rottlund*, 452 F.3d at 731; *Honeywell*, 2017 WL 374907, at \*4 (finding an expert's side-by-side comparison of the accused work and the infringed work an impermissible opinion on similarity of expression).  Hochman compared the descriptions side-by-side, used his common understanding of what substantial similarity means, looked at the total "concept and feel" of the descriptions, and compared the romance copy.[10]  This analysis addresses the

---

[9] FDN argues that Hochman's extrinsic evidence opinion is admissible because he opines on things such as how the product descriptions can enhance search results.  It is unclear how this is relevant to the extrinsic analysis for substantial similarity but furthermore, the jury will be hearing a significant amount of evidence on this topic, so exclusion of this small portion of Hochman's report will not preclude this type of evidence from coming before the jury.

[10] Romance copy is defined as text that is used to engage with consumers to help them envision using the product, using real life examples, and attempts to talk directly to consumers. (Hochman Expert Report at ¶ 164.)

intrinsic nature of the product descriptions, opining on their similarity of expression. This is a task for the factfinder, not an expert.

Because Hochman's opinions on substantial similarity are unhelpful to the jury and impermissibly discuss similarity of expression, the Court will grant Defendants' Motion to Exclude Hochman's expert opinions on substantial similarity.

### 2.     FDN's Harm Suffered

Defendants seek exclusion of Hochman's testimony that Defendants' use of the FDN Descriptions caused harm to FDN and negatively impacted FDN and its clients. In particular, Defendants contest Hochman's statement that the "high quality" FDN Descriptions allowed FDN's clients to rank highly in search results and that when the Accused Descriptions appeared on Amazon, FDN's clients fell in search rankings and lost web traffic, in turn causing FDN to lose clients and make price concessions to others. (Hochman Expert Report at ¶¶ 102–03, 267, 270, 272, 294, 320–21, 323.) Defendants argue that this theory of harm is based on assumptions, constitutes little more than speculation, and amounts to impermissible *ipse dixit* of the expert. *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) ("A court should not admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert . . . . When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded.").

### a. Hochman's Opinion that the FDN Descriptions Were High Quality

Hochman frequently states that the FDN Descriptions are high-quality. Defendants seek exclusion of this characterization of the FDN Descriptions because, they claim, Hochman merely assumes the quality of the descriptions without providing any support for this conclusion. Defendants are incorrect. Hochman did support his use of the term "high-quality" when he discussed, at length, the value of the FDN Descriptions. (Hochman Expert Report at ¶¶ 100–16, 293.) Though many of these paragraphs recite factual evidence, it is this factual evidence which underpins the expert opinion that the FDN Descriptions are high-quality. Hochman did state that a factual witness will need to come forward to talk about the high-quality of the FDN Descriptions and that he has not independently asserted that fact in his expert report, but he also stated that he would agree with that conclusion from everything he has reviewed. (Hochman Dep. at 178:23–179:6.) Thus, Hochman's deposition testimony is not contrary to his conclusion on the quality of the FDN Descriptions.

For purposes of a *Daubert* motion where the admissibility standard is quite liberal, Hochman's deposition testimony is not enough to warrant exclusion of his use of this phrase at this stage. There is not such a significant gap between Hochman's opinion and the facts in the record. Defendants' claim that his assertion is unsupported, then, goes more towards credibility and weight than to admissibility, which is properly addressed

later in litigation, not on a *Daubert* motion.   Thus, the Court declines to exclude
Hochman's opinions on the high-quality nature of FDN's Descriptions.

### b.   Hochman's Opinion that FDN was Forced to Make Price Concessions as a Result of Infringement

Defendants next take issue with Hochman's opinion that FDN not only lost clients
but had to make price concessions because of the impact of the alleged infringement on
search results.  (Hochman Expert Report at ¶ 272.)  Defendants claim that since Hochman
relied solely on the testimony of FDN's CEO in making this statement, the Court should
exclude this opinion.

Courts have held that "assumptions based on conclusory statements of the
expert's client, rather than on the expert's independent evaluation are not reasonable."
*See Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, No. 95-CIV-8136, 2001 WL 1602976, at
*4 (S.D.N.Y. Dec. 14, 2001).  But when the factual underpinnings of expert testimony are
challenged, the law favors vigorous cross-examination over exclusion.   *Fed. Energy
Regulatory Comm'n v. Silkman*, No. 16-cv-205, 2019 WL 6467811, at *5 (D. Me. Dec. 2,
2019).

Hochman's reliance upon FDN's CEO regarding whether FDN lost clients or had to
make price concessions is not unreasonable and does not warrant exclusion.   The
testimony of FDN's CEO was not conclusory because, in the portion of the deposition
testimony cited by Hochman, FDN's CEO specifically identified which clients FDN had lost
or had to make price concessions to.  (Hochman Expert Report at ¶ 272 (citing A. Bernstein

Dep. (Vol. 2) 106–117).)  It is not unreasonable to assume that the CEO of a business would know better than anyone these particular facts.  Furthermore, Hochman's statement is supported because he based it on his own experience in e-commerce, which is permissible.  Hochman's assertion is not wholly untethered from the record nor was it unreasonable for him to rely upon the statement made by FDN's CEO.  Excluding this testimony would create a high bar—requiring every expert to independently verify assertions made by their clients, even if their clients are credible.  Defendants' objections to Hochman's opinions are better classified as challenges to the credibility and weight of his testimony, not admissibility.  Thus, the Court will not exclude Hochman's opinions on this issue at this stage.

### c. Hochman's Opinions that Defendants' Infringement Caused a Decline in Web Traffic

Defendants seek exclusion of Hochman's opinions that the web traffic to FDN hosted websites declined as a result of the alleged infringement.  (Hochman Expert Report at ¶ 273.)  Hochman did not determine whether any traffic drop actually ever occurred.  (Hochman Dep. at 79:20–80:3.)  Rather, Hochman stated that he identified "a potential causative mechanism" between the infringement and web traffic.  (*Id.* at 81:11–17.)  Defendants take issue, therefore, with this opinion because they argue it is speculative and depends solely on the future occurrence of particular events.

Hochman's testimony is not too speculative to warrant exclusion at this stage.  Hochman discusses website traffic throughout his expert report and often cites to record

evidence that supports his overall opinion on the decline of web traffic.  Hochman also relied on his own expertise in e-commerce to reach this conclusion.  And to be clear, Hochman never stated that there definitively was a decline in FDN's web traffic as a result of the alleged infringement.  Instead, Hochman stated that **if** there was a dilution of the content and lower search rankings, that this would lead to less traffic and in turn fewer sales.  (Hochman Expert Report at ¶ 273.)  This is not speculation but is grounded in Hochman's own expertise and is based on basic e-commerce and SEO principles.  Defendants' have failed to identify an analytical gap between the data and proffered opinion that is too great to allow the testimony to be admitted.  If Defendants are unhappy with Hochman's opinion on the causal relationship between web traffic and the infringement, then Defendants can challenge his opinion's credibility and weight at a later stage.

The Court is unpersuaded by Defendants' assertion that because Hochman did not identify and consider other factors such as seasonality, changes to an algorithm, or technical issues, Hochman's overall opinion failed to consider relevant facts, making his opinion inadmissible.  Defendants cite to *Bland v. Verizon Wireless, (VAW) L.L.C.* and *Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings* for this rule, but neither case explicitly requires that an expert must consider and rule out all possible causes before their testimony is admissible.  538 F.3d 893, 897–98 (8th Cir. 2008); No. 09-1426, 2012 WL 13128107, at *2–3 (D. Minn. Feb. 14, 2012).  Further, both cases are distinguishable as

the courts excluded the expert testimony because they had many problems, not solely because they failed to consider every possible cause.  *Bland*, 538 F.3d at 897 (expert's testimony was excluded because expert was not qualified and used a methodology centered on eliminating causes); *Buffalo Wild Wings*, 2012 WL 13128107, at *2–3 (excluding expert testimony based on an overwhelming number of analytical gaps).  Therefore, Defendants' claim that Hochman needed to consider every potential cause of a decline in website traffic before his opinion can be admitted is not substantiated.  The Court will not exclude this portion of Hochman's opinion.

### d.  Hochman's Allegedly *Ipse Dixit* Opinions

Lastly, Defendants argue Hochman's opinions on FDN's harm are inadmissible because they constitute *ipse dixit*.  Defendants challenge Hochman's opinion that the causal mechanism of harm is rooted in an interaction between Google's duplicate content policy and location-based personalization search results.  Defendants claim that this interaction is not articulated in any source cited by Hochman and, therefore, his theory of a causal mechanism is based on Hochman's say-so only.

Defendants point to *Ryoo Dental, Inc. v. Han*, as support for their argument.  No. 15-cv-308, 2016 WL 6138413, at *5 (C.D. Cal. Apr. 25, 2016).  In *Ryoo Dental*, the expert opined on Google's duplicate content policy, asserting that the policy penalized duplicate content.  *Id.* at *4.  The court pointed out, however, that though the expert cited Google's Duplicate Content Policy, the expert did not quote the document, did not provide that

37

document, did not explain how he learned of that policy, and did not explain how his specialized knowledge provided a reliable basis to opine on the content. *Id*. at *5. The court concluded that a vague reference to an unidentified document does not constitute sufficient facts or data. *Id*.

This is not the case here. Hochman quoted extensively from Google's Webmaster Guidelines to discuss how Google's duplicate policy works. (Hochman Expert Report at ¶¶ 87–90.) Hochman holds a Google Ads Display Certification and Google Ads Search Certification. (Hochman Expert Report at ¶ 18.) He also demonstrated how Google localizes searches by relying on his significant experience and providing concrete examples. (Hochman Expert Report at ¶¶ 91–92, Appendix E.) Hochman's theory of harm as a result of the interaction between Google's duplicate content policy and their localized search processes is not so unmoored from the facts and data to justify exclusion at this stage. Defendants' can take issue with Hochman's methodology and the credibility of this opinion at a later time in this litigation. Thus, the Court will not exclude Hochman's opinions of harm because they are *ipse dixit*.

In sum, Defendants' have failed to raise any plausible arguments for exclusion of Hochman's opinions on the harm suffered by FDN, and as such, the Court will deny Defendants' Motion to Exclude these particular opinions.

### 3.   Hochman's Opinions on Amazon's Business Model, Procedures and Search Engine

Defendants' assert that the Court should exclude portions of Hochman's opinions because they are outside of his expertise.   Rule 702 requires that an expert possess "knowledge, skill, experience, training, or education" sufficient to assist the trier of fact, meaning that the testimony must advance the trier of fact's understanding to any degree. *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006).  "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility."  *Id.*   But, the witness's competence must match the subject matter of their testimony.  *Id.*  At issue here are the opinions Hochman offers on Amazon's business model, its internal technology, and its internal practices and procedures.

Hochman is a 30-year veteran in the field of e-commerce and has deep experience in e-commerce tech, marketing, sales, business development, finance, and operations. (Hochman Expert Report at Appendix A.)  Hochman holds a Master of Science degree in Computer Science from Yale University, has built, managed, and optimized e-commerce websites, and worked with numerous clients in the industry.  (Hochman Expert Report at ¶¶ 7, 11.)  Though experienced, Amazon argues that Hochman is not an expert on Amazon nor on its business model or internal workings.   Amazon states that Hochman's knowledge comes solely from being a "heavy user" of Amazon and reading news articles,

journal articles, and books about Amazon. (Hochman Dep. at 58:11–22.) This, they argue, is not sufficient to establish that Hochman has any expertise on this subject area.

### a. Amazon's Business Model

Defendants first take issue with Hochman's opinion on Amazon's business model. Hochman spends a significant amount of time discussing Amazon's Flywheel Model. (*See e.g.*, Hochman Expect Report at ¶¶ 42, 45, 115.) Hochman also opined that Amazon was trying to quickly break into the furniture market because it would otherwise risk losing its market leading position and that Coaster was a key vendor in propelling them into the market. (Hochman Expert Report at ¶¶ 42, 280.) Defendants conclude that since Hochman is an economist, not an expert on Amazon's business nor an expert on the online furniture market, he is not qualified to offer these opinions.

Hochman's opinions, though, are supported by the record and are within his expertise. His discussions of Amazon's attempt to break into the furniture market, how that would affect their market position, and Coaster's involvement in that can be supported by his extensive experience in the e-commerce industry.[11] Hochman's opinions on the Flywheel Model, which is derived from a business model known as network effects, is based on record evidence and supported by his expertise. The idea of

---

[11] While Amazon argues that e-commerce is now a huge portion of the U.S. economy and therefore Hochman cannot opine on all aspects of it, here, Hochman is opining on basic market principles involving competition in the e-commerce market and the Court fails to see how this falls outside Hochman's expertise.

a business model centered on network effects is not exclusive to Amazon and is a business model employed by many e-commerce businesses.  (Hochman Expert Report at ¶¶ 42–44.)  Hochman's assertion that Amazon employs this model is supported not only by the 2013 book on Amazon but is also confirmed by deposition testimony from an Amazon employee stating he was educated on the Amazon Flywheel Model.  (Hochman Expert Report at ¶ 45, 48.)  Hochman is qualified to give opinions on how the Flywheel Model operates in general and in accordance with the basic principles of network effects, and how it would therefore, likely operate internally at Amazon.  Thus, the Court will deny Defendants' Motion to Exclude Hochman's opinions on Amazon's business model.

### b.  Amazon's Internal Technology

Defendants take issue with Hochman's opinion that their internal, proprietary search engine works according to well-known principles and that the text of a product detail page is a major determination in the output of a site search.  (Hochman Expert Report at ¶ 110.)  Defendants claim Hochman can offer no opinions on Amazon's internal technology because Amazon has not disclosed its proprietary search algorithm.

FDN asserts that while the algorithm was not disclosed, Amazon did disclose non-public documents that Hochman relied upon in reaching this opinion.   However, it is not entirely clear to the Court what these non-public documents are because the paragraphs of Hochman's report where he explicitly discusses the product description's role in a search engine do not cite to any documents.  (Hochman Expert Report at ¶¶ 62–64.)

41

Nevertheless, Hochman relied upon his own experience and specialized knowledge on how search engines work. He then reviewed Amazon's search engine as a user, employed his own technical expertise, and reached certain conclusions about how the Amazon search engine operates. Hochman's opinions here are not excludable under the liberal standard on a *Daubert* motion because Defendants have failed to demonstrate a significant analytical gap in Hochman's opinions that would warrant exclusion. Defendants' issue with the factual underpinnings of Hochman's conclusion is an issue of credibility, not admissibility. *Loudermill*, 863 F.2d at 570. Thus, the Court will not, at this stage, exclude Hochman's opinions on Amazon's internal search engine.

### c. Amazon's Practices and Procedures

Defendants take issue with Hochman's opinions on Amazon's internal practices and procedures related to product descriptions, his opinions on the item setup process, and his opinion that the Amazon DMCA takedown team was understaffed. (Hochman Expert Report at ¶¶ 107–11, 122–29, 25.) Though FDN presented no argument in defense of these opinions, the Court has independently reviewed the cited paragraphs. Hochman supports each of his opinions with record evidence. As such, the Court cannot hold that they are unsupported. Defendants' challenge to the factual basis for Hochman's opinion constitutes an issue of credibility and weight, not admissibility.

In sum, the Court will deny Defendants' Motion to Exclude Hochman's opinions on Amazon's business model, internal technology, and internal policies and procedures.

### 4.   Hochman's Opinions on the Independent Economic Value of the FDN Descriptions

Because the Court has held that it will employ the independent economic value test to determine the number of statutory awards FDN may be entitled to, Defendants' argument that Hochman's opinions should be excluded because he employs an incorrect legal standard is moot. Defendants briefly assert that, even if the independent economic value test is the correct legal standard, Hochman gets this standard wrong for two reasons. First, he allegedly misunderstands independent economic value to mean that each incremental addition of descriptions adds more value. Next, much of his opinion looks at the value to Defendants rather than to FDN, which is allegedly incorrect.

Neither of Defendants' points are persuasive. Hochman did state that the product descriptions add incremental value to Amazon, but this is not an incorrect understanding of the independent economic value test. In order to determine whether the product descriptions have independent economic value, it is helpful to identify that each product description increased overall value to Amazon. This assertion requires the conclusion that an individual product description has separate value because how else would a singular product description incrementally add value if it was in and of itself worthless.

Defendants' second argument misreads Hochman's expert report. Hochman does not focus solely on the value of the product descriptions to Amazon, he considers the value of them to FDN and Coaster as well. (Hochman Expert Report at Section VI.) Moreover, Defendants' have not pointed the Court to case law that bars an analysis of

independent economic value of a copyrighted work by looking to the value the works have to others.  In fact, the whole point of the independent economic value test is to determine what value the work has in the market, which inherently requires determining the value the work has to a third-party.  *Sullivan v. Flora, Inc.*, 936 F.3d 562, 572 (7th Cir. 2019).  Thus, the Court will deny Defendants' Motion to Exclude Hochman's opinions on the FDN Descriptions' independent economic value.

### 5.   Hochman's References to Record Evidence

Defendants seek exclusion of sixty-three paragraphs of Hochman's expert report because, they argue, these paragraphs constitute an excessive and impermissible summary of the record.  Defendants assert that the factual record can be understood without specialized knowledge so Hochman's presentation of the evidence is unhelpful and should be excluded.  *See SEC v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (excluding an expert's narration of the facts because the expert "does not convey opinions based on an expert's knowledge; nor is such a narration traceable to a reliable methodology.").   Defendants even point out that Hochman's opinions have been excluded in the past for similar reasons.  *Affiliate Network, Inc. v. Wanamaker*, No. 16-cv-24097, 2017 WL 7361048, at *12 (S.D. Fla. Aug. 14, 2017) (holding that Hochman's testimony was "merely recount[ing] facts that can be proven with lay witness testimony[.]").

44

The Court concurs that merely narrating facts is not proper expert testimony.  But that is not what Hochman's expert report does here.  Instead, Hochman's recitation of the facts is in order to support his expert opinion, which is required under Rule 26.  Fed. R. Civ. P 26(2)(B)(ii).  Defendants do not provide any sort of guideline for the Court to assist in determining when an expert's recitation of the facts becomes excessive. Certainly here, Hochman's use of the factual record is not excessive because the facts are used as support for his opinions and are often offered in combination with his expert analysis.  The Court will not impose a rule that would leave parties guessing as to whether the Court will exclude opinions because they fail to comply with Rule 26 or because they contain too many facts.   The cases cited by Defendants do not conflict with this determination.[12]  As such, the Court will deny Defendants' Motion to Exclude these sixty-three paragraphs.

### 6.   Hochman's Opinions on Defendants' Intent, Motivations, Ethics, and State of Mind

Defendants seek the exclusion of sixty-five paragraphs of Hochman's expert report because, they claim, the paragraphs reflect impermissible opinions as to Defendants' intentions, motivations, ethics, and state of mind.  "Expert testimony on the intent, motives, or states of mind of corporations . . .  ha[s] no basis in any relevant body of

---

[12] In *Affiliati*, the court excluded Hochman's opinions on a certain issue because his report contained only a recitation of the facts, not an actual opinion.  2017 WL 7361048, at *12. Similarly, in *Tourre*, the court seemed to be concerned with an expert acting simply as a narrator of facts, not offering facts to support an expert opinion.  950 F. Supp. 2d at 675.

knowledge or expertise." *In re ResCap Liquidating Trust Litig.*, 432 F. Supp. 3d 902, 944 (D. Minn. 2020). Similarly, personal views on corporate ethics and morality are not proper expert opinions. *In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007).

As an initial matter, several paragraphs cited by Defendants as inadmissible do not at all discuss the intent, motivation, ethics, or state of mind of Defendants. (*See, e.g.,* Hochman Expert Report at ¶ 69.) The Court will not exclude testimony that does not fall into this category of impermissible testimony simply because Defendants assert that it does.

Of the remaining opinions that do fall under the category of intent, motivation, ethics, or statement of mind testimony, some are admissible. For example, Hochman testified about industry customs and practices stating that in his own experience "ethical e-commerce website operators understand the importance of respecting copyrights[.]" (Hochman Expert Report at ¶ 70.) This testimony is permissible as it relates to Hochman's own experience and his understanding of the practice in the industry. Or in another instance, Hochman stated that Coaster was aware that the FDN Descriptions were FDN's property. (Hochman Expert Report at ¶ 106.) This statement can be found in the deposition testimony and is not Hochman's own opinion on the matter. These pieces of testimony do not impermissibly opine on the parties' mental state, intentions, or motivations and are admissible.

But, there are oftentimes instances where Hochman's opinions contain a mix of admissible and inadmissible testimony, or entirely cross the line into inadmissible territory. Take for example, paragraph 226. Hochman states that "Defendants knew that their actions . . . were concealing . . . infringement when Defendants received communications from FDN's counsel alleging infringement[.]" (Hochman Expert Report at ¶ 226.) While Hochman's opinion as to what actually happened (i.e. the communication between FDN and Amazon) is admissible, his opinion as to Defendants' knowledge is not. These types of hybrid opinions occur frequently. (*See* Hochman Expert Report at ¶¶ 200, 223–32.) Other portions of Hochman's expert report entirely cross the line into impermissible testimony, such as when he claims that Coaster and Amazon were "[m]otivated by greed and profit" or Amazon's failure to give credit to FDN was "dishonest and unethical." (Hochman Expert Report at ¶¶ 286, 160.)

Like the court in *ResCap*, this Court cannot definitively identify every instance of admissible as opposed to inadmissible testimony offered by Hochman at this point. Nevertheless, in at least a few instances discussed above, Hochman's testimony must be excluded as impermissible motive, intent, state of mind, or ethics testimony. As such, the Court will grant Defendants' Motion to Exclude Hochman's opinions on Defendants' state of mind, intent, motivation, or ethics. However, Hochman is not barred from offering testimony on industry understanding and practice or Defendants' state of mind

supported by record evidence.  If necessary, the Court will address specific objections prior to or at trial.

> **7.   Hochman's Allegedly Improper Legal Conclusions on Coaster and Amazon's Contract as well as Distribution Under § 1202**

Defendants ask the Court to exclude Hochman's opinions on the contract between Coaster and FDN.  Amazon points to Hochman's following statements: "Coaster understood that the contract provision **permitting Amazon**;" "The Vendor Terms and Services Agreement between Amazon and Coaster specifically **contemplated**;" and "Coaster signed the agreements that **allowed Amazon**."  (Hochman Expert Report at ¶¶ 41, 150, 237 (emphasis added).)  Defendants argue that contract interpretation is a role for the Court.  These assertions regarding what the contract provided, contemplated, or allowed for, were tied to record evidence and constituted a summary of that evidence.  If Defendants take issue with Hochman's summary and understanding of the facts, that goes to credibility not admissibility.

Defendants briefly argue that Hochman's opinion on whether Defendants violated § 1202 is inadmissible as an improper legal conclusion.  But Defendants fail to fully develop this argument or provide any reason other than a conclusory assertion as to why the Court should exclude it.  As such, the Court will not exclude Hochman's opinions on §

1202 at this stage. Defendants' can further develop this argument on a motion in limine and the Court will consider it again at that point.[13]

### 8. Hochman's Opinions on Coaster's Liability for Direct, Contributory, and Vicarious Copyright Infringement

Any opinions Hochman offers on Coaster's liability for direct and vicarious copyright infringement are unnecessary as the Court has dismissed those claims against Coaster in its Summary Judgment Order. (Order Cross Mots. Summ. J. at 38–43, 44–46.) Therefore, the Court will grant Defendants' Motion to Exclude these sections of Hochman's report.

This only leaves Section IX of Hochman's report for the Court to review. This section must be excluded because not only is it unhelpful to the trier of fact, but it contains impermissible legal conclusions. Section IX consists of Hochman's restatement of the law, recitation of the factual record, and his ultimate conclusion that Coaster participated in infringing activities. The jury does not need Hochman to recite these particular facts to them as they can be understood without specialized knowledge. Further, legal conclusions are not within the providence of an expert and must be excluded. *S. Pine Helicopters, Inc.*, 320 F.3d at 841. Thus, the Court will grant Defendants' Motion to Exclude Hochman's opinions in Section IX.

---

[13] To note, any opinions Hochman renders as to whether Defendants distributed the FDN Descriptions without CMI is moot as the Court has dismissed the § 1202(b)(3) claims.

**F.  Defendants' Motion to Exclude Portions of Carl Degen's Expert
Reports and Opinions (Docket No. 476)**

Carl Degen is the President of Laurits R. Christensen Associates Inc., an economic

research and consulting firm.  (Ecclesiaste Decl., Ex. 6.)  Degen has over twenty years of

experience providing economic consulting and damages analysis in intellectual property

disputes.  (*Id.* at Ex. 7.)  He has testified frequently on these topics in court.  (*Id.*)  Degen

has issued two reports in this case.  His opening report offers opinions on the revenues

attributable to Defendants' alleged infringement, other economic damages suffered by

FDN, and factors relevant to statutory damages.  (*Id.* at Ex. 2 ("Degen Expert Report") at

¶¶ 6–12.)  Degen then issued a rebuttal report responding to Defendants' contentions

regarding their apportionment analysis.  (*Id.* at Ex. 3 ("Degen Rebuttal Report").)

Defendants seek to exclude the vast majority of opinions in Degen's reports,

collectively asking the Court to exclude three-hundred fifty paragraphs.  Defendants have

identified five different categories of testimony that should be excluded.  As the Court

stated above, requesting that the Court dissect the proffered expert's anticipated

testimony and prohibit certain opinions is a task better undertaken through motions in

limine or objections at trial rather than via a *Daubert* motion.  *Nat'l Presto Indus.*, 2021

WL 2515806, at *31.  However, since the parties have fully briefed these issues, the Court

will consider them at this stage.

### 1.    Degen's Qualifications to Testify

Defendants assert that the Court should exclude portions of Degen's opinions because they are outside of his expertise.  In total, Defendants seek exclusion of fifty-six paragraphs from Degen's initial report, thirty paragraphs from his rebuttal report, and Figures 1 and 2 from his initial report.  Degen is an economist, damages expert, and has extensive experience with intellectual property cases.[14]  Rule 702 requires that an expert possess "knowledge, skill, experience, training, or education" sufficient to assist the trier of fact, meaning that the testimony must advance the trier of fact's understanding to any degree.  *Robinson*, 447 F.3d at 1100.  "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Id.*  But, the witness's competence must match the subject matter of their testimony.  *Id.* Under *Daubert*, the exclusion of expert testimony is the exception, not the rule.  *Id.*

While Defendants seek to exclude a significant number of paragraphs in Degen's reports under the theory that Degen is not qualified, they only offer four examples of testimony that should be excluded due to a lack of experience.  These four examples cover only thirty-five of the eighty-six paragraphs originally listed in Defendants' briefs.  As Defendants have offered no argument for exclusion on the remaining fifty-one paragraphs, the Court will not exclude them on this *Daubert* motion.

---

[14] Appendix B to Degen's Expert Report details the cases in which he has recently testified. (Ecclesiaste Decl., Ex. 7.)

Defendants first take issue with Degen's opinion in paragraph 181, which includes the statement that the FDN Descriptions "provide value in the form of better visibility of a product in consumer searches (through being SEO) and increased engagement of consumers leading to better conversion rates to sales." (Degen Expert Report at ¶ 181.) As Degen has no expertise in SEO, online marketing, online consumer behavior, Google Analytics, or web traffic, Defendants assert that he is not qualified to offer this opinion. While true that Degen is not an expert in these fields, the only affirmative expert opinion in paragraph 181 is Degen's statement that, assuming that there is an increased engagement of consumers, this leads to better conversion rates to sales. Degen is qualified to offer this opinion as it is rooted in basic economic principles. The remainder of his statements in this paragraph constitute facts that Degen has assumed to be true and upon which he is basing his expert opinion regarding the independent economic value of the FDN Descriptions, which is the sole purpose of the section within which paragraph 181 appears.[15] "[A]n expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." *Thomas*, 57 F. Supp. 3d at 1059 (citing *Williams v. Illinois*, 132 S. Ct. 2221 (2012)). This conclusion applies to the challenged statements in paragraphs 90, 209, and 212 as well.

---

[15] Defendants also take issue with paragraph 181's statement that "[w]riting a unique, SEO-optimized product description for a particular item requires an investment of resources to generate that particular description." (Degen Expert Report at ¶ 181.) This statement is entirely based in record evidence, though, and does not constitute an expert opinion offered by Degen. As such, Degen is allowed to assume that this statement is true for purposes of his expert opinion.

The next example of allegedly improper testimony comes from Degen's statement in paragraph 211 that "Amazon and Coaster each generated substantial revenues from sales of products utilizing one or more infringement product description[.]" (Degen Expert Report at ¶ 211.) The Court reads this paragraph as Degen restating his prior calculations regarding the gross revenues of each Defendant, which Defendants do not claim Degen is not qualified to opine on. (Degen Expert Report at ¶¶ 174, 178.) The numbers stated in paragraph 211 are consistent with the earlier gross revenues. Defendants do not assert that Degen is testifying that 100% of the gross revenues can be attributed to the alleged infringement. Degen's statement here relates to the overall gross revenue of Defendants, not the amount of profits generated as a result of the alleged infringement. Therefore, this testimony is admissible.

Defendants' third example of testimony that Degen is allegedly not qualified to render relates to Degen's apportionment opinion contained in his rebuttal report. (Degen Rebuttal Report at ¶¶ 33–43.) Defendants opine that since Degen has no experience in sales, marketing, advertising, consumer behavior, or SEO he cannot provide an analysis on what portions of Defendants' revenues can be attributable to SEO. Degen is a damages expert and has extensive experience calculating revenue, costs, and profits in connection with damages claims, including opining on apportionment in previous cases. (Ecclesiaste Decl., Ex. 8 at 199:3–200:3.) Degen is also specifically experienced in intellectual property cases. (*Id.* at Ex. 7.) Degen is qualified to testify as to apportionment and if Defendants

take issue with the factual bases for his opinions, this is an issue of weight and credibility, not admissibility.

Lastly, Defendants argue that Degen's opinion in paragraph 185 that "FDN's licensing practice of letting the retailer pick and choose from FDN's copyright-protected content is evidence that FDN's individual product descriptions have standalone value" is inadmissible because Degen is not qualified to opine on FDN's licensing practices. Defendants, in support of this argument, point to the fact that his opinion on independent economic value is little more than excerpts of FDN's witnesses' depositions.  As an economist and damages expert, and one who is frequently retained in intellectual property cases, it is difficult to see how Degen is not qualified to offer an opinion on the economic value of a piece of work in the market and point to factors which enable him to reach this conclusion.  Degen is an expert in the subject matter he is opining on even if he does not have the specialized knowledge relating to the furniture sales e-commerce realm.  Defendants' issue with the evidence Degen uses to support this opinion goes to weight and credibility, not admissibility.

Thus, as Degen is qualified to offer the opinions that Defendants' challenge, the Court will deny Defendants' Motion to Exclude these portions of Degen's expert reports.

### 2.    Degen's Apportionment Analysis

Degen also submitted a rebuttal report which addressed the apportionment opinion offered by Defendants' experts.  Degen opined that "Defendants have failed to

quantify any element of profit from the infringing transactions attributable to factors other than their copyright infringement" and that "the evidence in this matter indicates that at most 50 percent of Defendants' infringing profits are attributable to factors other than their infringement." (Degen Rebuttal Report at ¶ 99.)  Degen then, applying that percentage to the gross revenues he calculated in his opening report, opines on what the amount of profits this would be for both Amazon and Coaster. (*Id.*)

In determining statutory damages for copyright infringement, the plaintiff must first establish a nexus between the infringement and the infringer's profits, but it is the defendant's burden to reduce potential damages by apportioning that profit to elements other than the infringement.  17 U.S.C. § 504(b).  So, Degen's rebuttal is better understood simply as that, a rebuttal to the apportionment opinions affirmatively offered by Defendants.  Degen does not bear the burden of establishing apportionment but rather has the much lower burden of demonstrating how the Defendants' expert's apportionment analysis is incorrect.

Defendants challenge Degen's apportionment opinion because, they argue it (1) contains no expert analysis; (2) is contrary to the facts in the record; and (3) relies on cherry picked data.

As to Defendants' first argument, they claim that Degen's apportionment discussion contains no expert analysis because he relies solely on the testimony of Coaster's e-commerce director, Medhi Gold, that when Amazon removed FDN

Descriptions from Coaster product detail pages, there was a conversion rate drop of over 50%. (Ranieri Decl., Ex 10 at 79:2–14.) This is a mischaracterization of Degen's analysis. Degen relies upon Gold's testimony, but he also looks to the testimony of other witnesses, such Alexander Pan, and emails and internal documents to support his opinion. (Degen Rebuttal Report at ¶¶ 92–100.) Degen utilizes his specialized knowledge as an economist and damages expert to review the factual record and opine on what he believes the lowest percentage amount can be for apportionment. This is sufficient to survive *Daubert.* Defendants are free to challenge Degen's reliance on the factual evidence underpinning his testimony at a later stage.[16]

Defendants next argue that Degen's apportionment analysis is contrary to fact because their own expert, Doug Kidder, presented a regression analysis of Coaster sales on Amazon's website which demonstrated how much sales were impacted after the

---

[16] The Court understands Defendants' concern that Degen's reliance on Gold's testimony may impermissibly represent to the jury a determination of Gold's credibility. *See Westcott v. Crinklaw,* 68 F.3d 1073, 1076 (8th Cir. 1995) ("Nor may an expert pass judgment on a witness' truthfulness in the guise of a professional opinion."). But this is not a reasonable interpretation of Degen's opinion. Degen never states that Gold is credible, or that his statements are trustworthy. He does not engage in any such analysis or comparison of Gold's testimony to others. Instead, Degen relies upon Gold's testimony as well as other pieces of factual evidence in support of his ultimate opinion on apportionment. If the Court were to hold otherwise, it would bar an expert from ever relying on witness testimony for fear that it could be an implied opinion on credibility. Such a requirement would eliminate large swaths of expert testimony in this case alone, including many of Defendants' own expert testimony. Defendants will be able to challenge Degen's reliance on Gold's testimony and even present evidence which undermines the credibility of Gold's testimony at trial. It will then be in the factfinder's hands to determine credibility, so Degen's opinion does not usurp the role of the factfinder. As such, the Court does not find that Degen's opinion on apportionment impermissibly opines on the credibility of a witness.

removal of FDN Descriptions.  (Decl. Douglas Kidder Supp. Mot. Exclude Hochman, Degen, Hughes, Ex. K-A ("Kidder Rebuttal Report"), May 14, 2021, Docket No. 486.)   This regression analysis shows that the sales did not drop by 50%, and thus Degen's testimony that it did drop 50% or more is not supported by facts.  Kidder's analysis, though, is not sufficient to exclude Degen's opinion because Degen calls into question the analysis used by Kidder in his own report (Degen Rebuttal Expert Report at ¶ 27) and Degen based his apportionment conclusion on **conversion rates** which are distinguishable from sales data. Conversion rates measure the amount of customers who view a page that actually then purchase that product, not solely whether the product was sold.  Defendants can certainly use Kidder's sales data to question the weight and credibility of Degen's opinion, but this does not render the opinion inadmissible.

Lastly, Defendants' assertion that Degen's analysis is nothing more than ignoring evidence he does not like and pointing to evidence that he does is not a fair representation of Degen's report.  Defendants' themselves identify several instances where Degen discusses other pieces of evidence in the record and why he believes those pieces of evidence are flawed.  (*See, e.g.*, Degen Rebuttal Expert Report at ¶ 39 (dismissing the Amazon A/B study finding that product descriptions have little effect on consumer behavior because the study was conducted in 2019 and had crucial flaws).) Degen clearly provides reasons why he is not relying on this evidence.  Defendants' desire to question these determinations goes to credibility and weight, not admissibility.

Therefore, the Court will deny Defendants' Motion to Exclude Degen's apportionment analysis in his rebuttal expert report.

### 3. Degen's Opinions on Defendants' Intent, Motivation, and State of Mind

Defendants, in just half a page, seek the exclusion of thirty-seven paragraphs of Degen's expert report and six paragraphs of his rebuttal because, as with their arguments for Hochman's report, they claim the paragraphs reflect impermissible opinions on Defendants' intentions, motivations, and state of mind.

There are only two instances where Degen's opinions venture into the realm of inadmissible intent, motivation, or state of mind testimony. In paragraph 208, Degen states that Defendants' **goals** included aggressively adding Coaster products to the platform, but Degen provides no record support for the assertion of what Defendants' goals were. (Degen Expert Report at ¶ 208.) Second, in paragraph 234, Degen states that "[d]espite being **aware** that FDN created and owned the product descriptions . . . Amazon scraped this website[.]" (Degen Expert Report at ¶ 234.) Degen does not cite any record evidence that would support the assertion that Amazon knew FDN owned the FDN Descriptions, nor can he provide such support because the issue of whether FDN even owned the FDN Descriptions is contested in this case. Both statements constitute inadmissible testimony on Defendants' state of mind and must be excluded. The remainder of Degen's challenged testimony is admissible as his statements on Defendants' motives, intent, and state of mind are all supported by the record. Thus, the

Court will narrowly grant Defendants' Motion to Exclude and exclude the two sentences in paragraphs 208 and 234 identified herein as impermissible opinions on Defendants' state of mind.

### 4. Degen's References to Record Evidence

Defendants, as they did with Hochman, ask the Court to exclude a massive portion of Degen's expert reports because, they allege, the sections constitute impermissible summaries of the factual record. The Court's conclusion discussed *supra* Part E.5 equally applies here. Degen's recitation of the facts is included in order to comply with Rule 26, it is not improper, and the Court will not hold that this testimony is inadmissible under Defendants' theory.

### 5. Degen's Data Compilation Testimony

Defendants seek to exclude compilation data and accompanying testimony produced by Degen. Degen generated a master spreadsheet that organized very large and complex data sets. (Ecclesiaste Decl., Ex. 24 ("Appendix E").) Appendix E, among other things, compares FDN Descriptions and Accused Descriptions, renders a cosine similarity score, and determines Amazon and Coaster revenue attributable to that FDN Description. (*Id.*) In Appendix D, Degen spent 18-pages explaining his methodology in creating Appendix E. (Ecclesiaste Decl., Ex. 25 ("Appendix D").) Appendix D goes over the code Degen used in generating the data in the spreadsheet. (*Id.*)

Defendants' challenge the admissibility of Degen's Appendix E because their expert Kidder was unable to replicate the same master spreadsheet. (Kidder Rebuttal Report at ¶¶ 165–76.) A key question in the *Daubert* inquiry is whether an expert's theory can be or has been tested. *Daubert*, 509 U.S. at 593. But testing is not required in every instance, and, in those circumstances, the Court must weigh the expert's lack of testing in assessing reliability. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 645 (8th Cir. 2009). Furthermore, in reviewing whether there are errors in a particular methodology, the error must be so significant to render the results unreliable. *United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir. 1993). "[H]owever . . . this inquiry is of necessity a flexible one . . . [n]ot every error in the application of a particular methodology should warrant exclusion." *Id.*

Defendants point to several errors in the methodology laid out in Appendix D. First, Defendants state that Appendix D only explains the purpose of a subset of code. Second, Defendants complain that Degen never provided the necessary input files to operate the code, and that those files were produced only after an inquiry from Defendants. Defendants take issue with the production of these input files because they claim they were new version of the code files, modifying Degen's original code. Third, Defendants claim that when Kidder ran the code, he got a different output. Kidder pointed out that the code he ran output a spreadsheet with twelve tabs, but Appendix E only has ten, and that the contents in Appendix E differ from his output. (Kidder Rebuttal

Report at ¶¶ 174–75.)  Lastly, in response to Kidder's critique, Degen provided a new set of code, but Defendants take issue with the new code because it still included the faulty code, therefore making the new code erroneous.

Though Defendants claim several portions of Degen's methodology are faulty, they do not once assert that Appendix E's output is incorrect.  For example, Defendants do not contend that the FDN Descriptions did not match the Accused Descriptions or that the cosine similarity score is inaccurate.  If Kidder was experiencing issues in running the code, Degen made himself available throughout discovery to assist Defendants and Kidder in running the analysis.  (Ecclesiaste Decl., Exs. 10, 31.)  Degen also stated that, using Appendix D, he was able to rerun the code in half a day.  (Ecclesiaste Decl., Ex. 8 at 101:4–102:9.)  The Court is not convinced that any error in Degen's methodology is significant enough to throw into question the reliability of the entirety of Appendix E.  Defendants' challenges to Degen's methodology, then, relate more to credibility and weight, not to admissibility.  If Defendants wish to exclude any portions of Appendix E prior to trial, such as through a motion in limine, the Court advises that they be more specific with their request, identifying the portions of Appendix E that are unreliable and tying those portions to the errors in methodology.  As Appendix E is not inadmissible on a *Daubert* motion, the Court will deny Defendants' Motion to Exclude Degen's compilation testimony.

In sum, the Court grants in part and denies in part Defendants' Motion to Exclude portions of Degen's opinions.

### G. Defendants' Motion to Exclude Justin Hughes' Expert Report and Opinions (Docket No. 476)

Hughes is offered as an expert to rebut Oman, Everest and Kent's expert reports.[17] The Court will grant Defendants' Motion to Exclude Justin Hughes's expert testimony because both Oman's and Everest's testimony is inadmissible, and Hughes testimony is no longer necessary.

### ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. FDN's Motion to Exclude Expert Testimony of Brian Buss [Docket No. 436] is

    **GRANTED in part and DENIED in part**, as follows:

    a. **GRANTED** as to Buss's quantitative apportionment analysis, provided Coaster has thirty days to amend the expert report and correct the errors identified herein;

    b. **DENIED** with respect to all other challenged portions.

---

[17] While Hughes specifically states he is rebutting the expert report of Peter Kent, he only makes two brief references to Kent in footnotes. Because it is unclear what rebuttal, if any, Hughes is offering to Kent, and because excluding the entirely of Hughes report except for these two footnotes is impractical, the fact that Hughes notes he is rebutting Kent does not change the Court's conclusion.

2.  FDN's Motion to Exclude Expert Testimony of Gordon Everest [Docket No. 444] is **GRANTED**;

3.  FDN'S Motion to Exclude Expert Testimony of Ralph Oman [Docket No. 460] is **GRANTED**;

4.  FDN's Motion to Exclude Expert Testimony of Dr. George John [Docket No. 468] is **DENIED**;

5.  Defendants' Motion to Exclude Expert Testimony of Jonathan E. Hochman, Carl G. Degen, and Justin Hughes [Docket No. 476] is **GRANTED in part**, and **DENIED in part**, as follows:

    a.  Jonathan E. Hochman's Testimony:

        i.  **GRANTED** as to:

            1.  His opinions on substantial similarity;

            2.  Portions of his opinions on Defendants' state of mind, motives, intent, and ethics; and

            3.  His opinions on direct, contributory, and vicarious copyright infringement;

        ii.  **DENIED** as to the remainder of the challenged portions.

    b.  Carl G. Degen's Testimony:

        i.  **GRANTED** as to sentences in paragraphs 208 and 234;

        ii.  **DENIED** as to the remainder of the challenged portions.

    c.   Justin Hughes Testimony:

        i.   **GRANTED**.

DATED: March 25, 2022
at Minneapolis, Minnesota.

                            JOHN R. TUNHEIM
                      United States District Judge